**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CHAROLETTE THOMPSON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No. 05-1203-WEB** |
| ) | |
| **JIFFY LUBE INTERNATIONAL, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiffs' motion to compel the production of documents. (Doc. 39). For the reasons set forth below, the motion shall be GRANTED IN PART and DENIED IN PART.

**Background**

This lawsuit stems from the services, sales tactics, and charges imposed on customers who present their cars for an advertised "$19.99 oil change." Highly summarized, plaintiff Thompson alleges that she took her car to a Jiffy Lube facility for an oil change. However, because a service technician installed the wrong filter and caused an oil leak, the engine was ruined. Although Jiffy Lube provided a replacement engine, plaintiff contends that the replacement engine is defective and the car will not start.

Plaintiff McFadgon alleges that he took his late model pickup in for the advertised $19.99 oil change but was told by a Jiffy Lube technician that he needed additional services or his engine would be damaged. McFadgon relied on the technician's representation and paid for the additional services. However, McFadgon later learned that the additional services were unnecessary.

Plaintiffs allege that defendant violated various consumer protection laws by:

1. misrepresenting the skills and training of Jiffy Lube technicians;

2. inducing technicians to charge for unnecessary services; and

3. charging "environmental fees" or "shop fees."

Plaintiffs also seek permission to proceed as a nationwide class action.

**Motion to Compel**

Before addressing the merits of the parties' arguments, the court must clarify the discovery issues that are properly before the court and the following chronology provides necessary context. Plaintiffs initially served defendant with 29 production requests ("First Set of Requests for Production"). Defendant objected to many of the requests but, after conferring, the parties resolved 15 of the 29 requests. Plaintiffs then moved to compel the remaining 14 requests (Doc. 39), followed by defendant's response brief (Doc. 43) and plaintiffs' reply (Doc. 46). Defendant requested and was granted leave to file a surreply which was filed February 2, 2006 (Doc. 59). Up to this point, all briefing by the parties was limited to the 14 disputed production requests listed in plaintiffs' First Set of Requests for

Production.

Consistent with the deadline established by the court, plaintiffs filed their final reply brief (Doc. 60). However, plaintiffs' most recent brief contains new arguments concerning plaintiffs' "Second Set of Production Requests." Because these new production requests have not been the subject of prior briefing, the court declines to address issues related to plaintiffs' Second Set of Production Requests. This opinion addresses the 14 disputed production requests (Plaintiff's First Set of Production Requests) that are listed in plaintiffs' motion to compel (Doc. 39).

Having clarified the scope of plaintiffs' motion, the court moves to the parties' substantive arguments. In a nutshell, plaintiffs contend that the information requested is relevant and that defendant has failed to carry its burden of showing that production is unduly burdensome. See, e.g., Scott v. Leavenworth U.S.D. No. 453, 190 F.R.D. 583, 585 (D. Kan. 1999)( when discovery appears relevant, party resisting discovery has the burden of showing 1) lack or relevance or 2) that the burden or expense of the proposed discovery outweighs its benefit). Defendant counters that the 14 requests are unduly burdensome, unreasonable and beyond the scope of "pre-certification" discovery.[1] See, e.g., Cardenas v. Dorel Juvenile Group, 230 F.R.D. 611, 623 (D. Kan. 2005)(request may be overly broad on its face and unfairly burdensome). The parties' contentions are discussed more fully below.

---

[1] Discovery in this case is being conducted in "phases" with the issues related to class certification being addressed in "phase 1." Scheduling Order, Doc. 21.

**1. Class Certification Discovery**

Defendant contends that plaintiffs' motion should be denied because the production requests exceed the scope of class certification discovery. For example, defendant argues that plaintiffs' request for revenue and income information relates to damage calculations which are not at issue at the certification stage. Plaintiffs counter that their requests are within the scope of class certification discovery because plaintiffs must establish the following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, [and] (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class....

Fed. R. Civ. P. 23(a).

As noted above, discovery in this case is being conducted in "phases" with the issue of class certification being resolved first. The scope of class certification discovery is determined by reference to Rule 23 which requires that plaintiffs' show: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation.[2] Accordingly, issues concerning the scope of discovery and the relevance of plaintiffs' individual production

---

[2] In addition, depending on plaintiffs' class theory, discovery may also cover issues related to whether (1) separate adjudications would establish incompatible standards of conduct for defendant or impair the ability of other plaintiffs to pursue their claims (Rule 23(b)(1)); (2) the party opposing class certification has acted or refused to act on grounds applicable to the class (Rule 23(b)(2)); or (3) questions of law or fact common to the class members "predominate" and a class action is superior to other available methods for adjudication (Rule 23(b)(3)).

requests will be evaluated under the parameters set forth in Rule 23.[3]

**2. Unduly Burdensome and Overly Broad Requests**

Defendant contends that even if plaintiffs' discovery requests fall within the definition of relevance, the burden of producing the requested information clearly outweighs its likely benefit. Defendant also argues that many of the requests are vague or overly broad. For example, defendant asserts that approximately 31 million vehicles are serviced annually at company-owned and franchised Jiffy Lube stores and that plaintiffs' request for all vehicle service records going back to January 1, 1997 is unduly burdensome and overly broad. Plaintiffs contend that defendant has failed to carry its burden of showing "undue burden" and that the documents can be produced in electronic format at a minimal cost.

With respect to the issues of cost and electronic discovery, the limited explanations provided by the parties do not provide sufficient information for the court to determine whether production of the electronic data is unduly burdensome. Unquestionably, producing 100 million vehicle reports dating back to 1997 entails a significant cost; however, the court questions whether defendant considered the most efficient method for producing such information when estimating the cost of generating readable "TIFF" images of vehicle history reports at $10,000,000. Similarly, plaintiffs' conclusory assertion that the information can be produced in "native PST format" and then printed "without any additional

---

[3] Because the information sought by the production requests varies greatly, each production request must be evaluated separately for relevance.

costs" is equally unpersuasive. The court is simply unable to determine the reasonable costs of electronic production based on the current record. As explained in greater detail below, the parties shall confer on the format for production and related costs and, if necessary, the matter will be set for a hearing.[4]

The court is also troubled by the overly broad nature of plaintiffs' production requests. For example, plaintiff requests "any and all information related to email....including messages." On its face, a request for the production of *all* corporate and employee email communications dating back to 1997 is overly broad. The mere suspicion that a document containing relevant evidence might be located in defendant's computer files does not justify the production of *all* email communications or computer records. Plaintiffs' production requests must be reasonably tailored to secure the production of documents relevant to the issues in this lawsuit.[5] The individual production requests are addressed in greater detail below with these guidelines in mind.

---

[4] Plaintiffs' most recent brief suggests that summary reports might suffice for certain requests. (Doc. 60, p. 5). Such issues should have been discussed during the "meet and confer" process.

[5] In essence, plaintiffs are requesting the production of *all* Jiffy Lube records, whether in paper or electronic format. However, Rule 34(a) requires that "the request shall set forth, either by individual item or by category, the items to be inspected and describe each with *reasonable particularity*." (Emphasis added). In the context of this case and the issue of class certification, plaintiffs' request for the wholesale production of all email messages is facially overly broad and rejected.

-6-

**Production Request No. 8: Customer Service Records**[6]

Plaintiffs request:

**All documents to include electronic databases that state the name, telephone number, amount charged, amount paid, and services rendered for all customers who had vehicles serviced at any Jiffy Lube location (company owned or franchise).**

Defendant objects that the request is unduly burdensome because Jiffy Lube services over 31 million vehicles annually. As discussed above, the record before the court does not contain sufficient information for the court to fully evaluate the cost and expense of producing the information. The parties shall confer and determine whether (1) an alternative, such as a random sampling, would suffice and/or (2) a stipulation can be reached concerning the reasonable cost for production. If the parties are unable to reach an agreement, the matter will be set for an evidentiary hearing and, at a minimum, Jiffy Lube must produce witnesses capable of testifying as to the most efficient manner of production and the costs associated with production. Similarly, plaintiff shall produce witnesses capable of addressing production formats and associated costs. The hearing, if necessary, will determine whether production is unduly burdensome and which party will bear the costs of production.

**Production Request Nos. 9 and 18: Revenue and Income Information**

Request No. 9 seeks:

---

[6] Unless otherwise stated, plaintiffs' production requests cover a period extending back to January 1, 1997.

**[A]ny and all documents that display the amount of revenue that each service provided by all Jiffy Lube (company owned and franchise) locations produces each year during the relevant time period.**

Request No. 18 seeks:

**[A]ll documents that display the sources of income for the defendant.**

Defendant objects and argues that the requested information is not relevant to the issue of class certification. The court agrees. Plaintiff has failed to show that the requested revenue data is relevant to class certification. The fact that defendant generates revenue and income, in and of itself, proves nothing for purposes of class certification. In addition, the requests are overly broad and vague. Accordingly, plaintiffs' motion to compel production requests Nos. 9 and 18 is DENIED.

**Production Request Nos. 10, 27, 28, and 29: Customer Complaints**

Request No. 10 seeks:

**[A]ny and all documents, including electronic databases, regarding any customer complaints received by the defendant during the relevant time period.**

Request No. 27 seeks:

**[A]ll documents regarding investigations or inquiries conducted by defendant regarding customer complaints.**

Request No. 28 seeks:

**[L]egible copies of all complaints received through defendant's website,**

-8-

**www.jiffylube.com and documents regarding telephone complaints.**

Request No. 29 seeks:

**[E]lectronic mail for each officer, director, manager, and/or individuals responsible for addressing customer complaints during the relevant time period.**

Defendant objects that these documents "have very little relevance to the class certification determination." The court strongly disagrees. Documents reflecting complaints by other consumers are directly relevant to numerosity, commonality, and typicality which plaintiff must show for class certification. Defendant must promptly produce what it describes as "over 100 boxes of hard copy documents" concerning consumer complaints.

Plaintiff also maintains an electronic database which it contends would cost "tens of thousands of dollars" to produce. As with vehicle service records, the court is unable to discern the reasonable cost of reproducing this data in a useable form. The parties shall confer on whether an alternative method, such as a random sample, would suffice. If unable to agree, the court will conduct an evidentiary hearing concerning the cost of production. Accordingly, plaintiffs' motion to compel production request Nos.10, 27, 28, and 29 is GRANTED IN PART. The issue of production of electronic databases remains under advisement.[7]

---

[7] Defendant is admonished that its assertions and representations concerning the cost of producing documents will be closely scrutinized during the hearing. Sanctions may be imposed under Fed. R. Civ. P. 26(g) if it becomes evident that defendant generates routine reports concerning consumer complaints which could have been provided to plaintiffs at a reasonable cost.

### Production Request Nos. 12 and 26: Inspections and Surveys

Request No. 12 seeks:

**[A]ny and all documents regarding any inspection company, organization, group, or other entity that Jiffy Lube has discussed utilizing such entities [sic] services and/or utilization of such entity's services.**

Request No. 26 seeks:

**[A]ll surveys, studies, and evaluations that have been conducted regarding any aspect of the operation of the defendant.**

Defendant objects that the two production requests are not relevant to the issue of class certification and are unduly burdensome because hundreds of employees would have to be polled to gather a response. Plaintiffs counter that the requests are relevant to show "typicality." The court is persuaded that production requests No. 12 and 26, as currently drafted, are vague, overly broad, and unduly burdensome. Accordingly, plaintiff's motion to compel the two production requests shall be DENIED.

### Production Request No. 13: Email

Request No. 13 seeks:

**[A]ny and all information related to email, including, but not limited to current, backed up and archived programs, accounts, unified messaging, server based email, web-based email, dial-up email, user names and addresses, email messages, attachments, manual and automated mailing lists, mailing lists, [and] mailing**

**addresses.**

As discussed above, this request is overly broad on its face.[8] Accordingly, the motion to compel all email data and peripheral services is DENIED.

### Production Request Nos. 15 and 23: Employee Information

Request No. 15 seeks:

**[A]ll relevant documents, including electronic documents, regarding employees of all defendant's locations including all employee information including, but not limited to, the name, address, telephone number, social security number, date employment began, date employment ended (if any), job title, ticket averages, bonus' awarded, reason terminated and all notes or comments maintained regarding each employee.**

Request No. 23 seeks:

**[D]ocuments regarding all corporate employees who are no longer with the defendant since 1999.**

In essence, plaintiffs request all employee records from 1999 to the present. The request is overly broad on its face and DENIED. Defendant currently employs 3,089 individuals and plaintiffs' request for *all* employee records and documents in the context of class certification of a consumer protection claim is beyond the scope of reasonable

---

[8] Defendant estimates that 1,500 of its employees have access to the company's email system.

discovery.

### Production Request No. 17: Operational Documents

Request No. 17 seeks:

**[A]ll documents and minutes from all meetings in which any aspect of the operation of the defendant was discussed. (Pursuant to consultation between the parties, plaintiffs provided a definition of "operation" that includes training, sales tactics, labor, ancillary items, bonuses and goals, advertising/marketing, and customer complaints.)**

Defendant objects that this information relates to the merits of the case rather than class certification discovery. More importantly, defendant argues that it has numerous formal and informal meetings with employees across the country and that most of the meetings include discussions of some aspect of "training, sales tactics, labor, ancillary items, bonuses and goals, advertising/marketing, and/or customer complaints." In order to gather such documents, defendant would have to survey "at least 50 to 100 employees across the country."

The court is persuaded that plaintiffs' discovery request for documents related to "all meetings" is too general and places an undue burden on defendant to gather documents from (1) all levels of its company and (2) all locations where it does business. The motion to compel production request No. 17 (as currently drafted) is DENIED.

**Production Request No. 22: Business Plans**

Request No. 22 seeks:

**[B]usiness plans and all documents drafted in connection with the development of such plans.**

Defendant asserts in a summary manner that it has created "many business plans over the past seven years" and that the documents drafted in connection with those plans are voluminous and would be burdensome to compile and produce. Defendant also contends that the request is not relevant to class certification.

Defendant's conclusory arguments concerning its "business plans" are not persuasive. First, defendant's business plans are directly relevant to class certification because they explain Jiffy Lube's business strategy and goals. Equally important, the implied suggestion that Jiffy Lube's business plans and supporting documents are not readily available to defendant's officers and directors for purposes of evaluating the performance of the company is not credible. Accordingly, plaintiff's motion to compel production request No. 22 is GRANTED.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 39)** is **GRANTED IN PART and DENIED IN PART**, consistent with the rulings set forth above. Defendant shall produce the documents described herein on or before **June 1, 2006.**

**IT IS FURTHER ORDERED** that the parties shall confer concerning the production of electronic records consistent with the rulings herein and provide a report to the court as

to whether any stipulations have been reached by **May 22, 2006**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 1st day of May 2006.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge

-14-