IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHAROLETTE THOMPSON and ) 
TERRENCE McFADGON, individually ) 
and on behalf of those similarly situated, ) 
                         ) 
           Plaintiffs, ) 
                         ) 
v.                         )     Case No.  05-1203-WEB
                         ) 
JIFFY LUBE INTERNATIONAL, INC., ) 
                         ) 
           Defendant. ) 
                         )

## Memorandum and Order

Plaintiff Charolette Thompson filed a class action petition in the District Court of the Eighteenth Judicial District, Sedgwick County, Kansas.  The defendant Jiffy Lube International, Inc. (hereinafter "Jiffy Lube" or "JLI") timely removed the action, alleging federal diversity jurisdiction was present under the Class Action Fairness Act of 2005, Pub.L. 109-2, 119 Stat. 4.  The matter is now before the court on the following motions:  Jiffy Lube's Motion to Dismiss the Amended Complaint (or, alternatively, Motion to Stay); and plaintiffs' Motion for an Order to Determine Choice of Law.  The court finds oral argument would not assist in deciding the issues presented.

The original petition, which has since been amended, alleged that Ms. Thompson took her vehicle to a Jiffy Lube outlet for an oil change.  A Jiffy Lube technician installed the wrong oil filter, however, causing the oil to leak out and eventually ruining the engine.  Although the Jiffy Lube outlet provided a replacement engine,  plaintiff contends it was defective.  The petition further alleged that Ms. Thompson

was pressured to buy "add on" services when she frequented Jiffy Lube and was charged a $1.99 "environmental fee" or "shop fee" on numerous occasions.  Among other things, the petition claimed that defendant JLI violated the Kansas Consumer Protection Act by misrepresenting the training of its technicians, by inducing technicians to charge for unnecessary services, and by charging customers "shop fees."  It also alleged claims for negligence and equitable relief.  Plaintiff Thompson sought to bring the action on behalf of herself and all others similarly situated, and more specifically on behalf of: "All individuals who received service from the defendant or franchisees of the defendant since January 1, 1997 who either: (1) was charged a 'shop fee' or other undisclosed fee; (2) whose vehicle was damaged as a result of the improper training by the defendant; and/or (3) was subjected to unnecessary sales pressure to purchase unneeded services or items."  Doc. 1, Exh. 2, ¶ 12.

I. *__Jurisdiction__.*

The Class Action Fairness Act of 2005 ("CAFA") generally provides the district courts of the United States with original jurisdiction of any civil action in which the matter in controversy exceeds $5,000,000, exclusive of interests and costs, and which is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant. *See* 28 U.S.C. § 1332(d)(2).  The claims of individual class members are aggregated to determine whether the amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d)(6).  Both sides now agree this action falls under the federal jurisdiction granted by CAFA.[1]  The court agrees as well.  The minimal diversity requirements of CAFA are clearly

---

[1] Plaintiffs' original petition alleged that "Federal Court subject matter does not exist," Doc. 2, Class Action Petition filed June 2, 2005, ¶ 8.  Plaintiffs' Amended Complaint, however, alleges that "Federal Court subject matter exists pursuant to the Class Action Fairness Act of 2005."  Doc. 37, ¶ 7.

satisfied:  plaintiff Thompson is a resident and citizen of Kansas, while Jiffy Lube International is a citizen

of Delaware and Texas.  Doc.2, Class Action Petition filed June 2, 2005, ¶¶ 9, 11.  Also, the matter was

filed as a class action.[2]  As for the amount in controversy, the original petition did not specify an amount

of damages, but Jiffy Lube's notice of removal alleges the amount exceeded $5,000,000, exclusive of

interests and costs.  Doc. 1 at p.3.  At least two circuit courts have found CAFA did not alter the pre-

existing rule that when a complaint does not specify the amount of damages sought, the removing defendant

bears the burden of showing that the amount in controversy requirement has been met.  *See Abrego*

*Abrego v. The Dow Chemical Co..*, ___ F.3d ___, 2006 WL 864300 (9th Cir., Apr. 4, 2006); *Brill v.*

*Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005).  *See also Plummer v. Farmers*

*Group, Inc.*, 388 F.Supp.2d 1310, 1317 (E.D. Okla. 2005) (the court will not reverse the pre-existing

rule absent express statutory language).  Under this rule, when the complaint is not dispositive the party

seeking removal must identify the allegations in the petition establishing the amount in controversy or set

forth in the notice of removal itself the underlying facts showing that the amount in controversy meets the

jurisdictional amount.  *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).  Defendant Jiffy

Lube has met that burden.  Among other things, the Notice of Removal points out that the actual class size,

although uncertain, may well be in the millions because defendant services over 31 million vehicles per year.

---

[2] As will be discussed *infra*, the court has not certified this matter as an appropriate class action under Fed.R.Civ.P. 23.  Nevertheless, for purposes of diversity jurisdiction under §1332, the term "class action" means any civil action *filed under* Rule 23 ... or similar State statute or rule...."  28 U.S.C. § 1332(d)(1)(B).  Inasmuch as plaintiffs' action was filed under a Kansas law similar to Rule 23, it is considered a class action for purposes of determining diversity jurisdiction.  *See also* § 1332(d)(8) (this subsection applies to any class action before or after entry of a class certification order).  Additionally, the number of members of the proposed class far exceeds 100 persons; thus, the exception in § 1332(d)(5)(B) for plaintiff classes of less than 100 persons does not apply.

Doc. 1; *see* Doc.2, Class Action Petition filed June 2, 2005, at ¶¶ 12-14. The claimed damages include the charging of class members for a $1.99 shop fee, damages to vehicles resulting from improper training of service technicians, and damages from purchases of unnecessary "ancillary" items due to deceptive acts and practices. The Petition claims the latter item may average between $50-$70 per ticket. *Id.*, ¶ 41. Plaintiffs seek a judgment including a "refund of all Royalties and fees paid to defendant and illegally retained by defendant" and "damages in an amount three (3) times Plaintiffs' actual damages...." *Id.* p. 34. Plaintiffs also seek nationwide injunctive relief ordering the defendant to cease and desist the practices alleged in the complaint. *Id. Cf. Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (where plaintiff seeks injunctive relief, the amount in controversy is measured by the value of the object of the litigation). Taking these and the other allegations in the petition and Notice of Removal together, the court concludes the defendant has shown more likely than not that the amount in controversy exceeds $5,000,000, and that the action falls within the diversity jurisdiction granted by CAFA.

A class action may be removed to U.S. District court in accordance with § 1446. *See* 28 U.S.C. § 1453(b). Because plaintiff's class action petition falls within this court's original jurisdiction under § 1332, the action was properly removed. *See* 28 U.S.C. § 1441(a). Accordingly, the court has jurisdiction to hear the action.

II. ***Summary of Plaintiffs' Allegations***.

The following allegations are taken from the First Amended Complaint. Plaintiff Charolette Thompson resides in Sedgwick County, Kansas. Doc. 37, ¶ 8. Plaintiff Terrence McFadgon, who was added as a party plaintiff in the Amended Complaint, resides in Shelby County, Tennessee. ¶ 9.

Defendant Jiffy Lube Inc. ("JLI") is a corporation organized and existing under the laws of Texas

4

and doing business in Kansas and throughout the United States.  ¶ 10.  There are some 2,200 Jiffy Lube outlets in North America.  ¶ 24.  These outlets provide service to more than 30 million vehicles per year.  ¶ 26.  Many of the outlets are franchises that are not owned by JLI, but JLI "maintains a heavy influence over its franchisees including setting training, policies and goals."  ¶ 24.  Jiffy Lube's "Signature Service" oil change is available at all Jiffy Lube locations.  ¶ 26.

In printed materials, Jiffy Lube represents that it will provide high quality service by "certified technicians."  ¶ 28.  These materials make no distinction between company-owned and franchisee locations. *Id*.  JLI instructs all managers -- whether of company-owned or franchisee stores -- on how to operate and advertise.  ¶ 31.  JLI requires both company-owned stores and franchises to follow JLI's standards, policies and procedures.  ¶ 32.  JLI has a "system" consisting of targets, bonuses, and other incentives, which according to plaintiff causes employees of company-owned and franchisees to pressure customers into purchasing ancillary products.  ¶ 33.  Plaintiffs claim that JLI's "system also consists of insufficient training of technicians."  *Id*.

JLI requires all managers of company-owned stores and franchisees to undergo JLI training before beginning employment.  Prior to attending this training course, the individual must work under an individual who has completed the course and must complete Jiffy Lube's regular training course.  ¶ 36.  Plaintiffs claim JLI's training includes the setting of sales goals for ancillary items, and it includes "tricks" to convince consumers to purchase unneeded items, such as showing the customer the color of fluids when, in reality, the color of the fluid is not determinative of the need for change or repair.  ¶ 37.  JLI "also recommends manufacturers' recommendations for severe conditions without even inquiring as to the habits of each customer."  ¶ 37.  "The direct pressure and direct deceptive and deficient training has lead to the damage

5

of thousand's [sic] of customers' vehicles and wallets." ¶ 38. Franchisees and company-owned locations are implementing the training techniques mandated by JLI. ¶ 39. Plaintiffs claim JLI is thus responsible for the foreseeable results of this training. *Id*. The training mandated and directed by JLI falls below Automotive Service Excellence ("ASE") standards. ¶ 40. JLI claims its technicians are "certified," which gives the impression they are ASE-certified because that is the auto repair industry standard, but the technicians are not ASE-certified. *Id*. Defendant provides very detailed training and directions to franchisees in carrying out its business operations. ¶ 44. The franchisee is given virtually no discretion in performing its operations. *Id*. Plaintiffs claim the defendant "controls the operations that led [to] the plaintiffs' Complaint." *Id*.

"Plaintiff Thompson was required to pay environmental fees in the amount of $1.99 and shop fees." ¶ 45. Defendant entered into a settlement agreement that forbade it from charging environmental fees. *Id*. Defendant has simply renamed environmental fees as "shop fees" and still charges $1.99. *Id*. JLI has instituted a Point of Sale System (POS) which it requires its company-owned and franchisee stores to use. *Id*. JLI has directed its company-owned stores and franchisees to charge these fees as part of its POS system. *Id*.

JLI provides sales quotas and sales training for all company-owned stores and franchisees. ¶ 46. It also provides bonuses and awards based on the total sales of such stores. *Id*. Furthermore, technicians are provided "ticket" and "car count" goals, which are increased by defendant, and they receive a monthly incentive bonus based on their goals and averages. *Id*. Plaintiffs contend these policies directly result in customers being victimized by "add on" scams, in which they are charged for services they do not need. *Id*. Plaintiffs allege that JLI requires technicians to concentrate on "Dollars Over Base" ("DOB"). Jiffy Lube

considers a technician's "ticket" (the total costs for service on each vehicle) to be "at base" when it is $29.99.  ¶ 47.  JLI requires technicians' tickets to reach "par," which is $30 over base -- in other words, the customer must pay $60 or more for the ticket to reach par.  Technicians are regularly threatened with statements such as reach "$30 DOB or risk your job." ¶ 49.  Technicians are suspended for up to a week without pay if the technician fails to reach $30 over base for the month.  *Id*.  Plaintiffs contend JLI trains its managers to use deceptive practices -- including showing the color of fluids and filters to customers and using misleading manufacturers' recommendations -- in order to increase ticket averages.  ¶ 48.  In order "to meet the standards by Jiffy Lube, technicians are trained and forced to recommend several 'ticket building' items such as air filters, PCV valves, transmission and radiator flush and fills, and replacement of serpentine belts, regardless of whether such services or items are actually needed.  ¶ 49.  Additionally, technicians often knowingly misrepresent the need to replace various plugs, caps, and light bulbs.  *Id*.  As a "direct result of Jiffy Lube's system," technicians also often "create" problems in order to build their tickets.  *Id*.  Often services are not even rendered.  ¶ 50.  Customers are "pressured and duped" into purchasing items that do not need to be replaced or repaired.  *Id*.

Plaintiffs allege a February 19, 2004, episode of the ABC television show "Prime Time Live" showed Jiffy Lube employees at an unidentified Jiffy Lube outlet "suggesting items to" an investigator and damaging the investigator's vehicle in order to sell more products.  ¶ 52.  In response, Jiffy Lube denied these incidents in any way represented the "Jiffy Lube system" and denied it endorsed any policy that placed sales targets on customer purchases.  *Id*.  Plaintiffs also cite additional media stories describing improper practices by Jiffy Lube outlets in California and Ohio.  ¶¶ 53-54.

*Allegations Pertaining to Plaintiff Charlotte Thompson*  Plaintiff Thompson took her vehicle

"to Jiffy Lube" to have the oil changed in her 1996 Hyundai Elantra. ¶ 56. The complaint does not identify the particular Jiffy Lube outlet, nor does it allege the date of the incident. After the oil change, she noticed oil in the driveway, and she returned to Jiffy Lube. The technicians made some adjustments and sent her on her way. *Id*. Within a couple of weeks, plaintiff's daughter was driving the car when smoke began coming from under the hood. *Id*. When the car was examined by a local Hyundai dealer, they informed plaintiff Jiffy Lube had placed the wrong oil filter on the car, which had caused the oil to leak out and ruined the engine. ¶¶ 56-57. Plaintiff called Jiffy Lube and they agreed to replace the engine. ¶ 58. The engine Jiffy Lube put in, however, had a cracked manifold and needed to have the belts replaced. *Id*. After plaintiff took the vehicle home, it would not start. ¶ 59. She contacted the manager at Jiffy Lube and told him she needed the car so her daughter could get to school. *Id*. The manager did not seem concerned, and she did not hear back from anyone at Jiffy Lube. *Id*.

Plaintiff made fourteen visits to a Jiffy Lube franchisee over an disclosed period of time. ¶ 60. Each time she did, she "was pressured" to purchase add-on services. *Id*. She purchased add-on items on eleven occasions. Her average ticket was $87.02. Plaintiff would not have purchased these add-on items "but for the system that Jiffy Lube initiated, dictates, and trains all managers to follow." *Id*.

Plaintiff was required to pay "environmental fees" in the amount of $1.99 before December 2004. ¶ 61. She was required to pay "shop fees" in the amount of $1.99 after December 2004. *Id*. Defendant entered into a settlement agreement that forbade it from charging environmental fees. *Id*. Defendant has simply renamed these as "shop fees" and still charges a $1.99 fee. *Id*.

*Allegations Pertaining to Plaintiff Terrence McFadgon*. In June of 2005, plaintiff McFadgon was driving down the road when he saw an advertisement for a $19.99 "early bird special" oil change at

a Jiffy Lube outlet. The complaint identifies the outlet only as "company owned Jiffy Lube #1943." ¶ 63. There was no mention of a shop fee or environmental fee. ¶ 62. McFadgon decided to visit the Jiffy Lube because of the special advertised price. Technicians pulled Mr. McFadgon's truck into the service bay. After less than five minutes, technicians approached and told him he had to receive additional services before they could perform the oil change. They said if he did not receive the additional services, his oil would burn at an accelerated rate and would cause damage to his engine. ¶ 63. Mr. McFadgon, not being a mechanic, relied on the technicians' representations. *Id*. Plaintiff's total bill was more than $50. *Id*. Some time later, McFadgon learned that the service he received "was unnecessary based on the year of his truck." *Id*.

*Other Complaints*. Plaintiffs allege their experiences are typical of "the nationwide complaints lodged against Jiffy Lube." ¶ 65. They cite fourteen examples of complaints which other consumers have "posted," *id*., apparently on internet web sites.

*First Cause of Action - Unlawful Business Acts and Practices*. Plaintiffs allege that Jiffy Lube's acts, omissions, and misrepresentations constitute unlawful, deceptive, unfair and fraudulent business acts and practices, as well as untrue and misleading advertising, "within the meaning of all states' Consumer Protection Act." [sic] ¶ 67. JLI's "failure to meet the standard of care" for servicing vehicles and its recommendation of unnecessary repairs, while representing that it offered the highest quality and care, is unfair and deceptive and injurious to consumers. ¶ 68. JLI's representations and omissions of material facts "have a likelihood of deceiving consumers and the general public." ¶ 73. Defendant's unlawful acts continue and present a threat to the plaintiff and the general public. *Id*. Based on JLI's representations and training regarding service and sales at all Jiffy Lube locations, and its direct control of the policies of all Jiffy Lube locations, plaintiffs contend JLI is directly liable for all indirect and direct violations by company-owned and

franchisee outlets under all Consumer Protection Acts.  ¶ 69.

*Second Cause of Action - Equitable Relief*.  Plaintiffs seek an order directing the defendant to cease its unlawful acts and engage in a corrective program. ¶¶ 74; 81.

*Third Cause of Action - Negligence*.  Plaintiffs allege that JLI owed to plaintiffs and the class a duty of reasonable care.  ¶ 82.  It breached that duty, plaintiffs allege, by misrepresenting that its technicians are classroom-trained and certified.  ¶ 83.  The training the technicians received "is below all appropriate standards," and defendant "has even failed to train technicians."  *Id*.  This has "led to the problems that plaintiff and Class has experienced at the hands of Jiffy Lube technicians," and has caused them economic damage.  ¶¶ 83-84.

*Fourth Cause of Action - Restitution/ Unjust Enrichment*.  Plaintiffs claim JLI has been unjustly enriched as a result of its unlawful acts to the detriment of plaintiffs and the class, and that it would be inequitable for JLI to keep the benefits thus obtained.  ¶ 86-87.

III.  **_Defendant JLI's Motion to Dismiss_**.

Before addressing the motion to dismiss, the court takes note of the scope of the action now before it.  Although the complaint seeks to bring claims on behalf of a class of persons similarly situated to the named plaintiffs, no motion for class certification has been filed, and the court has not certified this case as appropriate for class action treatment.  Thus, notwithstanding the specter of a potentially enormous class action -- which seems to have cast a shadow over the current motions and the arguments of the parties -- the only issues now before the court concern the claims of Ms. Thompson and Mr. McFadgon.

A.  *Particularity of Allegations of Consumer Fraud - Rule 9(b)*.

Jiffy Lube first argues the plaintiffs have failed to state their consumer fraud claims with particularity

10

as required by Fed.R.Civ.P. 9(b).  With regard to allegations that Ms. Thompson and Mr. McFadgon were "pressured" into purchasing unnecessary add-on items, JLI argues plaintiffs have failed to specify what add-on services were purchased, what store employees told them about the items, why the employees' statements were false, or why the services were unnecessary. Doc. 42 at p. 13.  Further, JLI argues plaintiffs have failed to specify what particular JLI policies or statements caused the alleged violations.  It argues plaintiffs have merely asserted in vague fashion that JLI taught managers various sales "tricks," or that technicians were threatened with being fired unless they produced certain levels of sales, but the complaint does not specify or identify any JLI policies or statements to support plaintiffs' allegations.  Moreover, JLI contends plaintiffs have failed to plead their claims for unlawful "shop fees" with particularity.  JLI argues the complaint  merely alleges in conclusory fashion that "Jiffy Lube has directed its company stores and franchisees to charge the illegal fees as part and parcel of its POS system." Doc. 42 at p. 14.  JLI contends it does not charge shop fees and that it has done all it can do under its franchise agreements to discourage franchisees from charging such fees.  *Id*.  In support of these allegations, defendant cites a copy of its standard franchise agreement, as well as an affidavit of Kevin Lyng, General Manager of North American Operations for JLI.  Doc. 42, Def. Exhs. 1 & 1A.  JLI contends the franchise agreement gives it no control over the fees charged by franchisees, and that franchisees can customize the POS system to charge whatever they want.  As such, it contends plaintiffs have failed to allege facts showing that the POS system or any other JLI policy directs franchisee or company-owned stores to charge shop fees.  Absent such allegations, JLI contends it is entitled to dismissal of this claim.

In response, plaintiffs contend the Amended Complaint adequately alleges violations of consumer protection statutes by asserting that JLI has instituted centralized training that is below standard while

11

representing to the public that its technicians are "certified," by misrepresenting the fact that certain items and repairs are needed, and by instituting shop fees in lieu of forbidden environmental fees.  Doc. 44 at 1. Plaintiff Thompson argues the "who, what, when, where" requirements of Fed.R.Civ.P. 9(b) are met by allegations that Thompson visited Jiffy Lube fourteen times, that the deceptive practices took place "orally," that the statements were made by "Jiffy Lube technicians," and that the deceptive practice was "charging 'shop fees' when it agreed not to do so and pressuring Plaintiff Thompson in purchasing items that she did not need and would not have purchased otherwise."  Doc. 44 at Pp. 14-15.  *Citing In re Universal Service Fund Telephone Billing Practices Litigation*, 300 F.Supp.2d 1107, 1150 (D. Kan. 2003).  As for the complaint's alleged failure to specifically identify JLI policies that caused the alleged violations, plaintiffs say "this is a clear and blatant attempt to receive informal discovery" and "[a] plaintiff will hardly be in a position prior to filing a lawsuit to know all of the specific policies that cause injuries until after being afforded a great deal of discovery."  *Id.* at Pp 15-16.

Rule 9(b) states in part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed.R.Civ.P. 9(b).  This requirement applies to allegations of deceptive trade practices under the KCPA.  *In re Universal Service Fund Telephone Billing Practices Litigation,* 300 F.Supp.2d 1107, 1150 (D. Kan.2003).  *See also Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1524 (D. Kan.1995).  Rule 9(b)'s heightened pleading standard serves to provide defendants with adequate notice of the plaintiff's claim, to protect defendants from damage to reputation caused by improvident charges of wrongdoing, and to inhibit the institution of strike suits.  *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F.Supp.2d 1201, 1203 (D.Kan.2001) (*citing Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992)).  At the same time, Rule 9(b) is

considered together with Rule 8, which calls for pleadings to be simple, concise, and direct.  *Id*. (*Citing Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997)).  To survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id*. (*citing Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir.1991)).  "In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud." *Plastic Packaging Corp*., 136 F.Supp.2d at 1203.  *See also United States ex rel. Smith v. The Boeing Co.*, 2006 WL 542851, at *3 (D. Kan., Feb. 27, 2006).

*Plaintiff Thompson*.  The court finds plaintiff Thompson has failed to allege her claims for deceptive or fraudulent business acts with particularity as required by Rule 9(b).  The Amended Complaint alleges that plaintiff Thompson took her vehicle to an unspecified Jiffy Lube franchisee on an unspecified date.  Doc. 37 at Pp. 20-21.  The complaint does not say where the store was located.  The complaint arguably contains an inference -- although not an explicit allegation -- that employees of this Jiffy Lube franchise negligently placed the wrong oil filter on plaintiff's car, thereby damaging the engine.  *See Id*. at ¶ 57 ("The manager at Schofield [sic] stated that Jiffy Lube placed the wrong oil filter on the vehicle....").  The complaint further alleges that on fourteen other unspecified occasions, at what presumably was the same unspecified Jiffy Lube franchise, "Thompson would patron [sic] Jiffy Lube" and "was pressured to purchase more and more 'add-on' services."  *Id*. at ¶ 60.  Technicians would "often" recommend add-on items, and plaintiff in fact purchased add-on items eleven times, which she would not have done "but for the system Jiffy Lube initiated, dictates, and trains all managers to follow."  *Id*.  "Thus, the plaintiff has been aggrieved, injured, and damaged."  *Id*.

The complaint does not say what add-on items were purchased by plaintiff.  It says nothing about what the technicians said or represented to her.  Although the complaint alleges elsewhere (i.e., in discussing class action allegations) that Jiffy Lube employees often recommended *unnecessary* items to customers and made misleading representations about the need for service, it contains no particular allegation that anyone did so on any occasion involving plaintiff Thompson.  *Cf*. K.S.A. § 50-626(b)(9) (it is a deceptive act to falsely state, knowingly or with reason to know, that services, replacements or repairs are needed).  Nor does it identify any other particular misrepresentations or misleading statements made to Thompson.  *Cf*. K.S.A. § 50-626(b)(1)(A) (deceptive act to knowingly state that property or services have benefits that they do not have) & K.S.A. § 50-626(b)(2) (deceptive acts include the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact).  There is no allegation that anyone misled Ms. Thompson by representing that Jiffy Lube technicians were "certified" or that she incurred any damage related to such a representation.  *Cf*. *Finstad v*. *Washburn Univ*., 252 Kan. 465, 472, 845 P.2d 685 (1993) (students were not aggrieved by publication of false statement).  The complaint alleges that Ms. Thompson was "pressured" to purchase add-on items because technicians would recommend the items.  Doc. 37, ¶ 60.  A vague assertion of being "pressured" to purchase "add-on items" fails to meet Rule 9(b) and does not show a right to relief under the Kansas Consumer Protection Act.

The Amended Complaint likewise fails to satisfy Rule 9(b) with respect to Ms. Thompson's allegations relating to the payment of environmental fees or shop fees.  The complaint contains no allegations about when or where plaintiff Thompson was charged such fees, except that it occurred at "a Jiffy Lube franchisee" both before and after December of 2004.  *Cf*. Fed.R.Civ.P. 9(f) (allegations of time and place are material).  The complaint does not explain how plaintiff was "required" to pay the fees and --  more

14

importantly insofar as Rule 9(b) is concerned -- does not explain how charging such fees qualified as a deceptive act or practice under the KCPA. *Cf. In re Universal Service Fund Telephone Billing Practices Litigation*, 300 F.Supp.2d 1107, 1150 (D. Kan. 2003) (complaint explained that Sprint misrepresented the nature of a surcharge as a legally-required "pass-through" charge by designating it as a tax or regulatory charge). The introduction in the Amended Complaint alleges that JLI "does not disclose these [shop] fees to consumers prior to the service to their vehicles," Doc. 37 at ¶ 3, but no such allegation is made specifically pertaining to Ms. Thompson. Again, there are no allegations about what material facts were misrepresented or omitted insofar as plaintiff Thompson is concerned. Plaintiff's allegation that JLI entered into a settlement agreement under which it agreed it would not charge "environmental fees" does not, standing alone, show it was a deceptive act or practice under the KCPA for JLI to charge Ms. Thompson such a fee. The basis for Ms. Thompson's claim that defendant's actions constituted deceptive acts or practices is not apparent from the complaint.[3] In sum, the allegations in the Amended Complaint fail to satisfy the particularity requirement of Rule 9(b).[4]

---

[3] By way of contrast, in *Bayhylle v. Jiffy Lube International, Inc.*, Case No. CJ-2002-353 (Dist. Ct. Cherokee Co., Okla.) -- the class action alluded to in the Amended Complaint -- the plaintiffs alleged among other things that the "environmental fees" charged by defendant purported to be a legitimate governmental or regulatory charge when in fact there was no such lawful regulatory charge, and that the defendant misrepresented the price of its oil change service and breached a contract with its customer by adding a charge for an environmental fee to the advertised base price of an oil change. *See* Doc. 42, Attach. 6, Pp. 3-4.

[4] JLI also contends plaintiff's shop fee claims should be dismissed under Rule 9(b) because JLI has no control over the fees charged by its franchisees. The Amended Complaint, however, alleges that JLI "has directed its company stores and franchisees to charge the illegal fees as part and parcel of its POS system." Doc. 37, ¶ 45. If further alleges that JLI requires these stores to use its POS system. *Id*. These allegations, which the court must accept as true for purposes of a motion to dismiss on the pleadings, are sufficient to overcome JLI's argument that it has no control over the charging of such fees.

Plaintiffs' first cause of action for violation of consumer protection laws contains numerous other allegations in addition to those specifically mentioned above, including allegations that the defendant engaged in "misleading advertising," "recommend[ed] unnecessary repairs to [] vehicles," made "misrepresentations and no-disclosures ... of the material facts," and "represented that its technicians are trained and certified" but in fact provided them with substandard training. Doc. 37, Pp. 30-32. None of these allegations, however, are tied in factually in any way to Ms. Thompson's claim for a violation of the KCPA. As such, and for the reasons stated above, the court finds defendant's motion to dismiss Ms. Thompson's claims for violation of consumer protection laws should be granted for failure to comply with Fed.R.Civ.P. 9(b). Moreover, insofar as plaintiff attempts to assert these same allegations of fraudulent or deceptive conduct under other theories, such as negligence or unjust enrichment, the court concludes that Rule 9(b) likewise requires the dismissal of any such claims. If plaintiff intends to assert a claim based upon fraudulent or deceptive conduct, Rule 9(b) requires her to set forth with particularity the circumstances constituting the fraud or deception.

*Plaintiff McFadgon*. The Amended Complaint's allegations relating to plaintiff Terrence McFadgon's consumer protection claims likewise fail to satisfy Rule 9(b). *Cf. Metropolitan Property & Cas. Ins. Co. v. Bell*, 2005 WL 1993446 (6th Cir., Aug. 17, 2005) (Rule 9(b) applies to claims under Tennessee Consumer Protection Act). As noted above, Mr. McFadgon alleges that during a June 2005 visit to a company-owned Jiffy Lube outlet, technicians falsely told him he needed what the complaint describes only as "additional services" before the technicians could change his oil. If he did not receive these additional services, the technicians represented, his oil would burn at an accelerated rate and would damage his engine. Doc. 37, ¶¶ 62-64. Plaintiff claims he later learned this additional service was "unnecessary

16

based on the year of his truck." *Id*. at ¶ 64.  The Amended Complaint never identifies the additional service recommended and performed by the technicians.  It thus fails to set forth the contents of the alleged false representation as required by Rule 9(b).  *See Plastic Packaging Corp.*, 136 F.Supp.2d at 1203.  It also contains no factual support or explanation for the allegation that the service was "unnecessary based on the year of the truck."  *See E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1306 (10th Cir. 2001) (the court will not accept bare conclusions that are unsupported by any factual allegations).  Given the ambiguity in determining whether any form of preventive maintenance was "unnecessary," Rule 9(b) in this context requires the plaintiff to provide a short and plain explanation of *how or why* the technicians' representations concerning the benefits or need for the service were false or misleading.  *Cf. Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (Rule 9(b) is context-specific).  Plaintiff's allegations need not be extensive, but they must disclose the basis for the claim of fraud or deception.  *See In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) ("To allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.").  Absent such allegations, Mr. McFadgon's consumer protection claim fails to state with particularity "the circumstances constituting fraud or mistake...."  Fed.R.Civ.P. 9(b).  Accordingly, defendant's motion to dismiss plaintiff McFadgon's consumer fraud claims will be granted.

### *Plaintiffs' Request to Amend the Complaint*.

Plaintiffs say if the court finds the complaint deficient it should allow them an opportunity to amend their claims.  Rule 15(a) provides in part that "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).  "Refusing leave to amend is generally only justified upon a showing of undue

delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment, etc." *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir.1993) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)). Aside from the issue of whether amendments to the complaint would be futile -- which the court addresses below -- none of the grounds that might justify a denial of leave to amend have been shown to exist here.

 B. *Motion to Dismiss for failure to state a claim for relief - Rule 12(b)(6).*

 JLI also moves to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  JLI first argues that all of the acts complained of occurred at Jiffy Lube franchisees rather than JLI company-owned stores.  Doc. 42 at p. 14.  JLI says it is not vicariously liable for the acts of its franchisees because they are not JLI's agents and because plaintiffs have shown no other basis for holding it responsible for the franchisees' conduct.  In support, JLI submits a copy of its standard franchise agreement and accompanying affidavits.  It points out the agreement says the franchisees are independent contractors with the right to complete control and direction of the franchised center -- subject to certain conditions -- and that no agency relationship is created by the agreement.  As for plaintiffs' claim that JLI is directly liable for the franchisees' alleged consumer fraud, JLI argues this would require plaintiffs to "point to some statement, practice, or act directly perpetrated by JLI with the intent to deceive the franchisees' consumers," which JLI maintains they have not done. *Id*. at p. 19.  With regard to allegations of negligent work on customer vehicles by the franchisees, JLI says it has no common law duty to protect its franchisees' customers by ensuring that the franchisee's employees are properly trained.

 In response, plaintiffs first argue JLI is responsible for the alleged violations of the KCPA, regardless of whether or not the franchisees are JLI agents, because JLI "directs deceptive practices by using its

18

economic and contractual clout to force its franchisees to commit deception." Doc. 44 at p. 16 (*citing*

*State v. Cottman Transmission Sys., Inc.*, 86 Md.App. 714, 726, 587 A.2d 1190 (Md. App. 1991)).

Plaintiffs make various other arguments as well.  The following is asserted under the heading, "Jiffy Lube is

Liable for its Own Negligence and is Vicariously Liable for the Acts of its Franchisees":

> Plaintiffs have alleged that the defendant is liable for its negligence.  For that
> reason, plaintiffs have not alleged that the franchisees are agent [sic] of the
> defendant.   To the extent that liability rests upon this principle, the
> franchisees are actually agents of the defendant.   Franchisees are also
> apparent agents of the defendant.  The issues of whether the defendant
> owes a duty to customers and whether the defendant is vicariously liable for
> the acts of its franchisees turn on the same inquiry: what does the defendant
> actually control?

Doc. 44 at p. 20.  Plaintiffs subsequently assert "there is no issue as whether [sic] there is an agency

relationship."  *Id.*  Under the heading "Case Law Shows that Jiffy Lube Owed a Duty to Third Parties and

is Vicariously Liable for the Acts of its Franchisees if the Issue Arises," plaintiffs cite a number of cases

holding franchisors vicariously liable for acts of franchisees due to the former's right of control over the

actions causing injury.  Plaintiffs argue these cases show "that Jiffy Lube would be liable under a vicarious

liability theory."  *Id.* at 26.  In a footnote, however, plaintiffs state: "Again, plaintiffs have not advanced a

vicarious liability theory.  Plaintiffs contend that the defendant is liable for its negligence."  *Id.*, n.13.  Still

later, plaintiffs state that "the control exerted by the defendant clearly causes the defendant to be vicariously

liable for the acts of its franchisees."  *Id.* at 32.  Finally, plaintiffs argue JLI is liable for the acts of its

franchisees under the doctrine of apparent authority, noting  "[a]t least one plaintiff believed that he visited

Jiffy Lube, Inc."  *Id.* at 28.

The court has not been helped in this instance by plaintiffs' confusing and contradictory

representations about direct and vicarious liability.  Moreover, it is unclear whether the plaintiffs dispute JLI's

assertion that the Jiffy Lube outlet visited by Mr. McFadgon was actually a franchisee-owned store, contrary

to the allegation in the complaint that it was a JLI company-owned store.  Plaintiffs respond to this allegation

only tangentially, in a section of their brief discussing apparent authority, wherein they state: "McFadgon was

actually told upon inquiry [] that the location that he visited was a corporate owned store.  As such, Mr.

McFadgon alleged in this lawsuit that he visited a corporate owned store."  Doc. 44 at p. 29.  The brief

does not disclose the extent of any inquiry by counsel into the truth of the allegation.

On a motion to dismiss pursuant to Rule 12(b)(6), the purpose of the motion is to test the sufficiency

of the allegations within the four corners of the complaint after taking those allegations as true. *Mobley v.*

*McCormick*, 40 F.3d 337, 340 (10th Cir.1994).  The issue is not whether the plaintiff will ultimately prevail,

but whether he or she is entitled to offer any evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S.

232, 236 (1974).  In considering the legal sufficiency of a complaint, the court must accept the allegations

in the complaint as true and must draw any reasonable inferences therefrom in the light most favorable to

the plaintiff.  But the court will not accept bare conclusions that are unsupported by any factual allegations.

*See E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1306 (10th Cir. 2001).  Nor is the court

bound by unwarranted inferences or legal conclusions set forth in a complaint. *See also Hackford v.*

*Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994).

The complaint alleges that Mr. McFadgon visited a JLI company-owned store.  Under Rule

12(b)(6) the court accepts that allegation as true for purposes of the instant motion.  Accordingly, the court

rejects JLI's argument that it cannot be liable for the acts complained of by Mr. McFadgon because those

actions were taken by franchise employees.  The actions allegedly occurred at a JLI company-owned outlet,

and it is reasonable to infer that the actions were taken by agents of JLI in the scope and course of their employment. *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992) (doctrine of respondeat superior serves to make an employer vicariously liable for torts committed by its employee when that employee was acting within the scope of his employment); *Brillhart v. Scheier*, 243 Kan. 591, 593, 599, 758 P.2d 219 (1988) (Under the doctrine of respondeat superior, one individual is held responsible for the negligence of another when a master/servant or employer/employee relationship exists). Moreover, plaintiffs argue that JLI may be liable under the doctrine of apparent authority, asserting that Mr. McFadgon "believed that he visited Jiffy Lube, Inc." Doc. 44 at p. 28. Under general agency principles, vicarious liability may be imposed on a franchisor for the acts of its franchisee under the theory of apparent or ostensible agency. *See* 62B Am. Jur.2d, *Private Franchise Contracts* § 299 (2005). To recover under such a theory, most states hold that the plaintiff must show: (1) that the franchisor acted in a manner that would lead a reasonable person to conclude that the operator and/or employees of the franchise were employees or agents of the defendant; (2) that the plaintiff actually believed the operator and/or employees of the franchise were agents or servants of the franchisor; and (3) that the plaintiff thereby relied to his or her detriment upon the care and skill of the allegedly negligent operator and/or employees of the franchise. *See id.*, § 300. Assuming for the moment that Tennessee law would govern plaintiff McFadgon's claim, it is clear that Tennessee would recognize liability under the doctrine of apparent authority upon a proper showing. *See Franklin Distributing Co., Inc. v. Crush Intern. (U.S.A.), Inc.*, 726 S.W.2d 926, 930 (Tenn. App. 1986). Defendant has not explained why plaintiff could not possibly prove such a theory. Plaintiff could conceivably prove facts to support a finding that defendant JLI is responsible for the conduct of the franchisee visited by Mr. McFadgon, if indeed it was a

franchisee-owned store.  Accordingly, the court rejects JLI's contention that it is entitled to dismissal on these grounds.

As for Ms. Thompson's claims, the actions complained of were allegedly done by employees of a Jiffy Lube franchisee, not a company owned store.  As plaintiffs point out, there is widespread case law holding that a franchisor may be vicariously liable for the acts of its franchisees if the former controls the particular instrumentality that caused harm to the plaintiff -- in other words, if the relationship between them is that of principal and agent.  As one general treatise notes:

> A private franchisor may be liable for acts of a franchisee when the actual relationship between them is that of principal and agent or master and servant.  A franchise agreement, without more, does not make the franchisee an agent of the franchisor.
>
> The declarations of the parties in the agreement respecting the nature of the relationship created thereby are not controlling, however, and, as with contracts generally, the writings must be considered as a whole. Thus, although franchisors frequently insert language into a franchise agreement declaring that the relationship is that of independent contractors and not that of agent and principal, joint venturers, or partners, such language will not immunize the franchisor from liability to a stranger to the agreement. When a contract establishes an independent contractor relationship, rather than an agency relationship, and does not grant control over the details of the contractor's work, then evidence must be produced to show that, despite the contract terms, the true relationship between the parties gave the alleged principal a right of control.

62B Am. Jur.2d, *Private Franchise Contracts* § 297 (2005) (footnotes and citations omitted).  Although plaintiffs state at one point they are not claiming there was any agency relationship between JLI and its franchisee, plaintiffs' theory of liability is clearly premised upon JLI's asserted control over the actions of its franchisee.  The same treatise referred to above summarizes the case law pertaining to control by a franchisor as follows:

22

In the franchisor context, the existence of a principal-agent relationship depends on the nature and extent of control and supervision retained and exercised by the franchisor over the method or details of conducting day-to-day operations. A franchisor may be held vicariously liable for the tortious conduct of its franchisee only if the franchisor has control or a right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm. At the same time, courts are generally mindful that a franchisor does have a legitimate interest in retaining some degree of control in order to protect the integrity of its marks. Retaining certain rights such as the right to enforce standards, the right to terminate the agreement for failure to meet standards, the right to inspect the premises, the right to require that franchisees undergo certain training, or the mere making of suggestions and recommendations does not amount to sufficient control. Thus, the standardized provisions commonly included in franchise agreements specifying uniform quality, marketing, and operational requirements and a right of inspection do not establish a franchisor's control or right to control the daily operations of the franchisee sufficient to give rise to vicarious liability for all purposes or as a general matter. In deciding whether the franchisor's actions give rise to a legal duty, courts typically draw distinctions between recommendations and requirements.

*Id*. § 298 (footnotes and citations omitted). *See also* Herbert B. Chermside, Jr., Annotation, *Vicarious Liability of Private Franchisor* 81 A.L.R.3d 764 (1977) (a number of cases have held that a private franchisor may be liable for acts of its franchisee when the relationship between them is that of principal and agent or master and servant).

Although no Kansas cases on point have been found, Kansas courts would almost certainly apply general agency principles -- including respondeat superior -- if it were shown that a franchisor had control or a right of control over the daily operation of the specific aspect of the franchisee's business that allegedly caused harm.[5] *Cf. Bair v. Peck*, 248 Kan. 824, 829 811 P.2d 1176 (Kan. 1991) (the common law

---

[5] The court rejects plaintiffs' suggestion that Kansas would apply a different rule based upon *State of Maryland v. Cottman*, 86 Md.App. 714, 587 A.2d 1190 (1991). In *Cottman,* the court said in dicta

doctrine of vicariously liability has long been a part of Kansas negligence law); *Restatement (2d) of the Law of Agency*, § 1 (agency results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act). *See also Allen v. Greenville Hotel Partners, Inc.*, 409 F.Supp.2d 673, 678 (D. S.C. 2006) (applying right-of-control test to determine whether franchisor vicariously liable under South Carolina law); *Wu v. Dunkin' Donuts, Inc.*, 105 F.Supp.2d 83, 87 (E.D. N.Y. 2000) (survey of various other states applying same rule).

The complaint alleges that JLI "dictates each aspect of the sales and operation of company owned stores and franchisees." Doc. 37, ¶ 2. It asserts that JLI "instructs all managers, regardless of company owned or franchise owned store, on how to operate," and that all of the franchises "implement[] the training techniques mandated by [JLI]." It further asserts that JLI provides detailed directions to franchisees, that the franchisee "is given virtually no discretion in performing its operations," and that JLI "controls the operations that led [to] the plaintiffs' Complaint." *Id.*, ¶ 44. Plaintiffs further allege that JLI has directed its franchisees to charge illegal environmental or shop fees as part of its mandated Point of Sale computer software. *Id.*, ¶ 45. Although it is clear from the briefs that JLI disputes the foregoing allegations, the court must accept them as true for purposes of ruling on a Rule 12(b)(6) motion to dismiss.

Although plaintiff Thompson's allegations relating to JLI's control are somewhat vague, they are sufficient to preclude JLI's general assertion that it cannot possibly be liable for the acts of its franchisees.

---

that an agency relationship did not exist because there was no evidence that the franchisee had a duty to act primarily for the benefit of the franchisor. *See id.*, 734-35. The franchisor was nevertheless liable, the court said, because it had "direct[ed] deceptive practices by using its economic and contractual clout to force its franchisees to commit deception...." *Id.* at 726. It is not clear to what extent this differs from the "right to control test" discussed above, but the court concludes Kansas would likely apply the control test applied by most states.

As indicated above, JLI's liability for such acts under this theory depends on whether JLI had a sufficient right of control over the specific aspect of the franchisee's actions from which Ms. Thompson alleges tortious harm.  Plaintiff has alleged such control with respect to at least some of her claims.  For example, plaintiff alleges that JLI controlled the training of its franchisees' technicians and that its negligent training proximately caused damage to plaintiff's vehicle.  For purposes of a motion to dismiss under Rule 12(b)(6), that is sufficient, regardless of whether JLI's franchise agreement states that the franchisee retains responsibility for such matters.  Although the terms of the franchise agreement may be highly probative evidence on the issue of control, the agreement alone does not preclude the possibility that the parties actually operated under a different arrangement.  *Cf. J.M. Shell Oil Co.*, 922 S.W.2d 759, 764 (Mo. 1996) (franchise agreement disclaiming any agency relationship was not dispositive).  In making this determination, the court has excluded from consideration the affidavits and other exhibits submitted by JLI in connection with its motion.  Consideration of such materials would obviously be appropriate only on a motion for summary judgment pursuant to Fed.R.Civ.P. 56, which JLI has not asserted, and which would require that the plaintiff first be given notice and an adequate opportunity for discovery.

As noted previously, the court is granting defendant's motion to dismiss plaintiffs' consumer protection claims on the basis of Rule 9(b).  As such, plaintiffs' allegations are not sufficient to show JLI's liability with respect to any such claims.  But the above discussion also shows that amendment of the complaint to correct such deficiencies would not necessarily be futile.  If plaintiffs are able to allege acts of consumer fraud with particularity as required by Rule 9(b), they could conceivably produce facts to show that defendant JLI is liable for such acts by its franchisee.

As for plaintiffs' legal theories other than consumer fraud, the allegations in the complaint pertaining

25

to the two named plaintiffs are distressingly sparse.  Only a brief portion of the 36-page First Amended

Complaint is devoted to the two named plaintiffs.  Other than Ms. Thompson's allegation that a Jiffy Lube

technician put the wrong oil filter on her car, the court is unable to identify any particular claim of negligence

on behalf of either plaintiff.  Although the complaint is filled with a multitude of general allegations about JLI's

methods, hardly any of them are tied in factually to the two plaintiffs.  *Cf. P.W. v. Kansas Dept. of SRS,*

255 Kan. 827, 831, 877 P.2d 430 (1994) (The plaintiff is required to prove the existence of a duty owed

to him or her by the defendant).  Plaintiffs argue that "the defendant's system (for instance, labor practices,

training, pressure to increase car counts and concentrate on 'DOB,' combined with the 'jiffy' concept) has

caused damages to the vehicles of consumers."  Doc. 63 at p. 4.  But this sort of vague indictment of "the

Jiffy Lube system" fails to establish the existence or breach of any specific legal duty owed by JLI to the

plaintiffs.  Nevertheless, as noted above, if the plaintiffs can prove facts showing that JLI retained the right

to control all aspects of the conduct of the franchisees, as they claim, plaintiffs could then establish JLI's

liability for the conduct of its frachisees.  Accordingly, the court will deny JLI's Rule 12(b)(6) motion to

dismiss insofar as it based upon JLI's asserted non-liability for any actions of Jiffy Lube franchisees.

   *C.  Shop Fee Claims - Rule 12(b)(6).*

   JLI also contends the plaintiffs' "shop fee" claims should be dismissed, or at least stayed, because

these claims were released in a nationwide class action settlement in the state courts of Oklahoma.  Doc.

42 at p. 23 *(citing Bayhylle v. Jiffy Lube International, Inc.*, No. CJ-2002-352 (Dist. Ct., Cherokee Co,

Okla.)).  Although the court has already determined that these claims must be dismissed pursuant to Rule

9(b), defendant's additional argument will be addressed to ascertain whether any attempt by plaintiffs to re-

allege the claims would be futile.

JLI contends Ms. Thompson was a member of the settlement class and that she and other class members released all of their past or future claims against JLI relating to environmental fees "or similarly named fees." Doc. 42, p. 23. As for plaintiff McFadgon, defendant points out that the Amended Complaint does not allege he paid any environmental or shop fees. Even if he had, defendant argues, his claims have also been released. *Id*. at p. 24. In support of this argument, defendant has submitted various records, including the Oklahoma Class Settlement Agreement, the Final Approval Order and Judgment of Dismissal, and a "Vehicle Service History Report" for Ms. Thompson. (Def. Exhs. 2-B, 2-E, 7-A). In response, plaintiffs argue the pendency of an action in state court action is no bar to proceedings concerning the same matter in federal court. Doc. 44 at p. 35 (*citing Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). They further argue the state court judgment has no preclusive effect because it is on appeal. *Id*. Lastly, plaintiffs say the complaint clearly alleges that Ms. Thompson was charged "shop fees" after the settlement in the Oklahoma action, that JLI is responsible for those shop fees, and "[t]hus, any class or individual claims arising after December 1, 2004 [the date of the judgment in the Oklahoma state action] should not be stayed or dismissed." *Id*. at 35-36.

Plaintiffs have failed to rebut the defendant's arguments. Plaintiffs' invocation of the *Colorado River* abstention doctrine overlooks the fact there is now a final judgment incorporating the class action settlement agreement. Def. Exh. 2-E. *See e.g., Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939) ("both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation *at least until judgment is obtained in one of them which may be set up as res judicata in the other*."). Moreover, the fact that the Oklahoma judgment is being appealed would not prevent application of res judicata principles. *See Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997) ("the Kansas

courts have adopted the now-majority view regarding the pendency of appeals which provides that the fact that an appeal is pending in a case does not generally vitiate the res judicata effect of a judgment.") [citations omitted]. *See also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433 (1981) (noting established rule in federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal). And plaintiffs' argument that the shop fee claims cannot be barred because they arose after entry of the Oklahoma judgment simply ignores defendant's contention that the settlement agreement included a release of all present *and future* claims. Doc. 42 at p. 23. In sum, plaintiffs put forth no viable response to defendant's argument that the shop fee claims are precluded by the class settlement agreement and the Oklahoma judgment.[6]

The court ordinarily does not consider affirmative defenses -- such as *res judicata*, accord and satisfaction, or waiver -- on a motion to dismiss under Rule 12(b)(6), although it may do so in some circumstances.[7] Plaintiffs' failure to squarely confront the issue makes it a close question whether the motion

---

[6] The *Bayhylle* Class Settlement Agreement included a class of customers who paid an environmental surcharge or other substantially similar fee charged by a franchisee of JLI since the inception of such a fee by the franchisee. Def. Exh. 2-B, ¶ 3.4. Plaintiffs do not challenge defendant's assertion that Ms. Thompson was a member of this class. Under ¶ 11 of the Settlement Agreement (dealing with class members' releases and protection from future litigation), the class released its claims against JLI and agreed to be barred and enjoined from asserting any of the released claims in any court. The released claims included any cause of action, including known and unknown claims, that the class has asserted, could have asserted, or "may in the future assert against [JLI] that refer or relate in any way to JLI's or any JLI franchisee's charging of an environmental surcharge or similar fee." It further provided that members of the class fully, finally, and forever settle and release all such claims "known or unknown," "which now exist [or] may hereafter exist,..." *Id.*, ¶ 11.1(b). The class did not waive any claims against any franchisee of JLI. ¶ 11.4. A judge of the Cherokee County District Court subsequently approved the Settlement Agreement and incorporated it in a final order which enjoined members of the class from instituting any action involving released claims. Def. Exh. 2-E. The order was entered December 1, 2004. *Id.*

[7] The court may consider an affirmative defense on a 12(b)(6) motion when the complaint itself shows on its face the existence of the defense. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301,

to dismiss these claims should be granted based solely on the complaint, the Class Settlement Agreement, and the Oklahoma court's judgment of dismissal.  Nevertheless, it is possible that matters outside of these documents could have a bearing on application of defendant's affirmative defense or defenses.  *Cf. Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651 (3rd Cir. 2003) (affirmative defenses could not be resolved without further development of the record); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (it is premature to grant a motion to dismiss based on an affirmative defense unless the allegations of the complaint set forth everything necessary to satisfy the affirmative defense).  The court notes that JLI has been less than specific about the particular affirmative defense upon which it relies -- referring only generally to "the preclusive effect" of the settlement -- and has not discussed the elements of its defense or how they apply to the facts in the complaint.  For example, JLI has not addressed the specific language of the release pertaining to an "environmental surcharge *or other similar fee*," and whether that language necessarily precludes a claim based on the "shop fees" allegedly paid by Ms. Thompson.  A complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Defendant has not demonstrated its entitlement to dismissal under that standard.  As such, the court will deny defendant's motion to dismiss Ms. Thompson's shop fee claim pursuant to Rule 12(b)(6).  Defendant has accurately pointed out that Mr. McFadgon has not alleged that he was charged a shop fee; accordingly the defendant's Rule 12(b)(6) motion will be granted with respect to any "shop fee claim" by plaintiff McFadgon.  For the reasons previously indicated, the court will grant plaintiffs leave to amend their

---

1311 n.3 (10th Cir. 1999).

complaint relating to these claims.

    D.  <u>*Class Certification*</u>.

JLI next argues that plaintiffs' class action allegations should be dismissed. Although recognizing that a court does not generally consider such issues outside of a motion to certify the class, JLI argues the court should do so here because several factors make class certification inappropriate. For example, JLI contends the proposed class of all Jiffy Lube customers since 1997 is overly broad, pointing out that such a class would likely include over 100 million people. It further contends a proposed subclass of individuals "who allege their vehicle was damaged" is an improper "fail safe" class whose membership cannot be ascertained without a determination on the merits. Such a definition is also too amorphous to identify class members, JLI contends, as is the proposed subclass of individuals who were asked to purchase "ancillary items." Lastly, JLI argues that individual questions of fact predominate over common ones, and that the prospect of applying the consumer fraud laws of fifty different states makes the proposed class action unmanageable, all of which makes class certification under Rule 23(b)(3) inappropriate.

The local rules of this court provide that the plaintiff shall file a separate motion for class certification within 90 days of the filing of the complaint unless the court otherwise extends the period. D.Kan.R. 23.1(b). *See also* Fed.R.Civ.P. 23(c)(1)(A) (the court must at an early practicable time determine by order whether to certify the action). In this instance, the Magistrate Judge has adopted a schedule for the determination of class action issues. No party has objected to that schedule, and the court sees no compelling reason to deviate from it. The court therefore declines to address the merits of the class certification issue at this time. *See Briggs v. Aldi, Inc. (Kansas)*, 218 F.Supp.2d 1260, 1265 (D. Kan. 2002). The court will address such issues upon the filing of a motion to certify.

E. *Failure to Join Necessary and Indispensable Parties - Rule 12(b)(7)*.

JLI next argues the Amended Complaint should be dismissed pursuant to Rule 12(b)(7) because plaintiffs failed to join any of JLI's franchisees as defendants, and the franchisees are necessary and indispensable parties under Rule 19.  JLI contends the franchisees are the ones who allegedly charged shop fees, exerted sales pressure, and provided the services about which the plaintiffs complain.  Noting that plaintiffs are seeking injunctive relief to stop such activities, JLI argues complete relief cannot be granted without the franchisees. *Citing Gillis v. McDonald's Corporation*, 1992 WL 236891 (E.D. Pa., Sept. 10, 1992).  Moreover, JLI contends the business interests of the franchisees would be impaired by a determination of plaintiffs' claims because plaintiffs seek an injunction that would change the way the franchisees operate.  JLI argues it too would suffer prejudice in the absence of the franchisees because plaintiffs "seek to impose liability on JLI for acts that JLI neither conducted nor controlled." Doc. 42 at p. 35.

Plaintiffs say their allegations are directed towards JLI and that no other parties are necessary.  They argue complete relief can be granted without the franchisees because "the defendant sets all policies and procedures and the franchisees just 'do as they are told.'" Doc. 44 at p. 30.  Plaintiffs say the franchisees have not claimed an interest that will be impaired in the lawsuit, and that even if they did, their interests would be adequately represented by JLI.  Additionally, plaintiffs say the franchisees are not indispensable parties. They contend a judgment without the franchisees would not be prejudicial to JLI because "it is the entity that has set the wheels of deception in motion." *Id*. at 33.  Plaintiffs further argue that any remedy obtained in the action can be fashioned so as to avoid prejudice.

Under Rule 12(b)(7),  the court may dismiss a case for failure to join a necessary and indispensable

31

party under Rule 19.  *See Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir.1994).  The defendant bears the burden of producing evidence which shows the nature of the interest possessed by an absent party and that such party's absence will impair the protection of that interest. *Id*. at 1292.  The defendant can meet its burden by providing affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence.  *Id*.

The Amended Complaint alleges that the Jiffy Lube outlet visited by Mr. McFadgon was owned by defendant JLI.  As the court noted previously, the court accepts this allegation is accepted as true for purposes of the instant motion.  Accordingly, there is no failure to join a necessary or indispensable party insofar as Mr. McFadgon's claims are concerned, because if in fact defendant JLI is the owner of the outlet, it would be the appropriate defendant as to such claims.

As for Ms. Thompson's claims,  plaintiffs allege the events complained of occurred at a Jiffy Lube franchisee.  Contrary to plaintiffs' suggestion, this franchisee has a rather obvious interest in a lawsuit that challenges the franchise's methods of operation and seeks to alter the way it does business.  The interests of the franchisee would be directly and adversely affected by a judgment in plaintiff's favor.  The injunctive relief requested by plaintiff would directly impact the franchisee and would significantly affect the franchisee's agreement with JLI.  Moreover, the court does not see how the injunctive requested -- an order to prohibit the deceptive conduct allegedly engaged in by the franchisee -- could be granted in the absence of the franchisee.  The court concludes that an adjudication of plaintiff's claims in the absence of the franchisee would, as a practical matter, impair its ability to protect its interests.  Contrary to plaintiff's suggestion that the interests of JLI and the franchisee are the same and that JLI would necessarily protect the franchisee's interests, the interests of these two entities may well be adverse to each other in some material respects.

Additionally, JLI contends the franchisee has a contractual obligation to indemnify JLI for damages arising out of the franchisee's actions, meaning the franchisee's interests may not be fully protected by JLI, and that further litigation may be forthcoming if the franchisee is not joined. *Cf. Gillis v. McDonald's Corp.*, 1992 WL 236891, *2 (E.D. Pa., Sept. 10, 1992) (franchisee's interest might be impaired in view of potential indemnity claim). In sum, the court concludes the franchise owner of the outlet visited by Ms. Thompson -- identified by JLI as "R&P Group" -- meets the requirements in Rule 19(a) of a person who should be joined if feasible.

Rule 19(a) provides in part that such a person shall be joined if they are subject to service of process and their joinder will not deprive the court of subject matter jurisdiction. The court sees nothing in the materials presented to suggest that the R&P Group would not be subject to service of process in this action, or that its joinder would deprive the court of subject matter jurisdiction.[8] Under such circumstances, "the court shall order that the person be made a party." Fed.R.Civ.P. 19(a). Accordingly, if plaintiffs file an Amended Complaint to cure the deficiencies in their pleading, they shall include the owner of the Jiffy Lube franchise visited by Ms. Thomson as a party defendant.

IV. ***Plaintiffs' Motion to Determine Choice of Law***.

Plaintiffs have filed a motion asking the court "to determine that Kansas law applies to this matter" --

---

[8] The minimal diversity requirements of § 1332(d)(2)(A) are met here, regardless of which state or states R&P Group is a citizen of. *See also* § 1332(d)(8) (jurisdictional provisions of CAFA apply before or after entry of certification order). Moreover, there is nothing to indicate that more than two-thirds of the members of the proposed classes are citizens of Kansas. *See* § 1332(d)(4)(i)(I) (circumstances where court must decline to exercise CAFA jurisdiction).

meaning to all claims of the putative nationwide[9] class of individuals who received services at Jiffy Lube company-owned or franchisee stores since January 1, 1997.  Plaintiffs contend "the interest of justice, efficiency and case law all support finding that the law of Kansas applies to this matter," notwithstanding that the acts complained of occurred throughout the United States  Doc. 45 at p.2.  In response, JLI argues the laws of each state where putative class members reside must be applied, and that application of such variant laws makes class certification impossible.  JLI believes the court should address the choice-of-law issue at this time because "it pervades every element of Rule 23" and should therefore be resolved prior to class certification.  *Citing In re Prempro Prod. Liab. Litig.*, 230 F.R.D. 555, 561 (E.D. Ark. 2005).

In support of their motion, plaintiffs note a federal court sitting in diversity will apply the substantive law of the forum state, including its choice-of-law rules, and they argue Kansas has a strong policy favoring application of Kansas law to nationwide class actions, at least absent a showing of compelling circumstances.  *Citing Shutts v. Phillips Petroleum Co.*, 235 Kan. 195 (1984), *aff'd in part and rev'd in part by Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).  Plaintiffs argue it would be constitutional to apply Kansas law to the action so long as there is no conflict between that law and the laws of other states where the challenged conduct took place.  In their 85-page brief,  plaintiffs review the laws of each State as they pertain to claims for violation of consumer protection acts, negligence, unjust enrichment and punitive damages, and they argue there is no material difference between these laws and Kansas law.  They recognize there are some differences in the consumer protection laws of various states, but they say this is irrelevant because "the defendant would be liable for deceptive practices under every statute if plaintiffs'

---

[9] Although the proposed class contains no geographic limitation, the court infers from plaintiffs' brief that the proposed class is based upon services received in any of the fifty States of the United States.

allegations are true and proven" and thus "there is no true conflict regarding liability under the various consumer protection statutes." Doc. 45 at p. 75. Plaintiffs believe application of Kansas law would satisfy constitutional requirements because JLI has significant contacts with Kansas and thousands if not millions of class members were injured in this State. Moreover, they say other States have applied their own laws in nationwide class actions, and that the interests of fairness as well as Congress' intent in enacting CAFA weigh in favor of applying Kansas law to the action. Plaintiffs contend the Kansas Supreme Court's decision in *Dragon v. Vanguard Indus., Inc.*, 277 Kan. 776 (Kan. 2004) shows "the trend of the Kansas Supreme Court is to apply Kansas law to a nationwide class action" because in that case the Court refused to state that *lex loci delicti* would govern the choice-of-law issue. Instead, the Court "provid[ed] detailed parameters regarding the application of forum law," thus showing it would apply Kansas law to a nationwide class action regardless of the existence of a conflict. Doc. 45 at 77-78. In sum, plaintiffs argue the law of Kansas should apply to all claims in the action. Alternatively, plaintiffs argue in their Reply Brief the court could apply the law of Texas to the action in view of the fact that JLI was incorporated in that State. Doc. 62 at p. 13.

JLI takes issue with each of these arguments. It contends Kansas would apply *lex loci delicti* or a similar rule to plaintiffs' claims of negligence, consumer fraud and unjust enrichment. It challenges plaintiffs' assertion that CAFA favors application of Kansas law, pointing out that one of the abuses cited by Congress in adopting CAFA was that State courts were "making judgments that impose their view of the law on other States and bind the rights of the residents of those States." 28 U.S.C. § 1711, note. JLI contends application of Kansas law to claims of out-of-state class members would be unconstitutional under *Shutts* because Kansas lacks any significant contacts with or interest in such claims, and because Kansas laws

35

pertaining to these claims differ in material respects from the laws of other states.   JLI submits a series of charts highlighting what it contends are the significant differences in state law.   It contends every federal case to have considered the issue has found significant differences in state consumer protection laws such that the differences preclude application of a single state's law and/or render a nationwide class action unmanageable.   *Citing, inter alia, In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002).   JLI says the courts have also noted differences in state negligence laws, *citing In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), a fact to which the Kansas Supreme Court alluded in *Dragon*. Similarly, defendant claims there are material differences among state laws pertaining to claims of unjust enrichment and punitive damages, which would preclude application of Kansas law to claims of putative class members in other states.   Finally, JLI argues there are differences in agency laws governing franchisor/franchisee relationships that would also preclude nationwide application of Kansas law.   In sum, JLI contends substantial differences in state laws such as those identified here have been found by nearly all courts to make nationwide class certification impossible.   Doc. 54 at p. 27.   As for plaintiffs' suggestion that the court could apply Texas law, defendant argues there is no authority for applying the law of a foreign jurisdiction to a nationwide class action and that such an application would be unconstitutional.

The choice-of-law issue presented by the parties may require a review of the laws of all fifty States. The court would not ordinarily undertake such a review absent a motion to certify a class, however, because any opinion analyzing the differences between Kansas law and the law of other states in these circumstances would be purely advisory in nature.   *Cf. In re Prempro*, 230 F.R.D. 555 (E.D. Ark. 2005) (noting that choice of law issues must be addressed "at the front end" of a motion to certify a class).   Moreover, it would be clearly inappropriate to undertake such a review here given the court's ruling on the defendant's motion

to dismiss.  The court has granted a substantial portion of the motion to dismiss, with the proviso that plaintiffs will be given leave to amend their complaint.  At this point,  it unclear what plaintiffs may or may not re-allege in an amended complaint.  As such, the court will refrain from addressing choice-of-law issues pertaining to hypothetical claims of putative class members.  The court will address such issues if, as, and when an amended complaint has been filed and a motion to certify a class is properly before the court.

V.  *__Conclusion__*.

Defendant Jiffy Lube International's Motion to Dismiss (Doc. 41) is GRANTED in Part and DENIED in Part.  The motion is granted with respect to Plaintiffs' claims of consumer fraud because the complaint fails to allege the circumstances constituting fraud with particularity as required by Rule 9(b).  The motion is denied insofar as it is based on JLI's asserted non-liability for the conduct of its franchisees.  Defendant's request to dismiss plaintiff Thompson's "shop fee" claim pursuant to Rule 12(b)(6) is denied, but the motion is granted with respect to any such claim by plaintiff McFadgon.  Defendant's motion to deny class certification is denied as premature.  Defendant's motion to dismiss pursuant to Rule 12(b)(7) for failure to join a necessary party is denied, however, the court orders pursuant to Rule 19(a) that plaintiff Thompson shall join the owner of the franchisee visited by Thompson as a party defendant to any amended complaint filed by plaintiffs.  Plaintiffs are granted 20 days from the date of this order to file an amended complaint.

Plaintiffs' Motion for Leave to File Supplemental Exhibits (Doc. 67) is GRANTED.

Plaintiffs' Motion for an Order to Determine Choice of Law (Doc. 45) is DENIED as moot at this time; the court will consider the motion in connection with a timely motion to certify a class action if one is filed.

IT IS SO ORDERED this __13th__ Day of June, 2006, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge