# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **CHAROLETTE THOMPSON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 05-1203-WEB** |
| | ) | |
| **JIFFY LUBE INTERNATIONAL, INC.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the court on plaintiffs' motion to compel Jiffy Lube International (JLI) to answer plaintiffs' discovery requests. (Doc. 115). For the reasons set forth below, the motion shall be GRANTED IN PART and DENIED IN PART.

### Background

This lawsuit stems from the services, sales tactics, and charges imposed on customers who presented their cars for an advertised "$19.99 oil change." Highly summarized, plaintiffs allege that JLI and three of its franchisees (R & P Enterprises, Heartland Automotive, Inc., and Heartland Automotive II Inc.) engaged in deceptive consumer practices which include:

> 1. misrepresenting the skills and training of Jiffy Lube technicians;

2. basing service recommendations on "severe" driving conditions;

3. inducing technicians to charge for unnecessary services; and

4. charging "environmental fees" or "shop fees."

Plaintiffs also seek permission to proceed as a nationwide class action.  Discovery is being conducted in "phases" with issues related to class certification being addressed in "phase 1."  Scheduling Order, Doc. 21; Supplemental Scheduling Order, Doc. 110.

## Motion to Compel

Plaintiffs move to compel 23 production requests and 1 interrogatory.  JLI opposes the motion, arguing that the discovery requests are unduly burdensome and/or irrelevant to the issue of class certification.  Plaintiffs counter that the requests are relevant and that JLI has failed to carry its burden of showing that the requests are unduly burdensome.

Before addressing the individual discovery disputes, the court corrects plaintiffs' misconception concerning the scope of discovery.  Citing a quote from a 1991 case, plaintiffs assert that a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing on the *subject matter* of the action.  Snowden v. Connaught Lab., Inc., 137 F.R.D. 336, 341 (D. Kan. 1991)(emphasis added).  However, the holding in  Snowden  was based on the 1991 version of Fed. R. Civ. P. 26(b)(1) which has since been amended.[1]  The current version of Rule 26(b)(1) limits the scope of discovery to

---

[1] Rule 26(b)(1) was amended in 1993 and again in 2000.

"any matter, not privileged, that is relevant to the *claim or defense* of any party." (Emphasis added). The court *may* order discovery concerning the *subject matter* of the lawsuit for *good cause*. Rule 26(b)(1) (emphasis added). Because there has been no showing of "good cause" for more expansive discovery, the scope of discovery in this case is limited to the claims and defenses raised by the parties. Having clarified the scope of discovery in this case, the individual requests and the parties' arguments are discussed in greater detail below.

## 1. E-mail

Plaintiffs move to compel:

> Electronic mail for Larry Burch, Lisa Carlson, Jack Fischbein, Myron Menk, the Jiffy Lube Market Operations Manager, Kevin Lyng, Judy Scholl, Rosa Holland, Simone Noordegraaf, Jiffy Lube managers, assistant managers, and trainers for the following terms:
>
> (1) ancillary,
> (2) unnecessary,
> (3) repairs,
> (4) fraud,
> (5) complaint,
> (6) bonus,
> (7) commission,
> (8) OttoCare,
> (9) Services,
> (10) Customer,
> (11) Negligence,
> (12) Settlement,
> (13) DOB,
> (14) Dollars,
> (15) Air filters,
> (16) Transmission,
> (17) Flush,
> (18) Pressure,

(19) McFadgon,
(20) Thompson, and
(21) PrimeTime or Prime Time.

JLI opposes the motion, arguing that the request is unduly burdensome because the request would require JLI to search the emails of over 450 employees for 21 terms as common as "dollars," "complaint," and "services."[2]  In support of its opposition, JLI submits a report from a commercial vendor estimating that the search would cost $1,181,700.

In their reply brief, plaintiffs argue that JLI has failed to provide them with any information concerning its email system; thus, plaintiffs are uncertain whether the estimate has any validity.  Plaintiffs also argue that JLI has failed to comply with a prior court order directing the parties to confer with plaintiffs on possible methods of reducing costs.  See Memorandum and Order, Doc. 73, filed May 1, 2006.  Finally, plaintiffs argue that one of the costs ("converting documents to .tif image files") is unnecessary; therefore, the cost of responding to the production request is only $600,000.

Plaintiffs' assertion that they "requested [email system] information in prior discovery but the court did not compel defendant to produce the information" is a disturbing argument. Doc. 119, p. 4.  In the earlier motion to compel, plaintiffs sought production of "any and all" information related to email."  (Doc. 39, p. 2).  The motion was denied because the request

---

[2]

JLI employs at least one manager for each of its 440 company owned stores, 52 district managers, 30 regional managers, 9 operations managers, and 4 division managers. If plaintiffs are seeking emails from franchisee managers, who are not JLI employees but may have access to JLI email addresses, the search would include an additional 2000 email addresses.

sought *all* documents related to "email" in JLI's possession and was therefore overly broad on its face. (Doc. 73, p. 11). Plaintiffs had, at a minimum, three options concerning this adverse ruling: (1) appeal the ruling to the district judge, (2) move for reconsideration, or (3) formulate a narrowed production request. Plaintiffs took no action.[3] The court rejects the assertion that plaintiffs' have engaged in appropriate discovery to clarify and understand JLI's email system.

Plaintiffs' argument that JLI failed to comply with the courts' prior order to confer is also not persuasive. The May 1 Order addressed specific production requests and required the parties to confer as to whether any alternatives would satisfy plaintiffs' discovery requests. (Doc. 73). The parties were then given the option of appearing for an evidentiary hearing or submitting a stipulation resolving the pending discovery disputes. (Doc. 73, pp. 13-14). The parties conferred as instructed and submitted a stipulation. (Doc. 74). Plaintiffs' contention that JLI violated the May 1 Order is not supported by the record.[4]

Plaintiffs' final argument that complying with the request *only* costs $600,000 is also not persuasive. Requiring JLI to expend $600,000 is still unduly burdensome and the court

---

[3]

The failure to take *any* action concerning an adverse ruling which plaintiffs now argue is crucial to their discovery efforts raises serious questions about counsel's experience, knowledge of applicable law, and resources available to represent the class. Fed. R. Civ. P. 23(g).

[4]

Equally troubling, plaintiffs fail to provide any evidence or specifics of their efforts to confer with JLI on this most recent dispute. At best, plaintiffs suggest that JLI failed to present an "offer." This vague assertion is not sufficient to require JLI to spend substantial sums to produce the email records.

remains unconvinced that examining *every* manager's email account for relatively common terms is necessary or appropriate for class certification discovery.  There must be reasonable limits on the scope of class certification discovery.  Accordingly, the motion to compel the production of email communications from over 450 JLI employees is DENIED.

**2.     Severe Driving Conditions**

Plaintiffs move to compel JLI to:

> Identify all studies, surveys, memos, and/or other documents regarding the decision to utilize, and continue to utilize, manufacturers' recommendations for severe driving conditions.

Plaintiffs seek this information to support their claims that JLI makes service recommendations to customers based on manufacturers' suggested maintenance for "severe" driving conditions when in fact the service is unnecessary.  JLI opposes the motion, arguing that the interrogatory would require it to "poll dozens of employees located throughout the country and collect possibly a massive group of documents."  This argument is rejected because the mere fact that JLI may have to "poll dozens of employees" is not, in itself, sufficient to show that the discovery request is unduly burdensome.[5]  Moreover, plaintiffs have not asked for production of the documents but rather that JLI identify the studies,

---

[5]     JLI simply provides no evidence showing that polling dozens of employees is unduly burdensome and the court is left to speculate how such a request would be communicated within the company.  For example, is there any reason JLI is unable to email a request for the information to the necessary employees?  At this point, there is no indication that JLI has even asked its employees to gauge the amount of work necessary to identify the surveys and/or studies.

surveys, and memos so that plaintiffs can request the documents they deem most beneficial to their claims.[6]

JLI also argues that the request is irrelevant to class certification because "JLI does not dispute that it uses manufacturers' recommendations for severe driving conditions." Doc. 16, p. 9. JLI asserts that plaintiffs are "free to argue that this practice is a common question for the class (although this question is swamped by individual questions concerning whether each individual class member was damaged by this practice)." Id.

Plaintiffs counter that the requested information is relevant to show that the actions complained of by plaintiffs are widespread. As an example, plaintiffs cite Customer Satisfaction Survey results produced in response to other discovery requests showing that 80% of those who responded to the survey reported "pressure by technicians." JLI argues that plaintiffs' reference to "80%" is an erroneous interpretation of one of JLI's graphs. Unfortunately, the parties' arguments concerning the results of a Customer Satisfaction Survey are of little or no value to the court in resolving plaintiffs' motion to compel.[7]

The discovery request before the court seeks information concerning JLI's *decision*

---

[6]

The discovery dispute before the court is an interrogatory, not a request for document production.

[7]

JLI argues that the graph contains insufficient information to determine the actual percentage of responding customers who felt "pressured" and that JLI has determined from other data that approximately 8% felt "pressured." However, the parties have not provided records from which their statistics are drawn to the court for consideration. More importantly, it is unclear how the cited statistical information is relevant to the discovery request before the court.

to use manufacturers' maintenance recommendations for severe driving conditions.  Plaintiffs contend that such information is necessary to show that JLI's deception is "widespread." However, it is not apparent why or how discovery concerning JLI's *decision* to use such a standard is relevant and/or necessary to resolve how widespread JLI's policy is because, as noted above, JLI admits that it uses manufacturers' recommendations for severe driving conditions when making its recommendations to customers.[8]  Accordingly, plaintiffs' stated reason for needing this information for class certification is moot and their motion to compel JLI to answer the interrogatory is DENIED.

### 3.      Service Review Forms

Plaintiffs move to compel the production of "all service review forms."  According to plaintiffs, "service review forms are forms that technicians are trained to utilize when making recommendations."  Doc. 115, p. 9.   Plaintiffs argue that this information "is relevant for background purposes and to show that all technicians utilize the same forms." Id.

JLI opposes the motion, arguing that it has produced samples of the service review forms.  More importantly, the individual review forms, if they exist, are in the possession of JLI franchisees; therefore, plaintiffs should directed their discovery requests to the

---

[8]

Plaintiffs' complaint alleges that service recommendations based on severe driving conditions without asking how the car is driven is *per se* deceptive.  Without expressing an opinion on this theory, the court notes that JLI's admission that it uses "severe driving conditions" when making recommendations reflects a "widespread" policy.

franchisees.[9]  Plaintiffs counter that they are not seeking *all* service forms, just copies of the different forms used by JLI.[10]  Because JLI has produced copies of the forms, the motion to compel is DENIED.[11]

### 4.  Documents Utilized in Determining Manufacturers' Recommendations

Plaintiffs move to compel production of:

> All documents that technicians utilize in determining the manufacturers' recommendations for vehicles.  (This includes a complete copy of the OttoCare software).

Apparently, the OttoCare program is the only document that technicians currently utilize in determining recommendations for vehicle maintenance; thus, the parties' dispute centers on issues related to the software.  Plaintiffs request a complete copy of the OttoCare software

---

[9]

According to JLI, service review forms were used prior to the introduction of "OttoCare"software in 2002 and generally are no longer in use.  "OttoCare" is JLI's computer program and provides technicians with service recommendations for a particular vehicle.  Before OttoCare, service review forms were printed and given to customers and JLI has no specific knowledge as to whether any franchisee retained copies of the forms.

[10]

Contrary to assertions in plaintiffs' reply brief, their motion to compel requests "*all* service review forms."  Doc. 115, p. 9, (emphasis added).  The inconsistency between the relief requested in plaintiffs' motion and their reply brief is baffling.

[11]

Plaintiffs ask in their reply brief that JLI "identify the service review form that plaintiffs allegedly possess by name."  Doc. 115, p. 9.  The court assumes that plaintiffs are seeking a Bates-stamp reference number to ensure that the forms have actually been produced as represented by JLI.  JLI shall provide the Bates-stamp number or other identifying information so that plaintiffs can confirm production of documents responsive to this request.

for review by their computer expert.  JLI opposes production of the software, arguing that

its offer to allow plaintiff to review the program at its Houston offices and to produce copies

of certain screens is sufficient.[12]  For the reasons set forth below, allowing plaintiff to inspect

the software program at JLI's Houston is sufficient.

The problem with plaintiffs' request for a copy of JLI's OttoCare software is that the

program is not designed as a "stand-alone program" which can be loaded onto plaintiffs'

personal computer for review and analysis.  Instead, JLI's OttoCare program operates by

retrieving information from JLI databases and "cannot operate properly without being

integrated with these databases and JLI's POS system."[13]  Doc. 116, exhibit C.  According

to JLI's software architect, Robbin Merritt, it would be a "difficult task" and "require many

hours" to rewrite the software to bypass portions of the program that normally access JLI's

databases.  Moreover, the modified version of OttoCare would still not be fully operational.

Id.  The court declines to order JLI to modify or rewrite software that will, in the end,

function differently from the OttoCare software available to the JLI service technicians.

Plaintiffs also move to compel JLI to produce all "training brochures."  Doc. 115, p.

9.  JLI counters that it has produced "hundreds of pages of training material" and plaintiffs

---

[12]

JLI agrees that plaintiffs and/or their expert "may review this program for as long
as they wish and print any screens that they wish to use as evidence."  Doc. 116, p. 12.
Plaintiffs offer no explanation why access to the OttoCare software at JLI's Houston
office is inadequate.

[13]

POS is another computer service provided by JLI to the individual stores and
stands for "Point of Sale."

have yet to print or Bates-stamp any of the documents. Plaintiffs argue in their reply brief that training materials are on a compact disk which JLI should produce. To the extent a compact disk exists which contains training materials for service technicians, the disk shall be produced.[14]

### 5.    Mystery Shop Surveys

Plaintiffs seek to compel JLI to produce all "mystery shop surveys." JLI concedes that it periodically sends "mystery shoppers" to its stores to evaluate customer service but opposes the discovery request, arguing that the relevance is "unclear." JLI also argues that the data is not stored in an electronic format and would be burdensome to gather and produce.

Neither argument is persuasive. Contrary to JLI's argument, the relevance of the requested information is "clear" because the surveys will show whether "mystery shoppers" had experiences similar to circumstances giving rise to plaintiffs' claims. Furthermore, JLI

---

[14]

Plaintiffs' motion (Doc. 115, p. 9) requests the production of "training brochures" and makes no mention of a compact disk. Again, the specific "documents" requested in plaintiffs' motion differs from the materials requested in their reply brief.

has not satisfied its burden of showing that production would be unduly burdensome.[15]
Therefore, plaintiffs' motion to compel the mystery surveys is GRANTED.


## 6.     All Store Visitation Reports

Plaintiffs move to compel the production of "store visitation reports."[16]  Plaintiffs argue that the information is relevant because the reports indicate how the store is performing and whether the store manager and service technicians are following Jiffy Lube procedures.[17] JLI opposes the motion, arguing that gathering the information is unduly burdensome because the reports are not stored in electronic format and that the reports "have to be manually pulled from each file at a staggering expense."  JLI estimates that the request

---

[15]

JLI asserts that the surveys are not maintained in an electronic format and that "each franchisee and company-owned store has a file where these and other paper documents relating to the location are stored."  JLI argues that "the thousands of documents would therefore have to be manually pulled from each file at a high cost." This vague reference to "thousands of documents" is not sufficient given the importance of these surveys.  Reports by mystery shoppers that the practice of recommending unnecessary services was widespread would support plaintiffs' request for class certification.

[16]

Store visitation reports are prepared by JLI on an annual basis for all franchisee and company-owned stores.  The visits are scheduled with advance notice and include instructions to the store operator.

[17]

JLI provided plaintiffs with examples of the reports.  Plaintiffs represent that the reports indicate whether:  (1) the store recommends unauthorized services; (2) the franchisee has a current Jiffy Lube procedure and policy manual; (3) all services are being performed in accordance with Jiffy Lube policies; (4) the technician follows the steps set forth in OttoCare; and (5) the technicians complete service in fewer than eight minutes.

encompasses 18,000 paper reports.[18]

The court agrees that the reports are relevant because the information is reasonably calculated to lead to evidence supporting their request for class certification. However, the volume of requested reports is extraordinary and the court is perplexed by plaintiffs' insistence on the production of *all* reports rather than a statistical sampling. The court concludes that plaintiffs' request for an order requiring JLI to manually pull and produce all 18,000 paper reports for 2,000 separate stores is unduly burdensome. Accordingly, the motion to compel the production of the 18,000 "store visitation reports" is DENIED.

## 7.    Surveys or Studies Regarding Manufacturer Service Recommendations

Plaintiffs move to compel any surveys or studies regarding the use of manufacturers' recommendations for maintenance. Plaintiffs argue that this information is necessary to support their allegations that "JLI is aware that this information is false and causing widespread harm." JLI opposes the motion, arguing that gathering the information is burdensome and goes to the merits of plaintiffs' claims rather than class certification issues.

The motion to compel shall be DENIED. As previously discussed in this opinion, JLI admits that it uses manufacturers' recommendations for severe driving conditions; therefore,

---

[18]    The estimate of 18,000 reports is based on plaintiffs' request for 9 years of reports for approximately 2,000 stores.

the requested information is not relevant to issues of class certification.[19]

## 8.   Marketing Operations Managers' Documents

Plaintiffs initially requested all documents generated by or to Jiffy Lube Market Operations Managers regarding the "operations of all franchises and company owned stores." After the parties conferred, plaintiffs limited their request to documents regarding: (1) recommendations for services; (2) bonus programs; (3) allegations of fraud; (4) pressure on customers, (5) allegations of negligence and/or environmental or shop fees; and (6) the speed by which technicians should complete the "signature service."  Doc. 115, p. 11.  Plaintiffs assert that the requested information is "relevant to show the control that Jiffy Lube has over its franchisees."  Doc. 115, p. 12.

JLI opposes the motion, arguing that the request is overly broad on its face and unduly burdensome because JLI would have to search the files and emails of a large group of employees over a 9 year period to locate responsive documents.  More importantly, JLI argues that it has already produced documents and information detailing JLI's relationship with its franchisees.[20]

The motion to compel shall be DENIED because the request is overly broad and

---

[19]

The requested information may ultimately be relevant to the merits of plaintiffs' claims, but discovery at this time is limited to class certification issues.

[20]

The produced documents include the franchisee agreement, policies and procedures manuals, and the Uniform Franchisee Offering Circular and prior depositions concerning this subject.

unduly burdensome on its face.  More importantly, JLI's "control" over the franchisees  is

defined in the franchise agreements and policy manuals which have been produced.

Plaintiffs assertion that the requested documents are necessary to show "control" for

purposes of class certification is unpersuasive.


9.      **Media Coverage**

        Plaintiffs seek to compel:

               All documents generated regarding media visits, reports,
               communications, and/or stories involving service at each Jiffy Lube.

Plaintiffs contend that this information is relevant to show that their complaints are

widespread.  Plaintiffs also argue that this information will be relevant to show that common

questions outweigh individual questions for purposes of class certification.  JLI produced

documents regarding a "Primetime" episode mentioned in plaintiffs' complaint but otherwise

objects to the request as overly broad.  JLI also argues that there is no centralized  source or

location for such documents and that defendant would have to conduct an extensive and

burdensome corporate-wide search to comply with the request.

        The production request is  unduly burdensome on its face because the request contains

no limitation as to time or location and the subject matter (service) is overly broad.  In order

to respond to the request, JLI would be required to query all current employees as well as

search all locations where records are stored (including the 400-plus company-owned

stores), a search that exceeds the reasonable bounds of discovery.  Accordingly, the motion

to compel such documents is DENIED.

**10.   Attorney General Communications**

Plaintiffs move to compel all communications to and from "any Attorney General" regarding: (1) recommendations for service, (2) bonus programs, (3) allegations of fraud or pressure, (4) environmental, shop or disposal fees, and (5) the speed at which technicians work.  JLI opposes the motion, asserting that the terms "negligence" and "fraud" are overly broad.  JLI argues that it will search and produce any responsive non-privileged documents if the terms negligence and fraud are eliminated.  In response, plaintiffs agree to eliminate "negligence" but insist that the term "fraud" is not too broad.

The court is not persuaded that "fraud" is overly broad in the context of this request. Because no other objections are asserted by JLI, the motion to compel "Attorney General" communications shall be GRANTED, subject to the limitations agreed upon by the parties. .

**11.   Marketing Plans or Initiatives**

Plaintiffs move to compel:

> All documents relating to marketing plans or initiatives.  **This also includes business plans that were never produced.**  (Emphasis in original).

With respect to business plans, the court granted plaintiffs' prior motion to compel in an earlier order.  <u>Memorandum and Order</u>, Doc. 73, filed May 1, 2006.  In response to the current motion, JLI argues that it complied with the prior order and produced hundreds of

pages of documents for plaintiffs' review that reflect its "business plan."  Moreover, JLI asserts that "at no time did plaintiffs make any follow up requests concerning JLI's business plans, or express any concerns that the Key Performance Indicator Reports or strategic presentations did not satisfy their request for JLI's business plans."  (Doc. 116, p. 21). Plaintiffs, in their reply brief, do not challenge JLI's contention that the business plans have been produced; therefore, the issue concerning business plans is MOOT.

With respect to marketing plans or initiatives, JLI argues that the request is overly broad on its face.  The court agrees.  The production request essentially seeks every document generated by JLI's marketing division.[21]  Such a request encompasses peripheral matters, such as advertising contracts and hiring decisions, which have nothing to do with the issues in this lawsuit, much less class certification.  Accordingly, the motion to compel shall be DENIED.

### 12.    Henry C. Flores Presentations

Plaintiffs move to compel the production of all documents that reflect any presentations made to Jiffy Lube by Henry C. Flores concerning ancillary items.[22]  JLI

---

[21]

Apparently, the request covers a period of 7 years.

[22]

"Ancillary items" apparently refer to products and services beyond the advertised "$19.95 oil change."  Unfortunately, neither party explains who Mr. Florez is and his role in this case, other than that he assisted in the development of JLI's training programs.

opposes the motion, arguing that plaintiffs have been provided with all of JLI's historic and current training materials. JLI contends that information concerning the development of the training programs is "only relevant to the merits of the case, if at all."

In light of the fact that all historic and current training programs have been provided to plaintiffs, the court is not persuaded that the additional information requested concerning Henry Flores is relevant to the issue of class certification. Accordingly, the motion shall be DENIED.

**13.     Former Executives**

Plaintiffs seek to compel "all documents that identify all former executives of Jiffy Lube since 1999." Plaintiffs contend that they are entitled to know the names for purposes of interviews. JLI objects to the request as unduly burdensome if plaintiff is only seeking the names of the executives.[23] The court agrees. Accordingly the motion to compel "all documents" shall be DENIED.

**14. & 15.     Former Managers**

Plaintiffs move to compel (1) all documents identifying all former managers of all Jiffy Lube locations since January 1, 2003 and (2) all documents identifying all former

---

[23] JLI offers to provide a list of the names of the executives. It is not clear why this discovery matter was not resolved when the parties conferred in good faith before this motion was filed.

managers for all Jiffy Lube locations since January 1, 2003 that were terminated for performance related issues. Plaintiffs argue that they are entitled to know the names of the former managers in order to interview them.

The motion to compel "all documents" shall be summarily DENIED as overly broad and unduly burdensome because, similar to the names of corporate executives discussed above, plaintiffs only desire the identity of the managers for interview purposes. According, a request for *all* documents showing that a manager worked at a particular location is overly broad on its face.[24]

## 16.    CSS Surveys

Plaintiffs move to compel all "CSS survey results" regarding pressure placed on customers. In support of their motion, plaintiffs argue: "See rationale discussed in Requests 2-5." JLI opposes the motion, arguing that the "it is irrelevant to plaintiffs' claims if some percentage of customers 'felt pressure.'"

Plaintiffs' motion to compel and supporting argument are too cryptic to permit

---

[24]

JLI has not offered to provide a list of former managers, apparently because JLI and its franchisees have employed thousands of managers over the prior years. Additionally, JLI does not have a centralized system for determining why a manager ended his employment. However, because the production requests are overly broad and unduly burdensome on their face, the court finds it unnecessary to address these additional arguments.

thoughtful assessment of the relevance of the requested information to class certification.[25]

Accordingly, the motion to compel shall be DENIED.

### 17.    Marc Graham and Executive Officer Communications

Plaintiffs move to compel JLI to

> [p]roduce all documents authored by or sent to (directly or indirectly) Marc Graham and other executives, regarding OttoCare, pressure placed on customers, customer complaints, and bonus programs.

In support of their motion, plaintiffs explain that Marc Graham was the individual responsible, in part, for "developing OttoCare and the 'push' to sell ancillary items."[26] Plaintiffs also refer the court to "rationale discussed in Requests No. 2-5, 13-15." Doc. 115, p. 15.  JLI opposes the motion, arguing that the requested discovery is irrelevant to the issues of class certification.  Plaintiffs counter in their reply brief that the information is relevant to determine whether common questions of liability outweigh individual questions.

The relevance of the requested information to class certification is not apparent and plaintiffs carry the burden of showing relevance.  The court is not persuaded that plaintiffs have carried their burden.  As discussed above, plaintiffs' references to "rationale" discussed

---

[25]    Plaintiffs provide no explanation concerning the meaning of "CSS," when the surveys were taken, who conducted the surveys, or what information was gathered.  It appears the surveys may contain information about the vague issue of whether customers "felt pressure."  Plaintiffs' suggestion to "See rationale discussed in Requests 2-5" is completely inadequate..

[26]    With the exception of plaintiff's brief explanation, no other information is provided concerning Mr. Graham's title or position with JLI.

in relation to separate discovery requests is neither coherent nor persuasive.[27]  Accordingly,

plaintiffs' motion to compel request 17 shall be DENIED.[28]


**18.    OttoCare Documents**

Plaintiffs move to compel

> a complete copy of the OttoCare Software as well as all documents
> that: describe how to interpret the data in OttoCare, discuss how
> OttoCare was developed, and/or is to be utilized by all Jiffy Lube
> locations, including franchisees.

The motion to compel production of a copy of the OttoCare Software was denied herein (see

pp.10-11) and the issue will not be revisited.  Plaintiffs have been granted access to the

program at JLI's Houston office and also have been provided access to training materials.

With respect to plaintiffs request for *all* documents describing how to interpret the

data and how OttoCare was developed and/or is utilized, JLI argues that the request is unduly

burdensome because OttoCare was developed "over a five year period by dozens of

employees" and has been utilized by thousands of employees and franchisees over the past

several years.  The court agrees that the request is unduly burdensome because a search for

---

[27]

For example plaintiffs cite the court to Request Nos. 13-15.  However, those
requests concern the identity of executives and former managers.  It is not clear how those
issues and discussions apply to the documents sought in Request No. 17.  Moreover, the
court denied plaintiffs' motion to compel Request Nos. 13-15.

[28]

JLI has made "OttoCare" available for plaintiffs' inspection at its Houston office
and has also produced its "bonus programs" as well as customer complaints.  The
discovery requested here, if relevant at all, goes to the merits of plaintiffs' claims.

*all* documents would require that thousands of employees be questioned.  According, the motion to compel shall be DENIED.[29]

### 19.      Documents discussing whether OttoCare is Deceptive

JLI asserts that, after a reasonable search, no such documents have been located. Accordingly, the motion to compel "all documents that discuss whether OttoCare is deceptive in any manner" is MOOT and therefore DENIED.

### 20.      OttoCare and Jiffy Lube's POS

Plaintiffs seek to compel all documents that discuss how OttoCare incorporates or works with Jiffy Lube's POS system.  JLI objects to this request as unduly burdensome and argues that the information is far more easily obtained through depositions or interrogatories. The court agrees and the motion to compel shall be DENIED.  Plaintiff is granted leave to take a Rule 30(b)(6) deposition or to submit an additional interrogatory to JLI.

### 21.      Communications concerning OttoCare

Plaintiffs seek to compel *all* communications to and from franchisees referring to OttoCare and/or manufacturer recommendations.  The motion to compel shall be DENIED.

---

[29]  There is no dispute that JLI and its franchisees all utilize OttoCare in making recommendations to customers.  Plaintiffs appear to be under the mistaken impression that they must prove their case *on the merits* in order to secure class certification.

JLI has approximately 1600 franchisees utilizing OttoCare and searching for and producing *all* communications, in the context of class certification, is unreasonably and unduly burdensome.

**22.     Corrective Actions**

Plaintiffs move to compel "all documents that identify any and all corrective action taken against any employee or manager as a result of pressure sales or other fraudulent activity."  JLI opposes the motion, arguing that the requested information is irrelevant to class certification because the theory of plaintiffs' class allegations are that JLI's *policies* are fraudulent or deceptive.  According to JLI, the issue of whether it disciplined or failed to police fraudulent activity at independently-owned franchisees is not a legally sufficient basis for bringing a class-action lawsuit.

JLI's interpretation of the discovery request and view of relevance is too narrow in this instance.  First, the request is not limited to franchisees and includes JLI employees.  More importantly,  a request for documents identifying corrective actions is reasonably calculated to lead to the discovery of evidence concerning widespread abuse by JLI locations selling items which are not necessary or failing to perform work for which the customer has paid.  Accordingly, the motion to compel shall be GRANTED.

**23.     Customers Charged an Environmental, Disposal, or Shop Fee**

Plaintiffs concede that they should direct their discovery concerning this request to

franchisees; therefore, this request is MOOT and DENIED.


### 24.    All Studies and Analysis of Damage Claims

Plaintiffs move to compel JLI to produce "all studies and analysis of damage claims." They argue that the documents are relevant because the internal studies will counter JLI's argument that plaintiffs' negligence claims are not suitable for class certification because of individual issues.[30]  JLI opposes the motion, arguing that it has produced detailed statistics of damage claims but that searching files for studies of damage claims would be duplicative and unduly burdensome.  Plaintiffs concede that JLI has produced a document responsive to the request.

Frankly, the logic of plaintiffs' argument in their reply brief is difficult to discern. Plaintiffs (1) acknowledge receipt of a document from JLI, (2) offer to submit the produced document for an in camera review, and (3) assert that the document is relevant to show that common questions outweigh individual questions for purposes of class certification.  After making these assertions, plaintiff simply states "[t]hus, these documents must be produced." Because the court is unable to discern the rationale of plaintiffs' argument, the motion to

---

[30]    Plaintiff does not explain how the documents will counter JLI's defense.

compel shall be DENIED.[31]

   **IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 115)** is

**GRANTED IN PART and DENIED IN PART**, consistent with the rulings set forth above.

Defendant shall produce the documents described herein on or before **December 11, 2006.**

   **IT IS SO ORDERED.**

   Dated at Wichita, Kansas this 21st day of November 2006.


                              S/ Karen M. Humphreys
                              _____
                              KAREN M. HUMPHREYS
                              United States Magistrate Judge

---

[31]

   The lack of coherent argument supported by legal authority is particularly troubling given the history of these discovery disputes.  The parties raised these 24 disputed discovery requests at a supplemental scheduling conference on September 19, 2006.  Because of the volume and complexity of discovery disputes, the court declined to entertain an oral motion to compel and directed plaintiffs to file a formal motion supported by appropriate arguments and authority.  Plaintiffs' written arguments are disturbingly deficient.