**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

CHAROLETTE THOMPSON, VALERIE  )
THOMPSON, TERRENCE MCFADGON,  )
MARILYN BAGNALL, MYRA JENKINS, )
LAURA HARRIS, ROSS LAMM, MARK  )
HANNON, and THOMAS KRUSINSKI,  )
individually and on behalf of those     )
similarly situated,                    )
                                  )
      Plaintiffs,               )
                                  )
v.                               )    Case No. 05-1203-WEB
                                  )
JIFFY LUBE INTERNATIONAL, INC.,  )
R and P ENTERPRISES, INC. d/b/a    )
Jiffy Lube, and HEARTLAND         )
AUTOMOTIVE, INC., HEARTLAND   )
AUTOMOTIVE II, INC. d/b/a Jiffy Lube )
                                  )
      Defendants.           )

<u>MEMORANDUM AND ORDER</u>

Now before the Court are Defendants' motions to dismiss under Rules 12(b)(2), (6), and (7). (Docs. 88, 105, 111). In a second amended complaint, Plaintiffs have alleged violations of consumer protection statutes, negligence, and unjust enrichment and have requested injunctive relief and monetary damages. (Doc. 83). The Court has subject matter jurisdiction. 28 U.S.C. § 1332(d)(2).

<u>I.  Nature of the Case.</u>

The following allegations are taken from Plaintiffs' second amended complaint. (Doc. 83). Jiffy Lube Incorporated (JLI) is a corporation organized under the laws of the State of Texas and doing business in the State of Kansas and throughout the United States. (Id. ¶ 20). JLI has 2,200 service centers and provides service to more than 30,000,000 automobiles a year. (Id. ¶ 37). JLI

requires company owned stores and franchisees to follow a system of standards, policies, and procedures. (Id. ¶ 39).

JLI has negligently trained its personnel by training them to set sales goals for additional items instead of of focusing on technical aspects of automobile repair. This training includes tricks to convince customers to purchase unneeded items such as showing the customer the color of fluids when the color is not determinative of the need for repair. (Id. ¶ 43). JLI also trains its managers to recommend the manufacturers' recommendations for severe conditions without inquiring into the driving habits of the customer. (Id. ¶¶ 42, 43). JLI visits its franchisees to analyze their operations. If JLI finds a franchisee deficient, it requires managers to implement remedial action. (Id. ¶ 44).

JLI has also made deceptive claims that its technicians are certified. (Id. ¶ 48). JLI makes no distinctions between company and franchise owned stores. However, JLI does not state the type of certification received and it gives the impression that its technicians are certified to the Automotive Service Excellence (ASE) standards. (Id. ¶ 50). However, JLI is not ASE certified and technicians are trained by JLI instructed managers. (Id.). In its website, JLI states that its technicians receive exhaustive classroom, video, and hands-on training in every service offered; however, few if any technicians actually undergo mechanical or classroom training. (Id.). JLI hires technicians and managers with no mechanical experience. (Id. ¶¶ 51, 52).

JLI has made false statements by representing that it does not endorse any policy that places sales targets on customer purchases when it does. (Id. ¶¶ 55, 56). JLI's compensation policy shows that employees of JLI owned stores receive points and bonuses based on the number of additional items that are sold. (Id.).

JLI makes deceptive service recommendations through a software program called

"Ottocare". (Id. ¶ 58). This software program is implemented through the Jiffy Lube Point of Sale Computer System (POS). (Id.). The POS only includes information that was approved and implemented by JLI. (Id.). JLI requires franchisees to make service recommendations based on severe conditions, regardless of the customer's driving habits. (Id. ¶ 57). This practice is deceptive because: (a) OttoCare does not actually contain true manufacturer recommendations for severe conditions, which vary by manufacturer; (b) JLI utilizes one definition to define severe conditions which includes ordinary activities such as driving in stop and go traffic and driving at prolonged higher engine speeds; furthermore, this definition is different from the manufacturers' definitions of severe condition; (c) JLI does not train or allow its technicians to determine whether a vehicle is truly driven under severe conditions. (Id. ¶¶ 58, 64). The POS also fails to consider whether the car was serviced by anyone prior to the time the vehicle was brought to Jiffy Lube; furthermore, based on its own surveys, JLI knows that many customers are not severe drivers. (Id. ¶ 62). As a result, JLI knows that its Ottocare program makes recommendations that are not needed. (Id.).

JLI's sales goals of additional items cause deceptive practices. JLI provides sales quotas, commissions, goals, and sales training for all company and franchise owned stores. (Id. ¶ 81). JLI does not train its employees to inform the customers that they receive a bonus for selling additional items or that there are goals set for the purchase of additional items. (Id.). This is deceptive because it misleads the consumer to believe that the technicians are making recommendations that are in the best interests of the consumer. (Id.). JLI does not penalize technicians for pressuring customers, despite the fact that over 80% of surveyed customers report feeling pressured to buy additional items. (Id. ¶ 83). Technicians receive a monthly incentive bonus based on goals and ticket average. (Id. ¶ 84). JLI requires technicians to concentrate heavily on the "Dollars over Base" (DOB). (Id.

¶ 85).  A ticket is the term used by defendants to refer to each vehicle's bill and base is when the ticket is $29.99.  (Id.).  JLI requires technicians to ensure the tickets reach $30.00 over base.  (Id.).  JLI will suspend technicians a week without pay for failing to meet DOB goals for the month.  (Id. ¶ 87).  To avoid penalties, employees pressure customers and misrepresent the need for additional services.  (Id. ¶ 88).  JLI's system puts technicians under so much pressure to make sales and to conduct service quickly that they negligently perform the actual mechanical services.  (Id. ¶ 95).

JLI and franchisees have imposed an environmental surcharge or shop fee of $1.99. (Id. ¶ ¶ 97, 99).  This fee implies that it is government mandated but JLI and the franchisees keep the entire amount of the fee.  Although JLI has entered into a settlement agreement to cease charging the environmental fee, JLI has simply renamed the environmental fee as a shop fee and has continued to charge the $1.99.

Charolette Thompson (Thompson) is a Kansas resident and visited Jiffy Lube #54 (JL 54) in Wichita, Kansas on September 9 and November 2 of 2004; June 13 and October 22 of 1998; September 24 and October 25 of 1999; August 30, 2001; January 23, April 24, and December 14 of 2002; and May 28, October 23, and October 24 of 2003 .  (Id. ¶ ¶ 8, 103, 105, 107, 110, 113, 114, 116, 117, 118, 121, 122, 124, 125, 127, 128, 130).  This Jiffy Lube is a franchise owned by R&P Enterprises, which does business in Kansas.  (Id. ¶ ¶ 17, 108).

On several occasions, JL 54 made service recommendations to Thompson based on the Ottocare system without having inquired into Thompson's driving habits.  (Id. ¶ ¶ 109).  Based on these deceptive recommendations, Thompson purchased additional services, some of which were unnecessary according to the manufacturer's recommendations.  (Id. ¶ ¶ 111, 113, 123, 131).  The employee failed to inform Thompson that he would receive a commission for purchases Thompson

made. (Id. ¶ 103). Additionally, Thompson was charged and paid the $1.99 environmental fee. (Id. ¶ 132). Thompson alleges technicians at the R&P owned franchise incorrectly changed the oil filter and transmission fluid, which resulted in damages to her vehicles. (Doc. 83 ¶¶ 134, 138). These damages are the result of negligence, poor training and the hurried manner in which technicians perform services to meet the goals set by JLI. (Id. ¶¶ 133, 134, 138).

Terrence McFadgon (McFadgon) is a resident of Tennessee and he visited JLI franchises owned by Heartland Automotive (Heartland) in Tennessee. (Id. ¶¶ 10, 18, 19, 140,141 143). Heartland is the largest Jiffy Lube franchisee and has locations in Kansas. (Id. ¶ 18). On several occasions, Heartland's franchises made recommendations based on the Ottocare system without having first inquired about McFadgon's driving habits. (Id. ¶ 145). These recommendations included purchasing additional items that were not recommended by the manufacturer. (Id.). The technicians did not inform McFadgon of the commission and goal system. (Id.). As a result of these recommendations, McFadgon purchased additional unneeded services. (Id.). McFadgon also paid the $1.99 environmental fee. (Id. ¶ 100). McFadgon makes no allegations of negligence.

Plaintiffs Valerie Thompson (V. Thompson), Marilyn Bagnall (Bagnall), Myra Jenkins (Jenkins), Laura Harris (Harris), Ross Lamm (Lamm), Mark Hannon (Hannon), and Thomas Krusinski (Krusinski) make similar allegations of negligence and unlawful business practices. (Id. at 32-56).

## II.   Improper addition of parties.

Defendants argue that V. Thompson, Bagnall, Jenkins, Harris, Lamm, Hannon, and Krusinski were improperly added. Defendants argue Plaintiffs' addition of seven plaintiffs to the complaint

is improper under Rule 21; however, the Tenth Circuit has held that "Rule 15(a) governs the addition of a party...because it is actually a motion to amend." *United States ex rel. Precision Co. v. Koch Indus., Inc.,* 31 F.3d 1015, 1018 (10th Cir. 1994).

Rule 15(a) states:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

Plaintiffs have already amended their complaint once; however, they requested and received leave of the Court. (Doc. 35). Are Plaintiffs still entitled to amend as a matter of course? The authority on this issue is divided; however, the plain language of the Rule persuades the Court that Plaintiffs are still entitled to amend their pleading under Rule 15. Plaintiffs have not yet amended as a matter of course and no responsive pleading has been filed. See *Nicely v. U.S. Steel Corp.*, 574 F. Supp. 184, 185 (D.C. Pa. 1983); but see *Vars v. Int'l Bro. of Boilermakers*, 204 F. Supp. 245, 246 (D. Conn. 1962) (right to amend as a matter of course waived if party first requests leave of court to amend).

Defendants next argue Plaintiffs' attempt to amend the pleadings to add additional plaintiffs should be denied because it contravenes the scheduling order. (Doc. 21).

The Tenth Circuit has not decided whether good cause needs to be shown under Rule 16(b) in addition to the standards under Rule 15(a). *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). However, other circuits, as well as Kansas district courts, have held that when a party seeks to amend the pleadings after the deadline set in the scheduling order, that party must

6

also meet the requirements of Rules 16. *MomsWIN, LLC v. Lutes,* 211 F.R.D. 650 (D. Kan. 2002); *Denmon v. Runyon*, 151 F.R.D. 404, 407 (D. Kan. 1993); *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000); *In re Milk prods. Antitrust Litig.*, 195 F.3d 430, 437-438 (8th Cir. 1999). The Court finds the reasoning in those cases persuasive and will apply the standards in Rule 16(b).

Rule 16(b) states that "the district judge, or a magistrate judge...shall...enter a scheduling order that limits the time...to join other partes and to amend the pleading." Fed. R. Civ. P. 16(b). The rule also states that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge or...a magistrate judge." Id. The advisory committee notes to Rule 16 states that good cause can be shown when the deadlines in the scheduling order "cannot reasonably be met despite the diligence of the party needing the extension." Fed. R. Civ. P. 16 advisory committee note to the 1983 amendment; see *Parker*, 204 F.3d at 340 (good cause under Rule 16(b) depends on the diligence of the party).

"The rules further empower the court to make such orders as are just to sanction a party or a party's attorney who fails to obey a scheduling...order. Sanctions may include the entry of an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990); Fed. R. Civ. P. 16(f).

The Court must first answer the question, have Plaintiffs violated the scheduling order? The scheduling order imposed a deadline of October 3, 2005 for adding parties and amending the pleadings. (Doc. 21). Without requesting leave of the Court to first amend this deadline, Plaintiffs

added seven new plaintiffs, nine months later, on July 3, 2006. (Doc. 79). Instead of conceding this point, Plaintiffs instead claim that the addition of seven plaintiffs was not untimely. The Court disagrees with this spurious argument as it is clear that Plaintiffs' addition of seven other plaintiffs violated the scheduling order deadline.

In spite of the scheduling order violation, the Court will not immediately jump to sanctions as Plaintiffs have provided a variety of reasons for their dilatory addition of seven plaintiffs. As a result, the Court will construe Plaintiffs' arguments as attempting to show good cause to amend the scheduling order to permit the additional parties. *Summers v. Missouri Pac. R.R. Sys.,* 132 F.3d 599, 604 (10th Cir. 1997) (rigid adherence to the scheduling order is not desired).

Plaintiffs first argue that the new plaintiffs should be allowed to remain in this action because a new deadline for adding parties will be issued during the September 19, 2006 scheduling conference. A quick look at the order from the September scheduling conference shows no change of this deadline. (Doc. 110). This shows a lack of diligence as this was an opportunity to amend the scheduling order. At the scheduling conference, either Plaintiffs neglected to request leave of the Court to amend the deadline for adding parties or such a request was denied.

Next, Plaintiffs argue they were permitted to add plaintiffs because the Court ordered additional defendants to be added in its June 2006 order. Plaintiffs' expansive reading of the Court's order is unreasonable. The Court was very clear in its June 2006 order that the franchisees were indispensable parties. The order stated "if plaintiffs file an Amended Complaint to cure the deficiencies in their pleading, they shall include the owner of the Jiffy Lube franchise visited by Ms. Thompson as a party defendant." (Doc. 77 at 33). Plaintiffs cannot use this language to add seven new plaintiffs, as these parties are outside the Court's unambiguous instructions.

8

Next, Plaintiffs argue they told Defendants about their intentions to add more plaintiffs. Rule 16 allows a scheduling order to be modified for good cause and by leave of the court. Notification to adverse parties is not listed in Rule 16 as a condition to modify a scheduling order and it is insufficient to permit a scheduling order modification.

Plaintiffs next argue that a motion to modify the scheduling order to permit the addition of seven more plaintiffs would have been imprudent because the Court was already analyzing a motion to dismiss. Plaintiffs' contention that it is permissible to disregard Rule 16(b) when it is perceived that the Court is busy with other motions is entirely without merit. Conversely, it would have been prudent to file such a motion while the Court was analyzing other motions in this case so all issues could have been addressed in the June 2006 order. (Doc. 77).

Lastly, Plaintiffs argue the new plaintiffs' allegations involve the same facts as those already alleged in the complaint. The similarity of all plaintiffs' claims does not show diligence. Plaintiffs provide no explanation why the seven new plaintiffs with these same factual allegations could not have been added prior to the expiration of the deadline. *Cf. Sithon Maritime Co. v. Holiday Mansion,* 177 F.R.D. 504, 508-509 (D. Kan. 1998) (good cause standard met when party showed factual basis for new claims could not have been reasonably discovered prior to the scheduling order deadline). As a result, Plaintiffs have not shown good cause.

The scheduling order deadline for the addition of parties remains October 3, 2005. The Court will not modify the scheduling order because Plaintiffs have failed to show good cause. As a result, the Court dismisses, without prejudice, those claims asserted by plaintiffs V. Thompson, Bagnall, Jenkins, Harris, Lamm, Hannon, and Krusinski, as the claims of these parties violates the scheduling order deadline. Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(C); see *Parker*, 204 F.3d

at 340 (denying leave to amend pleading because party did not show good cause).  The remainder of this order will address the two remaining plaintiffs, Thompson and McFadgon.

### III.  Motion to dismiss under Rule 12(b)(2).

Heartland makes well supported arguments that the Court has no personal jurisdiction over it.[1]

"The Plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  When a Rule 12(b)(2) motion is decided on the basis of affidavits and other evidence, a plaintiff need only make a prima facie showing of personal jurisdiction; furthermore, all factual disputes are resolved in a plaintiff's favor.  *Worthington v. Small*, 46 F. Supp. 2d 1126, 1128 (D. Kan. 1999).  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1092 (10th Cir. 1998) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Soma Medical Intern v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999) (citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).  The Court will first analyze whether there is jurisdiction under the Kansas long arm statute.  Kan. Stat. Ann. 60-308(b); *Kluin v. American Suzuki*

---

[1] Although Heartland labels its motion as one under Rule 12(b)(6), it is a motion under Rule 12(b)(2) for lack of personal jurisdiction.  Fed. R. Civ. P. (b)(2).

*Motor Corp.*, 274 Kan. 888, 894, 56 P.3d 829 (2002) (a court first decides if the long arm statute permits jurisdiction and only if this is satisfied does the court continue to the constitutional analysis).

Plaintiffs argue jurisdiction is appropriate under section (b)(1) of the long arm statute because Heartland owns many Jiffy Lube franchises in the state of Kansas.

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
> (1) Transaction of any business within this state...

Kan. Stat. Ann. 60-308(b)(1) (2005).

"There are three factors which must coincide if jurisdiction is to be entertained over a nonresident on the basis of the transaction of business within the state: (1) The nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, the act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend the traditional notions of fair play and substantial justice." *Kluin*, 274 Kan. at 834 (citing *St. Paul Surplus Lines Ins. Co.,* 245 Kan. 258, 264, 777 P.2d 1259 (1989)). "For jurisdiction to exist under subsection (b)(1) of 60-308, there must be a nexus between the transaction of business and the alleged claim." *Kluin*, 274 Kan. at 896.

The Court finds that Plaintiffs have not met these requirements. The complaint alleges that Heartland violated the Tennessee Consumer Protection Act (TCPA) when McFadgon purchased services from its franchises in Tennessee. (Doc. 83 ¶¶ 19, 140). The evidence confirms that the stores visited by McFadgon in Tennessee are owned Heartland. (Doc 89, Ex. 3-1). Heartland also owns Jiffy Lube franchises in Kansas; however, these franchises are not accused of any misconduct. McFadgon's claims do not arise out of conduct from Heartland's business in Kansas; consequently, the requirements of the long arm statute are not met and personal jurisdiction is not appropriate. See

*Worthington*, 46 F. Supp. 2d at 1131 (no personal jurisdiction under section (b)(1) when plaintiff's claims arose from acts performed in Missouri); *Schlatter v. Mo-Comm Futures, Ltd.,* 233 Kan. 324, 334, 662 P.2d 553, 561 (1983) (plaintiff's claim under Kansas securities laws did not arise out of defendants' transaction of business in Kansas, which consisted of possession of unrelated investments and the performance of construction jobs); *Kluin*, 274 Kan. at 898 (no personal jurisdiction under section (b)(1); plaintiff's claims for breach of contract after purchasing the product in Oklahoma, did not arise out of defendant's contacts in Kansas, which consisted, *inter alia*, of owning unrelated dealerships in Kansas).

McFadgon argues that personal jurisdiction is appropriate under the doctrine of general jurisdiction.  He claims the Kansas long arm statute incorporates this doctrine because it is to be liberally construed to the full extent permitted by the limitations of the due process clause of the Fourteenth Amendment.  *Volt Delta Res. Inc. v. Devine,* 241 Kan. 775, 777, 740 P.2d 1089, 1092 (1987).

General and specific jurisdiction are terms used when determining the minimum contacts with the forum in the due process analysis.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-415 n. 8, 9 (1984).  Specific jurisdiction may be asserted if the defendant has 'purposefully directed' its activities toward the forum state, and if the lawsuit is based upon injuries which 'arise out of' or 'relate to' the defendant's contacts with the state."  *Doe v. National Medical Services*, 974 F.2d 143, 145 (10th Cir. 1992) (citing *Burger King,* 471 U.S. at 472)).  General jurisdiction lies when the defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state."  *Trierweiler v. Croxton and Trench Holding*

*Corp,* 90 F.3d 1523, 1533 (10th Cir. 1996) (citing *Helicopteros*, 466 U.S. at 415 n. 9 (1984)).

Plaintiffs are mistaken about the availability of general jurisdiction in Kansas. While constitutionally permissible, general jurisdiction in Kansas was not available prior to 2006. *Kluin*, 56 P.3d at 896 (60-308(b) is limited to cases of specific jurisdiction and does not provide for general jurisdiction). The Kansas Supreme Court has stated that "the legislature could enact a statute providing for general jurisdiction, but it has not done so." *Id.* This conclusion is bolstered by the recent amendment of 60-308(b) to permit general jurisdiction. Kan. Stat. Ann. 60-308(b)(2) (2006). However, this recent change to the long arm statute does not benefit Plaintiffs.

"In determining whether the provisions of any statute apply prospectively or retroactively, the general rule is that a statute operates only prospectively unless there is clear language indicating the legislature intended otherwise." *In re Hunt,* 32 Kan. App. 2d 344, 358, 82 P.3d 861 (2004) (citing *In re Tax Appeal of Alsop Sand Co., Inc.*, 265 Kan. 510, 523, 962 P.2d 435 (1998)). In this instance, the Kansas legislature specifically stated that the amended 60-308 was to have prospective effect. H.B. 2610, 2006 Leg., Reg. Sess. § 3 (Kan. 2006) ("This act shall take effect and be in force from and after its publication in the statute book."); www.kslegislature.org/legsrv-statutes/index.do (amended 60-308 effective as of July 1, 2006). McFadgon's allegations occurred prior to the effective date of the amended 60-308; consequently, he cannot avail themselves to general jurisdiction.

McFadgon's excerpt from the *Volt Delta* case is equally unpersuasive. "The fact that 60-308(b) is to be liberally construed does not mean that the courts are to ignore the statutory requirement that the cause of action arise from the defendant's doing of one or more of the enumerated acts in this state." *Kluin*, 274 Kan. at 898 (citing *Three Ten Enterprises, Inc. v. State*

13

*Farm Fire & Cas. Co.*, 24 Kan. App. 2d 85, 91, 942 P.2d (1997)).

Kansas' long arm statute does not allow for personal jurisdiction over Heartland because McFadgon's claims do not arise out of Heartland's Kansas contacts and the statute prior to 2006 did not allow for general jurisdiction.  Heartland's motion to dismiss is granted on this basis; however, the dismissal is without prejudice.  Fed. R. Civ. P. 41(b).

### IV. Motion to dismiss under Rule 12(b)(7).

JLI argues McFadgon's claims should be dismissed under Rule 12(b)(7), which allows for dismissal for failing to join a party under Rule 19.  "The proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence."  *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier,* 17 F.3d 1292, 1293 (10th Cir. 1994).  The proponent's burden can be satisfied by providing affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence."  *Id.*  The facts in the complaint by themselves are taken to be true until controverted by defendant's affidavits; however, any conflicts in affidavits will be resolved in the plaintiff's favor.  *Integrated Business Information Service (Proprietary) Ltd. v. Dunn & Bradstreet Corporation,* 714 F. Supp. 296, 299 (N.D. Ill. 1989) (applying this principle in a 12(b) motion permitting extra-pleading evidence).  Rule 19 states:

> (a) Persons to be Joined if Feasible.  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double multiple, or otherwise inconsistent obligations by reason of the claimed interest.

14

(b) Determination by Court Whenever Joinder not Feasible.  If a person as described in subdivision (a)(1)(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.  The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(a).

In its previous order, the Court ordered R&P to be joined because, *inter alia,* the absence of this franchisee would impair its interests.  (Doc. 77 at 32).  Because R&P was subject to service of process, the Court confined its analysis to Rule 19(a).  The Court finds the same reasons for joining R&P to be applicable to Heartland; however, it is not feasible to join Heartland because there is no personal jurisdiction; consequently, Heartland is not subject to service of process under Rule 4.  As a result, the Court will proceed directly to the analysis under Rule 19(b).

## 1.  Factor one.

"The first test to be considered is the extent to which a judgment rendered in the person's absence might be prejudicial to him or those already parties.  This test considers the need to protect absent persons from litigation adversely affecting their interests and the need to protect those who are parties from the threat of multiple actions."  *Glenny v. American Metal Climax, Inc.*, 494 F.2d 651, 654 (10th Cir. 1974) (internal quotations omitted).  Furthermore, "in some cases the interests of the absent person are so aligned with those of one or more parties that the absent person's interests are, as a practical matter, protected."  *Davis ex Re. Davis v. United States*, 343 F.3d 1282, 1291-1292 (10th Cir. 2003).

McFadgon alleges Heartland is JLI's agent; consequently, JLI will adequately protect its interest. (Doc. 83 ¶ 1, 57, 81, 99); (Doc. 100 at 23). JLI claims the franchisees have an interest in the operation of their business and any injunction would affect this interest.

First, McFadgon has requested an injunction against, *inter alia,* the charging of environmental fees. (Doc. 100, Aff. of Lawrence Williamson ¶ III. m). Under Plaintiff's proposed injunction, JLI would have to implement a disciplinary policy to terminate the Franchise Agreement if Heartland charged an environmental fee. (Id. ¶ III. m(3)). The Franchise Agreement already provides for situations which could result in the termination of the agreement. (Doc. 89, Ex. 1-A ¶ 17). Consequently, the proposed injunction would require the Franchise Agreement be amended by adding other conditions. Heartland would have to cease charging environmental fees or risk breaching the Franchise Agreement and the injunction. See *Glenny*, 494 F.2d at 654 (absent parties would be prejudiced through continued adjudication against its parent company because plaintiff requested the court close down absent party's operation). Such an injunction would adversely affect Heartland's rights under the Franchise Agreement.

Plaintiff retorts that JLI will protect the Heartland's interests; however, the facts do not support such a conclusion. JLI entered into a settlement agreement in which it agreed to cease charging environmental fees in company owned stores; however, the settlement agreement also reserved the right of a franchisee to continue to charge such a fee. (Doc. 89, Ex. 2-B at 25). Plainly, Heartland's interest in maintaining an environmental fee is not coequal with JLI's interest. JLI will have little interest in defending Heartland's right to charge environmental fees when it has forsaken its own ability to do so. Furthermore, Heartland's interests under the Franchise Agreement vary from those held by JLI. As a result, Heartland cannot rely on JLI to safeguard its interests in defending

16

against the inclusion of the proposed disciplinary policy into the Franchise Agreement.  Heartland would suffer prejudice, in its absence, from the continued adjudication of this claim.

Second, Plaintiff McFadgon has requested an injunction against the use of severe conditions for service recommendations.  (Doc. 100, Aff. of Lawrence Williamson ¶ III. d-f).  This would require JLI to change the POS computer system and the Ottocare software.  The Court finds that Heartland has an interest in the POS system as it is the basis for service recommendations to its customers.  However, the Court finds that Heartland's interest is sufficiently aligned with JLI's interest that Heartland would not suffer prejudice.

Although JLI provides evidence that franchisees can input variables such as categories, pricing, and fees, there is no evidence that franchisees can change the Ottocare software which allegedly gives deceptive severe service recommendations through the POS system.  (Doc. 89, Ex. 1 ¶ 19).  Conversely, the Franchise Agreement specifically states that the franchisee cannot alter or modify the POS software, which  includes Ottocare.  (Doc. 83 ¶ 58); (Doc. 89, Ex. 1-A ¶ 10.2.17). Furthermore, there is nothing in the Franchise Agreement showing JLI needs a franchisee's consent to change the POS system.  This shows Heartland's interest in the POS computer system is largely dependent on JLI.

Additionally, both Heartland and JLI have a similar pecuniary interest in maintaining the POS system.  Plaintiffs' allegations state the POS system gives deceptive service recommendations which cause customers to purchase unneeded goods and services.  JLI and Heartland benefit from such a system as franchisees are obligated to pay JLI a royalty equal to five percent of the gross sales.  (Doc. 89, Ex. 1-A,  ¶ 6.2.1).  Furthermore, Heartland's contractual rights under the Franchise Agreement would not be adversely affected by a potential injunction against the POS system because Heartland already has an obligation under the penalty of termination to implement the POS system as dictated

17

by JLI.  (Doc. 89, Ex. 1-A,  ¶ 10.1, 17.3).  As a result, JLI will adequately represent Heartland's interest in maintaining the POS system.

Finally, McFadgon has requested an injunction against the deceptive bonus system.  (Doc. 100, Aff. of Lawrence Williamson ¶ II); (Doc. 83 ¶ 85).  The parties provide little analysis about this claim.  Without citing to the record, JLI asserts that it has no bonus plan.  (Doc. 109 at 26).  While there is an affidavit from Kevin Lyng, a JLI official, that JLI owned stores do not require technicians to concentrate on a specific dollar amount, there is no representation that JLI does not require this of its franchisees.  (Doc. 89, Ex. 1 ¶ 11).  JLI has not met its burden under Rule 12(b)(7) to provide evidence showing the nature of the interest of the absent party.  As a result, Heartland would suffer no prejudice from the adjudication of this claim in its absence.

### 2.  Factor two.

The second factor "obligates the court to seek an alternative to dismissing the action if to do so will minimize the prejudicial effect."  *Glenny*, 494 F.2d at 654.  Neither party makes any argument or suggests any alternate form of relief that would minimize the prejudicial effect discussed above.  An injunction would directly affect Heartland; consequently, there is no satisfactory way to minimize the prejudicial effect in Heartland's absence.

### 3.  Factor three.

The third factor measures whether a judgment rendered in the person's absence will be adequate.  "The concern underlying this factor is not the plaintiff's interest 'but that of the courts and the public in complete, consistent, and efficient settlement of controversies,' that is, the 'public stake in settling disputes by wholes, whenever possible.'" *Davis*, 343 F.3d at 1293 (quoting *Provident*

*Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)).

McFadgon argues that dismissal of his claims would be inefficient because he would re-file them in state court, where they would be removed to Federal court and be transferred back to this court.

"For the convenience of parties and witnesses [and] in the interest of justice a district court may transfer any civil action to any other district...*where it might have been brought*."  28 U.S.C. § 1404(a) (emphasis added).  McFadgon's claim would not be transferred back to this district for two reasons.

First, transfer to Kansas would not be convenient for the parties and witnesses because McFadgon lives in Tennessee, Heartland owns the stores in Tennessee where McFadgon received services, and the harms caused by the allegations occurred in Tennessee.   Second, assuming McFadgon's claims are dismissed pursuant to Rule 12(b)(7), his claims could not be transferred back to this district because they could not have originally been brought in this district.  See *Sunbelt Corp. v. Noble, Denton & Associates, Inc.*, 5 F.3d 28, 33 (3d Cir. 1993) (case could not be transferred to a court which did not have personal jurisdiction over a party as it was not a jurisdiction in which the action might have been brought).

McFadgon next contends that JLI and Heartland are in an agency relationship; consequently, relief would be complete without Heartland.  The evidence does not entirely support this conclusion. JLI provides evidence showing it has no control of whether Heartland charges environmental or shop fees.  (Doc. 89, Ex. 1 ¶ ¶ 10, 12, 14, 16, 21).  As a result, Plaintiffs could not obtain complete relief on this claim without Heartland.   Indeed, McFadgon concedes as much.   (Doc. 100 at 20). Consequently this factor militates in favor of dismissal of McFadgon's environmental claim against JLI.  See *Armstrong v. American Disposal Services, Inc.*, 1994 544145 *4 (D. Kan. Sept. 1, 1994)

19

(court could not grant complete relief without subsidiary company which actually operated the landfill).

## 4.  Factor four.

The fourth factor determines whether McFadgon has an adequate remedy if the action is dismissed for nonjoinder.  Fed. R. Civ. P. 19(b).  Generally the availability of an alterative remedy or forum is not a sufficient reason for dismissal as the factor is of primary significance when there is an absence of an alterative forum.  *Rishell v. Jane Phillips Episcopal Memorial Medical Center*, 94 F.3d 1407, 1413 (10th Cir. 1996).  McFadgon claims he does not have an adequate remedy because it would be cost prohibitive and there would be discovery difficulties.  The Court disagrees.

While individually McFadgon's claims may be quite small, he is free to file a class action lawsuit in Tennessee or any other forum where a court would have personal jurisdiction over both Heartland and JLI.  *Glenny*, 494 F.2d at 654 (plaintiffs had adequate remedy as a forum in state court was available).  The complaint alleges there are possibly millions of class members because JLI and its franchisees service over 30 million vehicles a year.  (Doc. 83  ¶ 25).  Given the large number of potential plaintiffs, the Court is not persuaded that McFadgon will be unable to file a similar state wide class action in Tennessee or some other appropriate forum.

McFadgon next argues that a lawsuit in another forum would be impossible because he would be unable to gain discovery from JLI about its deceptive practices.  This argument is at best spurious and at worst frivolous.  First, this argument is based on a lawsuit without JLI; however, any discovery difficulties could be remedied by making JLI a party to a lawsuit.

Second, even if JLI were not a part of a lawsuit in another forum, discovery would be possible because the Rules of Civil Procedure allow for discovery from non-parties.  While McFadgon is

correct that interrogatories are unavailable when seeking information from a non-party, Rule 33 is but one of many discovery rules available to litigants.  Fed. R. Civ. P. 33 (interrogatories may be served upon a party).  Parties can take depositions of non-parties and document requests and discovery material can be compelled from non-parties through the power of subpoena under Rule 45. Fed. R. Civ. P. 30 ("[a] party may take the deposition of any person, including a party..."); Fed. R. Civ. P. 34(c) ("a person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45."); Fed. R. Civ. P. 45 (rules governing a subpoena). McFadgon's discovery concerns are unsupportable.  Because complete relief is available in state court, the fourth factor in the Rule 19(b) analysis also leans toward dismissal.

McFadgon makes other arguments which are not tied to a specific factor; however, the Court will consider these arguments as the list of factors in Rule 19(b) is not exclusive.  *Davis*, 343 F.3d at 1289.

McFadgon contends that continuing this litigation without Heartland is consistent with the intent of the Class Action Fairness Act (CAFA).  The Court must first take a look at the intent and purposes behind the CAFA.

Congress stated that the pre-CAFA class action laws led to abuses, including: class members received little or no benefit; state courts kept cases of national importance out of Federal court; state courts demonstrated bias against out-of-state defendants; and state courts made judgments imposing their view of the law of other states. Act of Feb. 18, 2005, Pub. L. No. 109-2, 2005 U.S.C.C.A.N. (119 Stat.) 5.  As a result, Congress, *inter alia*, relaxed the rules of removal to Federal courts and diversity jurisdiction.  Id. at 9-13.

The Court does not find McFadgon's argument persuasive.  The abuses that led to CAFA have nothing to do with a court's dismissal based on a failure to join an indispensable party.  CAFA is not

21

an all encompassing mandate to keep class actions in one Federal court in every case; rather, it allows a greater number of class actions to be brought in Federal instead of state courts through relaxed diversity and removal statutes.  The Court recognizes that if his claims are dismissed, Plaintiff McFadgon may have to file his claim in state court; however, this is not inconsistent with CAFA, as the legislative history shows class actions in state courts are still appropriate under certain circumstances.  S. Rep. No. 109-14, at 27 (2005), *as reprinted in* 2005 U.S.C.C.A.N. (Vol. 4) 27.

McFadgon next makes a simple one sentence statement that Rule 23 authorizes defendant classes.  Presumably, McFadgon argues that a defendant class would be appropriate in this case. However, the inclusion of a defendant class has not been pled in the complaint and Plaintiffs include no legal support or analysis.  See D. Kan. R. 23.1(a)(2)(A).  The Court agrees that Rule 23 does authorize defendant classes; however, the Court's analysis ends there as McFadgon's argument concomitantly  goes no further.  The Court will not consider "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation."  *United States v. Wooten,* 377 F.3d 1134, 1145 (10th Cir. 2004) (quoting *Murrell v. Shalala*, 43 F.3d 1388, 1390 n. 2 (10th Cir. 1994)).

Plaintiffs next argue Rule 19 does not apply to Rule 23 class actions.  Rule 19(d) is titled "Exception of Class Actions" and states, "[t]his rule is subject to the provisions of Rule 23."  Fed. R. Civ. P. 19(d).  The interpretation of this rule is the subject of some disagreement. see *Thompson v. Board of Education*, 71 F.R.D. 398 (W.D. Mich. 1976) (holding Rule 19 is inapplicable to class actions); but see *Shimkus v. Gersten Companies,* 816 F.2d 1318, 1321 (9th Cir. 1987) (applying Rule 19 to the extent it does not conflict with Rule 23's provisions).

The Court agrees with the *Shimkus* case.  The plain language of Rule 19(d) does not exempt

class actions from its provisions; rather, it requires a court to apply Rule 19 to the extent it does not

conflict with Rule 23. *Id.* McFadgon makes no subsequent argument that there is a conflict between

the Rules 19 and 23; consequently, the Court declines to reach this issue.

After considering all of the factors, the Court concludes in equity and good conscience that

Heartland is an indispensable party as to McFadgon's claim relating to the environmental fee. The

Court dismisses without prejudice McFadgon's environmental fee claim against JLI under Rule

12(b)(7). See Fed. R. Civ. P. 41(b). The Court finds that Heartland is not an indispensable party as

to McFadgon's claims relating to the deceptive POS system and the deceptive bonus system. The

motion to dismiss is denied as to these claims.[2]


### V.  Motion to dismiss under Rule 12(b)(6).

"A motion to dismiss is appropriate when the plaintiff can prove no set of facts in support of

the claims that would entitle plaintiff to relief." *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543

(10th Cir. 1995). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence

that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Sutton v. Utah State School for the Deaf

& Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th

Cir. 1991)). Furthermore, "all well-pleaded factual allegations in the complaint are accepted as true

and viewed in the light most favorable to the nonmoving party." *Sutton,* 173 F.3d at 1236.

---

[2] Plaintiffs also claim that JLI has made deceptive and false statements by claiming that
its technicians are certified and that it has no sales goals. JLI fails to engage in any meaningful
discussion how the factors relate to these claims or the absent party; consequently, it has failed to
meet its burden under Rule 12(b)(7) and the Court denies its motion as to these two claims.

A.  Standing.

Defendants argue that Plaintiffs lack standing to assert their claims.  Although presented as a motion under Rule 12(b)(6), dismissal for failure to meet the constitutional requirement of standing implicates the subject matter jurisdiction of the Court and can be raised under Rule 12(b)(1). *Colorado Environmental Coalition v. Wenker,* 353 F.3d 1221, 1227 (10th Cir. 2004).  "Rule 12(b)(1) motions generally take one of two forms.  The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Merrill Lynch Business Financial Services, Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).  In this case, Defendants' arguments do not go beyond the sufficiency of the complaint; consequently, the analysis differs little under either Rules 12(b)(1) or 12(b)(6).

Standing requires, *inter alia*, that plaintiffs suffer an injury in fact and that there be "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 103 (1998).

> The party invoking federal jurisdiction bears the burden of establishing these elements.  Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (internal citations omitted).

"To satisfy the standing requirement, plaintiffs must show that they personally [have] suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that

the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Riggs v. City of Albuquerque*, 916 F.2d 582, 584 (10th Cir. 1990).

R&P argues McFadgon's claims should be dismissed against it because it is not alleged he received services from R&P. Plaintiffs concur. (Doc. 113 at 13). As a result, McFadgon's claims are dismissed against R&P.

R&P next argues Thompson lacks standing because she has not alleged an injury as a result of R&P's alleged misconduct. The Court disagrees. Thompson alleges she was damaged because she paid for unnecessary services and the deceptive environmental fee. (Doc. 83 ¶¶ 108, 112). She specifically alleges that her average bill was over 87 dollars, which was the result of defendants' deceptive practices. (Doc. 83 ¶ 108). Thompson has adequately alleged an injury and generally connected it to R&P's conduct.

R&P next argues Thompson does not state a claim for injunctive relief because it is not incorporated in her specific allegations. Instead of rebutting this argument, Thompson acknowledges that she does not request injunctive relief from R&P. Because Thompson does not request injunctive relief from R&P, this claim for relief is dismissed against R&P.

JLI argues Plaintiffs have no standing because they failed to connect their injuries to allegations of false statements and recommendations based on severe driving conditions.

The Court does agree that Plaintiffs have failed to show they were damaged from JLI's misstatements that its technicians are certified and false statements about sales targets. Plaintiffs provided no rebuttal to these arguments in their brief. The complaint generally pleads these two claims for relief; however, nothing in the named plaintiffs' allegations connects their injuries with this misconduct. (Id. ¶¶ 47-56). As a result, Plaintiffs have failed to plead minimum allegations

25

showing standing to assert these claims of relief.[3]  Accordingly, these two claims are dismissed.

However, Plaintiffs have sufficiently connected their injuries to the deceptive service recommendations.  Plaintiffs allege that although their vehicles were not driven in severe conditions, JLI, through its POS computer system, recommended services to them based on an assumed severe condition, knowing these services were not actually needed.  (Id. ¶¶62, 69). Furthermore, Plaintiffs allege the franchisees cannot deviate from deceptive service recommendations made by the POS system.  (Id. ¶ 59).  Standing has been sufficiently pleaded for this claim.


B. The statute of limitations.

JLI and R&P argue that many of Plaintiffs' claims are barred by the statute of limitations.[4] The statute of limitations is an affirmative defense; however, "when the dates given in the complaint make clear that the right sued upon has been extinguished", this issue may be resolved on a motion to dismiss. *Aldrich v. McColloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990).

Thompson filed her initial complaint on June 2, 2005.  (Doc. 1, Ex. 2).  In Kansas, the statute of limitations for an action brought under the Kansas Consumer Protection Act (KCPA) is three years.  Kan. Stat. Ann. 60-512(2) (statute of limitations for causes of action created by statute); *Williamson v. Amrani,* 152 P.3d 60, 71 (Kan. 2007) (KCPA is a statutory cause of action).  The statute of limitations for a negligence action is two years.  Kan. Stat. Ann. 60-513(a)(4).  Under the

---

[3] The Court notes that it also dismissed these allegations in its prior order for failure to comply with Rule 9(b).  (Doc. 77 at 16).

[4] Defendants confine their arguments on this issue to Plaintiffs' negligence and consumer protection act claims; therefore, the Court's analysis will not include Plaintiffs' unjust enrichment claims.

Tennessee Consumer Protection Act (TCPA), the statute of limitations is one year from a person's discovery but not more than five years after the date of the consumer transaction giving rise to the claim for relief.[5]  T.C.A. § 47-18-110.

With respect to McFadgon, JLI claims the statute of limitations began when he was added to the action not when the suit was filed.

"Under present Rule 23, however, the difficulties and potential for unfairness which, in part, convinced some courts to require individualized satisfaction of the statute of limitations by each member of the class, have been eliminated, and there remain no conceptual or practical obstacles in the path of holding that the filing of a timely class action complaint commences the action for all members of the class..." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550 (1974).  "Thus, the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs." *Id.* at 551.  As a result, the Court will calculate the statute of limitations for McFadgon's claims from when the original complaint was filed.

Plaintiffs argue their allegations are subject to the continuing violations theory and are not barred by the statute of limitations.  The continuing violations theory "provides that when the last act of wrongful conduct is part of an ongoing pattern and occurs within the filing period, allegations concerning earlier acts are not time-barred." *Lowe v. Surpas Resource Corp*, 253 F. Supp. 2d 1209, 1251 (D. Kan. 2003); see *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992).  "[T]he continuing

---

[5] A federal court sitting in diversity jurisdiction will apply the choice of law rules of the forum state.  *B-S Steel of Kansas, Inc. v. Texas Industries*, Inc., 321 F. Supp. 2d 1214, 1222 n. 33 (D. Kan. 2004).  "When analyzing choice of law provisions in an action for tort, Kansas applies the rule of lex loci delicti, or the site of the injury."  *Bradbury Co., Inc. v. Teissier-duCros*, 413 F. Supp. 2d 1209, 1229 (D. Kan. 2006).  McFadgon was injured in Tennessee and to resolve this motion, the Court will apply Tennessee law to his claims.

violation doctrine has been applied very infrequently outside the Title VII employment discrimination context.  The limited areas in which courts have broadened the doctrine's application have involved explicit statutory language, unequivocal legislative intent, or contractual arrangements."  *United Cities Gas Co. v. Brock Exploration Co.*, 984 F. Supp. 1379, 1388 (D. Kan. 1997) (internal quotations omitted); see *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).  Furthermore, the continuing violation theory is premised on the need to file administrative charges and it has no application to those actions not requiring the filing of such charges.  *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997)

The Court does not find Thompson's arguments persuasive.  There is no explicit statutory language allowing for the application of this doctrine.  Additionally, a review of the remedies permitted by the KCPA reveals no requirement to first file administrative charges; rather, an aggrieved consumer can proceed directly to court.  Kan. Stat. Ann. 50-634.

Thompson argues that Defendants concealed their wrongful conduct and the statute of limitations should not run until she discovered her rights had been violated.  She states that  "[t]he continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1415 n.6 (10th Cir. 1993).

The Court disagrees.  Recently, two Kansas Courts of Appeal (KCA) have unequivocally declined to permit a cause of action under the KCPA to accrue upon discovery of an injury after the statute of limitations in Kan. Stat. Ann. 60-512(2) expired.  *Four Seasons Apartments, Ltd. v. AAA Glass Service, Inc.,* 152 P.3d 101, 105 (Kan. 2007); *Johnsmeyer v. Hanover Development Co. II,* 120 P.3d 808 2005 WL 2495817 (No. 93,158)  (Kan. Ct. App. Oct. 7, 2005) (unpublished opinion); but

see *Alexander v. Certified Master Builder Corp.*, 43 F. Supp. 2d 1242 (D. Kan. 1999).  By applying the continuing violation doctrine, the Court would be permitting that which neither the state courts nor the state legislature allow, the continuation of a KCPA claim after the expiration of the statute of limitations based on the discovery of an injury.  See *Four Seasons*, 152 P.3d at 105 (unlike an action for fraud, the legislature did not provide for the accrual of an KCPA action upon discovery of an injury).  As a result, the Court declines to apply the continuing violation doctrine to Thompson's claims.  Thompson's KCPA claims against R&P and JLI that pre-date June 3, 2002 are barred.  (Doc. 83 ¶ ¶ 110, 113, 114, 116, 117, 118, 121).  Plaintiff Thompson's two negligence claims, which occurred after June 3, 2003 are not barred.  (Id. ¶ ¶ 134, 138).

The Court does not find McFadgon's claims persuasive either.  The Sixth Circuit has acknowledged that it is reluctant to apply the continuing violation doctrine outside the context of discrimination.  The Court declines to broaden the scope of this doctrine to include claims made under the TCPA.

The relevant statute states: "[a]ny action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief."  T.C.A. § 47-18-110.  McFadgon went to a JLI franchisee on three occasions: February 3, 2002; July 30, 2004; and April 22, 2005.  This lawsuit was filed June 2, 2005.  Unlike Kansas, Tennessee applies a discovery rule to its consumer protection statute of limitations.  Tennessee courts have interpreted the discovery rule to make the statute of limitations run when the plaintiff discovers or in the exercise of reasonable care should have discovered, that an injury was sustained as a result of the defendant's wrongful conduct.  *Shadrick*

*v. Coker,* 963 S.W. 2d 726, 733 (Tenn. 1998); *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. l982). There are no facts in the complaint showing when McFadgon discovered the practice was unlawful; furthermore, whether the plaintiff exercised reasonable care in discovering the injury is usually question of fact for the jury. *Wyatt v. A-Best, Co., Inc.*, 910 S.W.2d 851, 854 (Tenn. 1995). As a result, the Court declines to dismiss McFadgon's claims on this basis.

R&P also argues that it was not made a party to this case until the filing of the second amended complaint on July 3, 2006; consequently, the statute of limitations should run from this date because the claims against it do not relate back. Fed. R. Civ. P. 15(c). R&P alleges that there was no mistake concerning the identity of the proper party. As support, R&P cites the initial complaint which acknowledges the existence of the franchisees but alleges no cause of action against them. (Doc. 37 ¶ 24). Furthermore, the Court notes that Plaintiffs continue to allege that the claims are not directed toward any franchisee. (Doc. 100 at 12-13). Plaintiffs offer no rebuttal.

The relevant part of Rule 15(c) states:

An amendment of a pleading relates back to the date of the original pleading when

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).

The Court notes that the allegations in the first amended complaint against JLI are the same, although in less detail, as those in the second amended complaint against JLI and R&P. (Doc. 83 ¶¶ 101-138); (Doc. 37 ¶¶ 56-61). As a result, the Court will focus its analysis to determine if Rule

15(c)(3) has been met.

Rule 15(c) permits the amendment of a complaint "to correct a formal defect such as a misnomer or misidentification." Fed. R. Civ. P. 15, 1991 advisory committee notes. There is an abundance of law showing that Rule 15(c) does not permit an amendment of a complaint to add a party when the plaintiff knew the identity of the party and its role but chose not to sue. *Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993) (no amendment permitted when there was no mistake of identity but a conscious choice of whom to sue); *Powers v. Graff,* 148 F.3d 1223, 1227 (11th Cir. 1998) ("Nothing in the Rule or in the Notes indicates that the provision applies to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged."); *Wilson v. United States Gov't*, 23 F.3d 559, 563 (1st Cir. 1994) ("Wilson fully intended to sue GEGS, he did so, and GEGS turned out to be the wrong party. We have no doubt that Rule 15(c) is not designed to remedy such mistakes."); *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006); *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994); *Maycher v. Muskogee Medical Center Auxiliary*, 129 F.3d 131 (Table) (10th Cir. 1997); *Greenhorn v. Marriott Int'l., Inc.*, 258 F. Supp. 2d 1249, 1258-1260 (D. Kan. 2003).

Applying the rule in the above cases, the allegations against R&P in the second amended complaint do not relate back to the initial complaint. Thompson has argued and continues to argue that R&P is not needed in the litigation. It is clear from the pleading and Plaintiffs' arguments that Thompson was aware of R&P's identity and role in the allegations yet made a deliberate, tactical choice not to include it in this suit. Rule 15(c) was not intended to permit relation back in this instance.

The second amended complaint was filed on July 3, 2006. (Doc. 79). As a result, the statute

of limitations bars any KCPA claim against R&P prior to July 3, 2003.  This includes the following dates:  May 28, 2003 and December 14, 2002.  (Doc. 83 ¶¶ 122, 124).  The allegations of negligence are all within two years of the filing of the second amended complaint; therefore, they are not barred.

C.  Res Judicata.

JLI argues that claims alleging a deceptive environmental or similarly named fee are barred by the doctrine of res judicata, as these issues have been already adjudicated in an Oklahoma court. Plaintiffs argue they received no notice of the Oklahoma settlement.  JLI retorts that Plaintiffs did receive notice and that notice is irrelevant.  To support its argument, JLI cites to an order of the Oklahoma court mandating direct mail and publication notice be given to JLI and franchisee customers.  (Doc. 89, Ex. 2-D at 20-22).

Generally, on a motion to dismiss facts outside the pleading are not considered; however, facts subject to judicial notice may be considered. *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).  "This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record.  However, the documents may only be considered to show their contents, not to prove the truth of the matters asserted therein" *Id.* (internal quotations omitted); see *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may take notice of proceedings in other courts if those proceedings have a direct relation to matters at issue).

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Federal courts have consistently accorded preclusive effect to cases decided

by state courts. *Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 681 (10th Cir. 1991).

The principles of res judicata and due process also apply to judgments in class actions. *Twigg v. Sears, Roebuck & Co.*, 153 f3d 1222, 1226 (11th Cir. 1998). "Before the bar of claim preclusion may be applied to the claim of an absent class member, it must be demonstrated that invocation of the bar is consistent with due process, and an absent class member may collaterally attack the prior judgment on the ground that to apply claim preclusion would deny him due process." *Id.* (internal citations omitted). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Court finds Plaintiffs' arguments persuasive. First, as the above law makes clear, in class actions, the preclusive effect of res judicata does not bar Plaintiffs' claims if the requirements of due process have not been satisfied. Consequently, an inquiry into due process is relevant. Second, whether Plaintiffs received actual or constructive notice is a factual issue that is inappropriate for resolution on a motion to dismiss under Rule 12(b)(6). While the Court can take judicial notice of certain documents, they cannot be used to show the truth of the matter asserted - that notice was indeed given as prescribed in the order. As a result, the court denies JLI's motion to dismiss on this basis.

## D. JLI's liability for the conduct of the franchisees.

JLI argues the complaint needs to be dismissed because the facts do not directly allege that the franchisees are agents of JLI. The complaint states that JLI requires its franchisees to make

service recommendations without deviation from the JLI controlled and deceptive POS computer system.  (Doc. 83 ¶ ¶ 57, 58, 59).  Plaintiffs also allege JLI instructed franchisees not to inform people about the environmental fee, which is implemented through the POS computer system.  (Id. ¶¶ 97, 99).  The Court finds that these facts, viewed in the light most favorable to Plaintiffs, show sufficient support for an agency relationship.  As a result, the Court denies the motion to dismiss based on this argument because it cannot be shown "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.".[6]  *Haines v. Kerner*, 404 U.S. 519,521 (1972).

E.  Failure to state a claim.

JLI argues that failure to disclose a system of compensation is not deceptive or otherwise covered by the TCPA or the KCPA.  JLI argues that awarding commissions based on the amount of sales is so widespread that to hold it as unlawful would be absurd.  Plaintiffs fail to rebut this argument in their briefs; however, the complaint states that a failure to reveal a system of compensation is material because "it misleads consumers to believe that the technicians are solely making recommendations that are in the best interests of the customers when in reality the technicians have a direct financial interest in the purchase and must sell a certain number of items."  (Doc. 83 ¶ 81).

The KCPA states that the wilful omission of a material fact is a deceptive act.  Kan. Stat. Ann.

---

[6] In a footnote, JLI resurrects its argument that it is not responsible for the acts of its franchisees.  JLI refers the Court back to its briefs in its initial motion to dismiss.  (Docs. 42 and 50).  The Court denied this argument in its previous order.  (Doc 77 at 18-26).  JLI has provided no reason for the Court to re-visit this issue; consequently, the Court denies this argument for reasons elucidated in its previous order.

50-626(b)(3).  The TCPA proscribes deceptive acts and has included material omissions as being deceptive.  *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (1997).  "[A] fact is material if it is one to which a reasonable person would attach importance in determining the choice of action in the transaction involved."  *Waggener v. Seever Systems, Inc*., 233 Kan. 517, 524, 664 P.2d 813 (1983).

The Court finds JLI's argument persuasive.  The specific compensation system of a company is not something a reasonable person would find important.  What is material are the representations about the goods and services to be purchased.  Furthermore, the disclosure of a compensation system is not material because it is already known.  It is common knowledge in our society that sales representatives and companies have an economic incentive to sell goods or services.  See *White v. Early*, 211 S.W. 3d 723, 741 (Tenn. Ct. App. 2006) (omission that right to use boat slip at marina was subject to continued lease from Army Corps of Engineers was common knowledge; consequently, failure to disclose this was not a material omission or deceptive under the TCPA).  This claim fails as a matter of law and JLI's motion to dismiss is granted on this basis.

JLI next argues that no named Plaintiff relied on JLI's recommendations based on Ottocare's severe driving conditions or that their vehicles did not need the service.  The Court disagrees.  Read liberally, the complaint states that Thompson and McFadgon relied on and purchased services based on a technician's service recommendation and this recommendation emanated from the POS system.  (Doc. 83 ¶¶ 111, 144, 145).  Thompson and McFadgon both allege that their vehicles were not driven in severe conditions.  (Id. ¶ 69).  These allegations are sufficient to state a claim.

JLI next argues that Thompson's negligence claim fails because, as a matter of law, JLI's actions are too attenuated to be the proximate cause of damages.

JLI relies on *Jones v. Filler, Inc.*, 43 F. Supp. 2d 1052 (W.D. Ark. 1999) to show that a

franchisor is not liable for the negligent acts of the franchisee.  In this case, the plaintiff sued the franchisee and franchisor for negligently installing products on his car which caused an accident.  *Id.* at 1053.  On summary judgment, the court found that the franchisor did not exert daily control over the franchisee's business and there was no agency relationship.  *Id.* at 1057.  The court found the franchisor, as a matter of law, was not liable for plaintiff's injuries.  *Id.*

JLI also cites *Davey v. Hedden*, 260 Kan. 413, 920 P.2d 420 (1996).  In *Davey*, the Kansas Supreme Court found that the owners of an automobile did not negligently entrust their automobile to their minor son because there was no evidence that they knew their child would allow third parties to drive the vehicle.  *Id.* at 428.  As a result, there were no facts showing that their actions were the proximate cause of the injury and the dismissal on summary judgment was appropriate.  *Id.*

"Whether conduct in a given case is the proximate cause of a plaintiff's injuries is normally a question of fact for a jury."  *Id.* at 426.  Dismissal was affirmed in the above cases on summary judgment because the record had been developed to a point that there were no disputed facts showing proximate cause or liability.

"The Rule 12(b)(6) motion addresses itself solely to the failure of the complaint to state a claim..."  5A Wright and Miller, Federal Practice and Procedure § 1356 (1990).  Thompson's negligence claim meets the requirements of Rule 8.  *Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (Rule 8 requires a plaintiff to state their claims so as to inform the defendants of the legal claims asserted).  She has alleged alleged dates of misconduct, an injury, and a theory of relief. Whether JLI's actions proximately caused Plaintiff's damages is an issue that cannot be resolved without further factual development.  The Court denies JLI's motion as to this argument.

JLI next argues Plaintiffs' unjust enrichment claims should be dismissed if all other claims

are dismissed because liability depends on a finding that JLI has committed a tort.  The Court

disagrees.  First, the legal claims against JLI have not all been dismissed.  Second, unjust enrichment

is not dependent on a finding of liability based on another claim.  See *Haz-Mat Response, Inc. v.*

*Certified Waste Services Ltd.*, 259 Kan. 166, 177, 910, P.2d 839, 847 (1996) (the elements of unjust

enrichment); see *Hartman v. Stumbo*, 195 Kan. 634, 637, 408, P.2d 693, 696 (1965) (unjust

enrichment not dependent on concomitant fraud claim).

Finally, JLI argues the Court should dismiss Plaintiffs' class action allegations.  JLI refers to

its briefs filed in the first motion to dismiss.  (Docs. 42, 50).  The Court denies this argument for the

same reasons set forth in its previous order disposing of the first motion to dismiss.  (Doc. 77 at 30).


F.  Rule 9(b).

JLI and R&P argue Plaintiffs' allegations warrant dismissal for again failing to plead

allegations under the KCPA with particularity.  Fed. R. Civ. P. 9(b).  In its previous order the Court

gave the relevant standards, stating:

> Rule 9(b) states in part: "In all averments of fraud or mistake, the circumstances constituting
> fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This requirement
> applies to allegations of deceptive trade practices under the KCPA. *In re Universal Service*
> *Fund Telephone Billing Practices Litigation,* 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003);
> see also *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan.1995)...At
> the same time, Rule 9(b) is considered together with Rule 8, which calls for pleadings to be
> simple, concise, and direct. *Id.* (citing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246,
> 1252 (10th Cir.1997)). To survive a motion to dismiss, an allegation of fraud must "set forth
> the time, place, and contents of the false representation, the identity of the party making the
> false statements and the consequences thereof." *Id.* (citing *Lawrence Nat'l Bank v. Edmonds*,
> 924 F.2d 176, 180 (10th Cir.1991)). "In other words, the plaintiff must set out the 'who, what,
> where, and when' of the alleged fraud." *Plastic Packaging Corp.,* 136 F. Supp. 2d 1201, 1203
> (D. Kan. 2001); see also *United States ex rel. Smith v. The Boeing Co.,* 2006 WL 542851, at
> *3 (D. Kan., Feb. 27, 2006).

(Doc. 77 at 12).

37

Thompson argues the above authority erroneously held that Rule 9(b) was applicable to claims under the KCPA.[7]  Thompson claims such a holding conflicts with legislative intent and the Kansas state courts' application of a similar state procedural rule.  Kan. Stat. Ann. 60-209(b) (requiring fraud or mistake be pleaded with particularity); *Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan. App. 2d 47, 913 P.2d 209 (1995).  It is unclear, however, if Thompson is arguing the Court should apply the state procedural rule or whether the Court should consider state law as persuasive authority.  In either instance, the argument fails.

The test for resolving conflicts between state and federal law in diversity cases was summarized in *Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 4 (1987).  The Supreme Court stated:

> In *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1965), we set forth the appropriate test for resolving conflicts between state law and the Federal Rules [of Civil Procedure].  The initial step is to determine whether, when fairly construed, the scope of Federal Rule [9(b)] is sufficiently broad to cause a direct collision with the state law or implicitly, to control the issue before the court, thereby leaving no room for the operation of that law.  The Rule must then be applied if it represents a valid exercise of Congress' rulemaking authority, which originates in the Constitution and has been bestowed upon this Court by the Rules Enabling Act, 28 U.S.C. § 2072.

*Id.* (internal quotations and citations omitted).

The Court disagrees that there is a direct conflict of the pleading requirements of KCPA claims in state and federal courts.  In *Ayalla, v. Southridge Presbyterian Church*, 152 P.3d 670 (Kan. Ct. App. 2007), the plaintiff made a claim based on fraudulent misrepresentation under the KCPA and the court stated it was subject to the heightened pleading standard.  *Id.* at 676.  Second, the *Ray* case, cited by Thompson, does not apply the state procedural pleading rule for cases sounding in fraud.  *Ray*, 22 Kan. App. 2d at 50.  *Ray* held that the burden of proof for KCPA claims is not the

---

[7] McFadgon does not make a similar argument with respect to claims under the TCPA; consequently, the Court will confine its analysis to the KCPA.

same as fraud. *Id.*  Although *Ray* cited legislative intent, the issue in that case was substantive, not procedural.  See  *Woody v. Walters,* 54 F. Supp. 2d 574, 580 n. 2 (W.D.N.C. 1999) (Rule 9(b) is a special pleading requirement concerning procedure within federal courts, whereas, state law will govern the burden of proof at trial).  As a result, it does not directly conflict with the application of Rule 9(b).

Even assuming, *arguendo*, that there is a direct conflict between the state and federal procedural treatment of claims made under the KCPA, the Court need not apply the state procedural rule.  While the literal language of Rule 9(b) does not mention consumer protection acts, courts in this district and others have found that Rule 9(b) encompasses certain claims made pursuant to that act. *Burton,* 884 F. Supp. at 1515;  *Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998); *Frota v. Prudential-Bache Secs., Inc.*, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986); *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 283 (D. Del. 1993); *In re Healthco intern., Inc. Securities Litigation,* 777 F. Supp. 109, 113 (D. Mass. 1991); *Ramson v. Layne*, 668 F. Supp. 1162, 1170 (N.D. Ill. 1987).  Thompson does not argue the application of Rule 9(b) is unconstitutional or that it exceeds the authority of the Rules Enabling Act.  28 U.S.C. § 2072.  While Plaintiffs cite to state authority, the determination of the scope of a rule of civil procedure "is a federal question; certainly a federal court may construe its own rules of procedure."  *Minnesota Power & Light Co. v. Hockett*, 14 Fed. Appx. 703, 707 (7th Cir. 2001) (interpreting Rule 65(c)'s phrase 'costs and damages' to exclude attorney's fees despite contrary authority in comparable state procedural statute).  As a result, application of Rule 9(b) is appropriate.

Thompson's final argument is that Rule 9(b) is inapplicable because the KCPA is not the same as fraud.

The Court notes there are three general purposes for the heightened pleading requirement in Rule 9(b): "to enable defendants to prepare meaningful responses, to preclude the use of a groundless fraud claim as a pretext to discover a wrong, and to safeguard defendants from lightly made charges which might damage their reputations." *In re Longhorn Securities Litigation,* 573 F. Supp. 255, 263-264 (D. C. Okla. 1983); see *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).   The Court finds these purposes to be applicable to the case *sub judice*.   The case involves multiple claims of misrepresentations which may damage the reputation of the defendants; furthermore, given the different defendants, dates, and locations, a, particular pleading is necessary to prepare a meaningful response.

Furthermore, there is ample support for the application of Rule 9(b) to actions other than common law fraud.   "Although the language of Rule 9(b) confines its requirements to claims of ... fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."   *Frith*, 9 F. Supp. 2d at 742 (quoting *Toner*, 821 F. Supp. at 283); see *Frota*, 639 F. Supp. at 1193 ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty - statutory, common law, tort, contractual, or fiduciary."); *Burton v. R.J. Reynolds Tobacco Co.,* 884 F. Supp. 1515 (D. Kan. 1995) (actions based on fraud but not precisely fraud are still required to be pleaded with particularity).

The Court agrees with the reasoning in the above cases.   Next, the Court must decide if the gravamen of Thompson's claims sound in fraud.   Most KCPA claims involve aspects of fraud. *Ayalla*, 152 P.3d at 676 (listing elements of fraud); *Burton*, 884 F. Supp. at 1524 ("the elements of an action under the KCPA are identical to fraud actions except for the intent requirement."); Kan.

40

Stat. Ann. 50-626(b)(1-10) (defining deceptive acts and practices); Kan. Stat. Ann. 50-627(b)(5) (unconscionable act involving intentional misleading statements likely to induce consumer reliance); *cf.* Kan. Stat. Ann. 50-627 (b)(1-5, 7) (listing practices not involving misrepresentations or fraud).

The gravamen of Plaintiffs' KCPA claims are based on fraudulent concealment as Defendants allegedly did not disclose to customers that service recommendations are based on severe conditions or the true reason for the environmental fees.  See *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 911 (10th Cir. 2005) (elements of fraudulent concealment under Kansas law).  Indeed, Plaintiffs, themselves, frequently refer to these practices as fraudulent. (Doc. 83 ¶¶ 3-4, 26(c), 81, 101, 107, 176, 177); (Doc. 100 at 37).  As a result, the Court will continue to apply Rule 9(b) to Thompson's claims under the KCPA.

F(1).  Identity of the party making the misrepresentations.

JLI and R&P both argue Plaintiffs have failed to state with particularity who made the misrepresentations.  "In the context of corporate defendants, plaintiffs must identify the specific individuals who made the alleged misrepresentations."  *Gottstein v. National Ass'n for Self Employed,* 53 F. Supp. 2d 1212, 1218 (D. Kan. 1999).  "If plaintiffs cannot identify the individuals by name, they must use alternative means to more precisely identify the speaker." *Arena v. Wal-Mart Stores, Inc.,* 221 F.R.D. 569, 572 (D. Kan. 2004).  This can include alleging "the individual's employer, job title and location in which he or she made the statement."  *Id.* at 572 n. 1.

While not identified by name, Thompson does identify the person as a technician, the dates this person worked, where he worked, and that R&P Enterprises owns this Jiffy Lube location.  (Doc. 83 ¶¶ 108, 109).  This is sufficient.

JLI and R&P claim the complaint is impermissibly ambiguous with regards to the liability of each defendant.  "When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,* 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000).  "When there is an agency relationship between the defendants, however, the principal may be found liable for the fraudulent acts of its agent."  *Sandvik AB v. Advent Intern. Corp.,* 83 F. Supp. 2d 442, 448 (D. Del. 1999).

The Court disagrees.  While not specifically stating the word 'agency', the misconduct alleged in the complaint is sufficient to support liability of JLI and R&P on a theory of agency.  (Doc. 83 ¶¶ 39-42, 57-59, 82, 97-99); see also *Kirk v. H.G.P. Corp.*, 208 Kan. 777, 779, 494 P.2d 1087 (1972) (agent is liable for his own torts when acting at the command of a principal) see also *Bair v. Peck,* 248 Kan. 824, 829, 811 P.2d 1176 (1991) (principal also liable for tortious acts of his agents under respondeat superior).

R&P argues Plaintiffs fail to allege wrongdoing by R&P with respect to its claims that the technicians' certification is deceptive and that JLI made false statements in a 2005 press release about its policy on sales targets.  (Doc. 83 ¶¶ 47-56).  These claims have already been dismissed for lack of standing; consequently, the Court declines to address this argument.


F(2). The substance of the misrepresentations.

JLI claims it did not defraud Plaintiffs with the Ottocare software because Ottocare was not in existence during most of the dates alleged in the complaint.  When Ottocare came into existence involves information not found in the pleadings; consequently, it is not an appropriate basis for

dismissal under Rule 12(b)(6).

JLI argues Plaintiffs have failed to plead how technicians were forced to use the recommendations on the POS system. The Court disagrees. Plaintiffs allege that JLI requires its franchisees to use without deviation, the recommendations on the POS system. (Doc. 83 ¶¶ 59, 61, 57). This language supports a theory of agency and is sufficient to put JLI on notice of why it is alleged to be responsible for the franchisees' technicians use of the POS system.

Both JLI and R&P argue the deceptive bonus system is not adequately pleaded because Plaintiffs fail to argue what about the system is deceptive. The Court has already dismissed this claim and declines to address these arguments.

R&P alleges Thompson fails to meet Rule 9(b)'s requirements because she has not pleaded that R&P's technicians knew the recommendations in the Ottocare system were false or misleading. Kan. Stat. Ann. 50-626(b)(9). The second sentence of Rule 9(b) states that intent, knowledge, and other conditions of the mind are to be averred generally. Fed. R Civ. P. 9(b). A technician's knowledge of the deceptive character of the Ottocare system falls within the scope of the rule; as a result, Plaintiff's claim will not be dismissed for a lack of particularity on this ground.

R&P next alleges Thompson's claim fails because the complaint does not allege that repairs were unnecessary because Thompson did not drive her car under severe conditions. The Court disagrees. The complaint clearly states, "[t]he named plaintiffs would not qualify as severe drivers....their vehicles were not driven in severe condition." (Doc. 83 ¶ 69).

R&P claims this statement is insufficient because it appears in the general allegations against JLI. R&P cites *Scott v. Hern*, 216 F.3d 897 (10th Cir. 2000), which held, *inter alia*, that a complaint was insufficient because specific allegations in one part of the complaint were not incorporated into

another.  In this case, it is clear that Thompson is alleging that her vehicle was not driven under severe conditions as defined by the manufacturer.  Unlike *Scott*, this is not an allegation about the specific conduct of a defendant that would need to be re-alleged to apply to another defendant in another part of the complaint; rather, this an allegation that Ford would not classify Thompson's driving as severe.  In Thompson's allegations against R&P, she clearly alleges she brought her Ford to be serviced by R&P.  (Doc. 83 ¶ 127).  Reading the complaint as a whole and in conjunction with Rule 8, the Court declines to dismiss on this ground.

R&P next argues Thompson fails to state how she was pressured to buy items.  This argument is unpersuasive.  Thompson alleges she went to R&P's franchise in Wichita where R&P's technicians recommended unnecessary services, including the installation of new air filters.  (Doc. 83 ¶ 123).  This is sufficient to put R&P on notice that its employees were responsible for selling unnecessary services through recommendations.  See Kan. Stat. Ann. 50-626(b)(9).

R&P next argues that Plaintiff did not properly allege how she was required to pay the environmental fee.  The Court disagrees.  Plaintiffs have alleged more particular facts than their last complaint.  They alleged the fee is deceptive because it implies that it is government mandated when it is not; furthermore, technicians do not disclose this to customers. (Doc. 83 ¶ ¶ 98, 112).  These allegations satisfy Rule 9(b).

Heartland's motion to dismiss (Doc. 111) is granted for lack of personal jurisdiction.  R&P's and JLI's motions to dismiss (Docs. 88, 105) are granted in part and denied in part.

The claims of plaintiff Valerie Thompson, Marilyn Bagnall, Myra Jenkins, Laura Harris, Ross Lamm, Mark Hannon, and Thomas Krusinski are dismissed.  Plaintiffs' consumer protection act claims regarding: JLI's claims that technicians are certified, JLI's false statements about its

44

sales targets, and the deceptive bonus program are dismissed.  McFadgon's claim against JLI for deceptive environmental fees and his claims against R&P are dismissed.  Thompson's claim for injunctive relief against R&P is dismissed.


     SO ORDERED this 23rd  day of April 2007.

                 s/ Wesley E. Brown

                Wesley E. Brown, U.S. Senior District Judge