IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHAROLETTE THOMPSON,          )
individually and on behalf of those    )
similarly situated, and              )
TERRENCE McFADGON,          )
                                   )
             Plaintiffs,     )
                                   )
v.                                )        No.  05-1203-WEB
                                 )
JIFFY LUBE INTERNATIONAL, INC.,   )
R and P ENTERPRISES, INC. d/b/a Jiffy Lube,  )
                                 )
             Defendants.    )
                                 )


### Memorandum and Order

       This matter is before the court on plaintiffs' long-pending Motion to Certify Class (Doc. 160). In considering the motion, the court has reviewed the various briefs and exhibits submitted by the parties, including plaintiffs' memorandum in support (Doc. 161), memorandum in opposition by defendant R and P Enterprises (Doc. 169), defendant JLI's memorandum in opposition (Doc. 171), plaintiffs' reply (Doc. 179), and defendant JLI's sur-reply (Doc. 188). After considering the briefs, the court concludes that oral argument or a hearing on the motion would not assist the court in deciding the issues presented.

       I. *Background & Second Amended Complaint* (SAC).

       The first hurdle to addressing the motion to certify is identifying the remaining claims. Plaintiffs' initial complaint, filed in June of 2005, asserted claims by only one plaintiff – Mrs. Charolette Thompson –  but her claims were largely overshadowed by allegations that numerous practices of defendant Jiffy Lube International (JLI) were deceptive and had caused harm to

customers throughout the United States.  The complaint alleged that Mrs. Thompson's claims
were appropriately brought as a class action on behalf of a nationwide class of individuals with
similar claims.  The initial complaint alleged that Mrs. Thompson took her vehicle, a 1996
Hyundai Elantra, "to Jiffy Lube"[1] to have the oil changed, but a technician installed the wrong
oil filter, causing the oil to leak out and ruining the engine.  It further alleged that each time Mrs.
Thompson patronized Jiffy Lube, technicians would recommend "add-on" items and Mrs.
Thompson was pressured to purchase such items.  It also alleged that Mrs. Thompson was
required to pay environmental fees or shop fees in the amount of $1.99 despite a prior settlement
prohibiting Jiffy Lube from charging such fees.  The complaint contained three causes of action:
violation of consumer protection laws; a claim for injunctive and declaratory relief; and
negligence.

In October of 2005, the court granted a motion by plaintiff to amend the complaint and to
add a plaintiff.  An Amended Complaint was filed October 27, 2005.  It reiterated the allegations
about Mrs. Thompson and added Terrence McFadgon, a resident of Shelby County, Tennessee,
as a plaintiff.  The Amended Complaint alleged that Mr. McFadgon had visited a company-
owned Jiffy Lube store and was told by a technician that he needed services in addition to his
requested oil change.  Mr. McFadgon later allegedly learned the service he received was
unnecessary.  The Amended Complaint, like the original complaint, contained extensive
quotations from media sources allegedly exposing fraudulent practices at various Jiffy Lube

---

[1] The initial complaint did not specify the Jiffy Lube location to which Mrs. Thompson
took her vehicle, nor did it identify the owner of the store.  It alleged that "because defendant
directly controls the policies of all Jiffy Lube locations and gives franchisees very little to no
discretion in the operation of its locations, defendant is ... directly liable under all Consumer
Protection Acts."

2

outlets, and it included summaries, apparently gathered from internet web sites, of customer complaints from around the country.  The Amended Complaint reiterated the same three causes of action previously stated and added a claim for restitution and unjust enrichment.

In a June 13, 2006 Memorandum and Order, the court granted in part and denied in part Jiffy Lube's motion to dismiss the Amended Complaint.  The court dismissed plaintiff's claims of consumer fraud, as well as some negligence claims,  for failure to state the circumstances constituting fraud with particularity, but granted plaintiff 20 days to file an amended complaint curing the deficiencies.  The court also found that the franchisee owner of the particular Jiffy Lube outlet visited by Mrs. Thompson was a necessary and indispensable party, and it ordered plaintiff to include the franchisee as a defendant if plaintiff filed an amended complaint.

Plaintiffs filed a Second Amended Complaint (SAC) on July 3, 2006, followed by an amended version of the same complaint on July 12, 2006.  The SAC added seven new plaintiffs – including residents of Illinois, Florida, and California –  as well as three new defendants.  It totaled some seventy pages and added various allegations, including that the 1996 Hyundai Elantra previously referred to was that of Valerie Thompson's (Mrs. Thompson's daughter), and that Valerie Thompson was victimized by the wrongful conduct of Jiffy Lube relating to the Hyundai.[2]  The SAC went on to allege that Mrs. Charolette Thompson had a Ford Windstar van and a Cadillac Deville serviced at Jiffy Lube #54, 6025 E. 21st Street in Wichita, Ks., on numerous occasions between 1998 and 2004.  The SAC alleged that the Jiffy Lube outlet in

_____

[2] Despite the foregoing allegations, plaintiffs' Reply Brief in support of their motion for class certification now asserts that the Hyundai "is titled in Charlotte Thompson's name.... The negligence claims are to the property and not the person.  The property damaged was the 1996 Hyundai and Charlotte Thompson is the legal owner of the 1996 Hyundai and paid for all of the repairs."  Doc. 179 at 2.

3

question was owned by defendant R & P Enterprises, and that on each occasion when Mrs.

Thompson went in the technicians made deceptive recommendations that led to her purchase of

unnecessary "add-on" services, including air filters, PCV valves, radiator services, transmission

services, belts, fuel filters and additives.  The SAC alleged numerous ways in which the

technicians' recommendations were deceptive, including because the recommendations were

made pursuant to standards in Jiffy Lube's computerized "OttoCare" program, which allegedly

differed from and were not recommended or necessary at that time according to the

manufacturers' recommendations; because technicians failed to inform Mrs. Thompson that they

would receive a commission or bonus for selling such items; because the recommendations were

based upon severe driving conditions but were made without inquiring into Mrs. Thompson's

specific driving habits or service history; because Mrs. Thompson was misled into believing new

air filters were necessary due to Jiffy Lube's requirement that technicians show customers the air

filter every time service is performed; because a technician used the trick of showing

transmission fluid to Mrs. Thompson, when the color of the fluid is not an accurate way to

measure the need for fluid replacement [3];  and by pressuring her to purchase unnecessary items

by stating that "something bad would happen to her car" if she did not have the service.  (SAC ¶¶

108-138).  The SAC also alleged that on each visit, Mrs. Thompson was charged for and paid a

deceptive fee of $1.99, which the technician never disclosed prior to service and which was

labeled "environmental disposal fee" on the invoice, thus falsely implying it was a governmental

---

[3] At some points the SAC slips in and out of first person.  For example, at ¶ 138: "The technician showed by [sic] some liquid that was supposed to be mine and showed me another liquid and said that the color was supposed to look like the other color.  Based on what the technician showed me, Mrs. Thompson allowed the technician to flush her transmission."

fee or charge.  Under a section of the SAC entitled "Negligence Allegations," plaintiff Charolette Thompson alleged that defendant R & P Enterprises, the franchisee owner of the Jiffy Lube outlet she visited, "has damaged both vehicles owned by Mrs. Thompson that it serviced" as a "result of the commission-and-quota system that caused the technicians [to] rush through the jobs and perform the services in slipshod manner."  Plaintiff alleged that within a few weeks of the service, the transmission on her Ford van began to slip and eventually quit working.[4]

The SAC also expanded the allegations pertaining to plaintiff McFadgon.  On February 3, 2002, Mr. McFadgon allegedly took his 1998 Buick LeSabre to Jiffy Lube #1607, 1135 E. Shelby Dr. in Memphis, Tn., owned by Heartland Automotive II.  He purchased an air filter based on the technician's recommendation, which was deceptive because the technician failed to inquire as to his driving habits or service history, because of "the deceptive practices (OttoCare and pressure to sale [sic] ancillary items) described above," and because the technician failed to disclose that he would receive a commission on purchases.  On July 30, 2004, Mr. McFadgon took his 2003 Chevrolet Avalanche to Jiffy Lube outlet #3004, on W. Poplar Avenue in Collierville, Tennessee, for an oil change.  He purchased an air filter based upon the allegedly deceptive recommendation of a technician.  On April 22, 2005, according to the SAC, plaintiff McFadgon was driving down the road and saw an advertisement for a $19.99 oil change at a company-owned Jiffy Lube on Riverdale Dr. in Memphis.  He took his late model truck in because of the advertised price.  Shortly after he did so, a technician approached and recommended the purchase of an air filter.  He also told plaintiff that he had to receive an engine

---

[4] Defendant JLI has submitted an interrogatory response by plaintiff indicating that she subsequently withdrew any claim for damages to the Windstar.  Doc. 188, Exh. A.

flush before the oil change, otherwise his oil would burn at an accelerated rate and damage his engine.  Plaintiff purchased the service based on the recommendation.  Plaintiff contends all of these recommendations were made pursuant to JLI's "OttoCare" program.

The SAC challenges virtually every aspect of defendant JLI's method of operation, as the complaint itself makes clear: "Jiffy Lube ... requires company owned stores and franchisees alike to follow Jiffy Lube's standards, policies and procedures of Jiffy Lube.  It is this system of standards, policies, and procedures of Jiffy Lube that has led to the plaintiffs' damages.  It is this system that plaintiffs challenge."  SAC ¶ 39.

The SAC alleges that JLI "engages in several policies and practices that are deceptive because such practices have the ability to mislead the public and harm consumers across the United States."  SAC ¶ 46.   Among the allegedly deceptive practices identified are the following.  In printed materials, JLI proclaims it will provide high quality service by "certified technicians."  ¶47.  Defendant does not state the type of certification, however, which gives the impression that the technicians are certified to Automotive Service Excellence (ASE) standards, which is not the case.  ¶ 50.  JLI also claims that its technicians receive classroom training, but technicians "are merely trained by Jiffy Lube instructed managers," and in practice "few, if any technicians actually undergo mechanical training let alone classroom training."  *Id*.  Plaintiffs claim Jiffy Lube has represented that it does not endorse any policy placing sales targets on customer purchases, but documents show that JLI managers and employees receive bonuses based upon the percentage of ancillary items sold.  ¶ 56.

The SAC alleges that JLI requires all Jiffy Lube outlets to make service recommendations based upon manufacturers' recommendations for severe driving conditions,

regardless of the customer's true driving habits. ¶ 57.  They allege these recommendations are

set by a self-designed software program called "OttoCare," implemented through JLI's Point of

Sale Computer System (POS).  Plaintiffs claim use of this software is deceptive for several

reasons:  because OttoCare does not contain the true manufacturer recommendations for severe

conditions; because Jiffy Lube uses one definition of severe conditions but the manufacturers'

definitions vary; and because Jiffy Lube does not train or allow its technicians to determine

whether a vehicle is actually driven under severe conditions.  ¶ 58.  Plaintiffs allege that

franchisees and company-owned stores cannot deviate from the recommendations set by Jiffy

Lube, and that "mostly all customers of Jiffy Lube ..., including plaintiffs, have been provided

recommendations based on Jiffy Lube's software and the technicians always fail to determine

whether the service was actually needed."  ¶ 59.   Jiffy Lube policy requires all technicians to

review the recommendations set forth in OttoCare in a "service review" with the customer.  ¶ 61.

The Jiffy Lube software does not provide a place to record the driving habits for each customer.

Plaintiffs allege that Jiffy Lube does not allow technicians to inform customers about the

differences between normal driving and severe driving recommendations.  ¶ 63.  Based on its

own surveys, Jiffy Lube knows that many customers are not severe drivers.  Thus, it knows or

should know "that its OttoCare program makes service recommendations that are not needed."  ¶

62.  "Thus, when all technicians are recommending services to customers, including the

plaintiffs' situations, they are doing so in accordance with this deceptive practice."  ¶ 63.  This

practice is misleading because it "causes technicians to suggest services that are not needed" and

omits material facts.  *Id.*

Plaintiffs allege that Jiffy Lube "sets targets and goals for the purchase of ancillary

7

items" and this "commission and quota system" is "directly responsible for the deceptive practices occurring at Jiffy Lube." ¶ 80. It "causes unfair sales tactics as it encourages personnel to pressure customers, recommend and perform unnecessary services or to charge for services that were never in fact performed." *Id*. "Each plaintiff, regardless if they purchased an add-on item, was subjected to this system and has standing to request injunctive relief." *Id*. Jiffy Lube "fails to train its managers and technicians to inform customers that goals are set for the purchase of ancillary items," which is deceptive as it "misleads customers to believe that the technicians are solely making recommendations that are in the best interests of the customers when in reality the technicians have a direct financial interest in the purchase...." ¶ 81. Technicians receive a monthly incentive bonus that is based upon their goals and their "ticket average." ¶ 84.

Jiffy Lube requires technicians to show air filters to all customers, even if an air filter is not needed. This is deceptive as it misleads customers into believing that replacements are needed when they are not, and it causes technicians to place pressure on customers to purchase air filters. ¶ 86. Technicians are not penalized for pressuring customers into sales, but are threatened with the loss of their jobs if their ticket average is not in the $50-70 range. ¶87. The only way managers and technicians can keep their jobs and meet Jiffy Lube's standards is by pressuring customers and recommending several "ticket building" items such as air filters, PCV valves, transmission and radiator flush and fills, and replacement of serpentine belts, regardless of whether such items are actually needed. ¶ 88. Technicians often knowingly misrepresent the need to replace various plugs, caps, and light bulbs. ¶ 88. Often, services are not even rendered, and technicians often create problems in order to increase their tickets. *Id*. JLI is

aware that its commission-quota system and goals has caused these effects, but it has failed to take corrective action against managers.  *Id*.

Plaintiffs allege that the pressure JLI places on technicians to go faster, combined with the commission-and-quota system, causes technicians to "perform services in a hasty, slipshod manner that causes damages," including failing to place oil in vehicles, stripping drain plugs, and placing incorrect filters on vehicles. ¶ 95.  "Jiffy Lube makes it impossible to follow all policies and practices that may prevent the damages that plaintiffs and class have suffered.  Thus, because of the defendant's system, the simple oil change turns into serious damages to vehicles." ¶ 96.

Plaintiffs allege that JLI has imposed a $1.99 environmental surcharge through its POS (Point of Sale) computer system, that it fails to disclose this fee to consumers, and that the fee is disguised as a government charge or tax.  ¶ 97.  Defendant JLI entered into a settlement agreement to stop charging such fees.  After the agreement, JLI "has simply renamed environmental fees as 'shop fees.'" ¶ 98.  Plaintiffs contend JLI requires company-owned stores and franchisees alike to charge these fees.

On April 23, 2007, the court issued a 45-page Memorandum and Order which included the following determinations on the defendants' motions to dismiss the SAC.  First, plaintiffs' attempt to add seven new plaintiffs to the action violated the court's scheduling order, such that all plaintiffs except Charlotte Thompson and Terrence McFadgon were dismissed.  Second, Heartland Automotive was dismissed because the court lacked personal jurisdiction over it. Third, any claim by plaintiff McFadgon concerning environmental fees or shop fees was dismissed because Heartland was an indispensable party on such a claim.  The court found

Heartland was not indispensable as to McFadgon's claims based on the allegedly deceptive JLI computer system and bonus system.  Next, the court found plaintiffs had failed to state a claim for relief insofar as they alleged JLI misrepresented that its technicians were "certified" and that it did not impose sales targets.  Next, the court addressed the statute of limitations.  As to plaintiff Thompson's claims, the court found that under Kansas's three-year limitation period for Kansas Consumer Protection Act claims, any KCPA claim by Mrs. Thompson was barred to the extent it pre-dated June 3, 2002, but not if it arose thereafter.  The court further found that Mrs. Thompson's claims for negligence were brought within the applicable Kansas two-year limitation period and were not barred.  As for plaintiff McFadgon's claims, the court applied Tennessee law and found that his claims against JLI were timely brought.  The court next addressed whether plaintiff Thompson's claim arising from the allegedly deceptive environmental fees she paid was barred by the res judicata effect of an Oklahoma state court judgment.  The court concluded that JLI was not entitled to dismissal of the claim under Rule 12(b)(6), because potential factual issues relating to whether Mrs. Thompson received adequate notice of the prior class action precluded a judgment based solely upon the pleadings.  Next, the court dismissed plaintiff Thompson's claim for violation of the KCPA insofar as it was based on an alleged failure by technicians to disclose their compensation system to the plaintiff.  The court denied defendants' motion to dismiss the plaintiffs' claims that they relied upon misleading recommendations from technicians which improperly assumed or utilized severe driving conditions.  Also, the court found that plaintiffs had adequately pled facts to support an agency theory under which JLI could be found responsible for the actions of JLI's franchisees and technicians.  The court also found plaintiff Thompson had adequately pled claims that she was

10

sold unnecessary services and was charged a $1.99 fee that was deceptive because it was falsely represented to be a governmental fee.

II. *Motion to Certify*.

Plaintiffs move the court to certify the following classes:

A.  Injunctive Relief Classes pursuant to Rule 23(b)(1)(A) and/or (b)(2):

> 1.  All individuals in the United States of America who purchased services from Jiffy Lube Company owned stores or franchisees of Jiffy Lube where OttoCare has been used since January 1, 1999.

> 2.  All individuals in the United States of America who purchased service from Jiffy Lube Company owned stores or franchisees of Jiffy Lube where managers are required to undergo Jiffy Lube mandated training since January 1, 1999.

B.  Damage Class pursuant to Rule 23(b)(3):

> 1.  All individuals in the United States of America who purchased service from Jiffy Lube Company owned stores or franchisees of Jiffy Lube where such location's managers have been required to undergo Jiffy Lube mandated training since January 1, 1999 and who has alleged that their vehicles, which were serviced by Jiffy Lube, were damaged by any Jiffy Lube location where such training took place.

C.  Punitive Damage Class pursuant to Rule 23(b)(2) or (b)(3):

> 1.  All individuals in the United States of America who purchased service from Jiffy Lube Company owned stores or franchisees of Jiffy Lube where managers are required to undergo Jiffy Lube mandated training since January 1, 1999.

Doc. 160.  Pursuant to a stipulation between plaintiffs and defendant, only Charolette Thompson and Valerie Thompson were proffered as class representatives. Doc. 161 at 25, n.6. Because the court dismissed Valerie Thompson from the suit, however, Charolette Thompson is the only remaining named class representative in the action.

The motion to certify says the plaintiff is relying on two theories: 1) that JLI has intentionally engaged in deceptive practices and profited from such practices; and 2) JLI "has created and mandated all service centers to follow policies and practices that cause[] technicians to act in haste and cause damages."  Doc. 161 at 4.  She contends defendant JLI "controls all instrumentalities complained of" in this action, that JLI requires its franchisees and company-owned stores alike to follow its policies and procedures, and that franchisees do not have discretion in the training they provide their employees or managers.  *Id*. at 6.  Plaintiff says JLI sets the standards of training of all managers of Jiffy Lube locations and that franchisees and managers must complete JLI's training course.  *Id*. at 7.  At least once a year, JLI conducts service reviews for all Jiffy Lube locations, part of which is to ensure that technicians are properly performing the service review and OttoCare.  *Id*.  Plaintiff contends JLI controls all advertising and promotions of both company stores and franchisees.  *Id*. at 9-10.  Plaintiff contends JLI also controls the services offered, including its "Signature Service" oil change.  Plaintiff says JLI "lures customers into locations billing the 'Signature Services' while basing most of its increased success on the sale of 'add on' items and not telling customers that they will be targeted for these sales."  *Id*. at 10.

Plaintiff contends "Jiffy Lube's deceptive practices primarily take place during a 'service review' where Jiffy Lube requires technicians to show an air filter to a customer regardless if a new air filter is needed" and where employees are "encouraged to offer additional items."  *Id*. at 11.  Plaintiff contends JLI provides all company-owned store and franchisees alike (except one) with a point-of-sale (POS) computer system, which requires technicians to make recommendations to every customer based upon severe driving conditions.  *Id*. at 12.  JLI does

not require technicians to inform customers that the recommendations are based upon severe conditions, and the OttoCare/POS program does not contain a place to record the driving habits of customers. *Id*. Plaintiff alleges that JLI knows not all drivers fall into the "severe" category, but it makes such recommendations because doing so increases revenues. *Id*. at 13. JLI has "furthered its fraudulent acts by placing false statements on its website." *Id*. at 14.

Plaintiff says the SAC contains numerous examples from around the country of negligent or otherwise improper acts by Jiffy Lube technicians that "follow closely to those of the class representatives...." *Id*. at 14. The asserted examples of negligent conduct include failing to replace an air filter, failing to tighten the oil filter and plug, failing to fill a car with oil, denting the oil pan, and damaging an air flow sensor. Plaintiff also cites alleged examples of technicians recommending unnecessary services, as evidenced by letters of complaint from customers to JLI.

Plaintiff summarizes the allegations of deceptive conduct by Jiffy Lube as follows: Jiffy Lube's practice of making service recommendations without first inquiring into whether the service is actually needed is deceptive; basing all recommendations on severe conditions without providing other options is deceptive; requiring technicians to show an air filter to a customer without regard for need is deceptive; that making service recommendations without informing customers that recommendations are made based on severe driving conditions is deceptive; that JLI knew that all customers were not severe drivers prior to requiring such recommendations be made, which is deceptive; and that Jiffy Lube has a pattern of placing pressure on customers to make purchases which is deceptive. "Each of these acts are implemented throughout Jiffy Lube and represents a top-down problem, which shows that this case is well-suited for class certification." Doc. 161 at p. 24.

13

Plaintiff contends that she meets the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.

*1. Numerosity*.  Plaintiff states that during the proposed class period, Jiffy Lube serviced 202,181,677 vehicles, and that JLI records indicate all of these customers have been "subjected to the deceptive practices and negligent policies complained of by plaintiffs."  Doc. 161 at p. 28. She further contends that since 2002, more than 10,000,000 customers received recommendations based upon the OttoCare program.  Plaintiff states that in 2005 alone there were 4,900 customers who alleged that Jiffy Lube was responsible for damage to their vehicles. *Id*. at 28.  Plaintiff contends these numbers show that all of the proposed classes meet the requirement of numerosity.

*2. Commonality*.  Plaintiff contends the allegations of deceptive conduct by JLI are matters common to all members of the proposed classes.  She identified a laundry list of asserted common factual issues, including whether making recommendations without inquiring into driving history is deceptive; whether making service recommendations based upon severe driving conditions is deceptive; whether requiring technicians to show air filters is deceptive; whether pressuring customers to purchase items is deceptive; whether JLI's policies cause technicians to complete repairs in a haphazard manner and cause damage to vehicles; whether OttoCare contains proper manufacturer recommendations; whether OttoCare is deceptive per se; and whether JLI should be permanently enjoined from engaging in the conduct complained of. Plaintiff contends the remedy sought – an injunction precluding these deceptive acts – by its very nature shows commonality is satisfied.  *Id*. at 31.

*3. Typicality*.  Plaintiff contends "JLI engaged in a common scheme to defraud all

customers" and knowingly used policies that caused its employees to make mistakes, thereby satisfying the typicality requirement.  *Id*. at 31.  "Such a scheme 'is easily characterized as a single practice or course of conduct' that satisfies the typicality requirement."  *Id*. at 32.  Plaintiff contends the harm suffered by all of the class members is of the same type: "either defrauded (consumer class) or car damaged (negligence class)."  *Id*.  Plaintiff argues that "any variation in the number of ancillary items purchased or the degree that engines are damaged 'will not affect [plaintiffs'] legal or remedial theories, and thus does not defeat typicality.  *Id*.

  *4.  Adequacy of Representation*.  Plaintiff contends this requirement is satisfied if: (1) the representatives' claims are sufficiently interrelated to and not antagonistic with the class' claims; and (2) counsel for the representatives are qualified, experienced and generally able to conduct the litigation.  The first element is satisfied, plaintiff argues, because both the plaintiff and the class seek to prove the existence of Jiffy Lube's pattern of deceptive and negligent acts.  *Id*. at 33.  The second factor is allegedly satisfied because counsel for the plaintiff has vigorously pursued discovery and aggressively challenged JLI, thus showing that plaintiff's counsel is capable of handling the matter.  *Id*. at 34-35.

  *Rule 23(b)(1)(A)*.  Plaintiff argues this case is well suited for (b)(1)(A) certification because the primary relief sought is an injunction to prevent JLI "from utilizing programs that makes [sic] recommendations without first determining whether such repairs are needed such acts are deceptive [sic] and from requiring technicians to complete repairs in less than twelve minutes because this causes damage to consumer's [sic] vehicles."  *Id*. at 36.  Plaintiff argues this kind of judicial relief can only be handled in a single judicial order, and that otherwise the defendants may be subject to conflicting standards of conduct.  Absent such a class, plaintiff

argues, the defendants "would be taken to task" one plaintiff at a time, each seeking to prove his or her case until a judgment was obtained, with future plaintiffs then calling upon the doctrine of collateral estoppel to bind the defendants.  *Id*. at 37.

*Rule 23(b)(2)*.  Plaintiff argues class certification under Rule 23(b)(2) is appropriate because the defendant has acted and refused to act on grounds generally applicable to the entire class.  *Id*. at 38.  Because plaintiff seeks final relief of an injunctive nature that settles the legality of defendant's behavior with respect to the class as a whole, plaintiff contends, she meets the prerequisites of (b)(2).  Plaintiff alleges that JLI has engaged in specific deceptive acts, that these policies "are the cause of the mistakes of the technicians," that all Jiffy Lube outlets are required to use OttoCare, that all outlets are required to provide a service review, and that JLI requires technicians to review the manufacturers' recommendations with every customer, all of which means that "every Jiffy Lube customer will be subjected to the practices that plaintiffs contend are deceptive."  *Id*. at 40.  Plaintiff states that JLI "mystery shopper" surveys showed that on only 4 occasions out of 5,633 were customers informed that JLI's recommendations were for severe driving conditions, which shows that 99.9% of the class was subjected to the same deceptive conduct by JLI.  *Id*. at 40.  She also contends JLI's conduct is ongoing and will continue unless enjoined.

Plaintiff says that she seeks equitable relief in the form of restitution or disgorgement rather than monetary damages, in an amount to be equally divided among class members.  Thus, they argue, the relief sought does not relate predominantly to money damages.  *Id*. at 41.  Although plaintiffs also seek monetary damages for harm to their vehicles, this is "not enough to take it out of the ambit of Rule 23(b)(2)."  *Id*.  Plaintiff argues the restitution she seeks is distinct

from money damages and therefore does not preclude a Rule 23(b)(2) class.  Moreover, plaintiff argues the monetary damages are incidental to the claims for injunctive relief, as such damages "flow directly from defendants' liability to the class as a whole on their negligence claims, which form part of the basis of the plaintiffs' request for declaratory relief." *Id*. at 43.  Because the damages are incident to injunctive relief, they do not preclude certification under Rule 23(b)(2).  To the extent the court finds that a damage class cannot be maintained under Rule 23(b)(2) or (b)(1)(A), however, plaintiff argues the court should separate out the damage claims and certify the class for injunctive relief only. *Id*. at 44.

Plaintiff also argues a punitive damage class should be certified under Rule 23(b)(2), as she seeks "a class-wide award of punitive damages to punish JLI for its reckless disregard of the known dangers that its policies and practices cause." *Id*. at 45.  This is allegedly appropriate here because defendant's misconduct adversely affected consumers "in a similar fashion," and thus the punitive damage inquiry depends not on facts unique to each class member, but on defendant's conduct toward the class as a whole. *Id*. at 45.

*Rule 23(b)(3)*.  Plaintiff next argues that to the extent the court concludes the claim for restitution is not equitable in nature or a punitive damage class is not appropriate under Rule 23(b)(2), certification of the consumer, punitive damage, and negligence classes is nevertheless appropriate under Rule 23(b)(3). *Id*. at 46.

Plaintiff argues that questions of fact and law common to the members of the class predominate over any questions affecting only individual members.  She argues there is a common nucleus of operative facts and defenses and in fact "virtually all issues advancing the litigation are common among class members," including whether all of the acts alleged to be

17

deceptive in this action are in fact deceptive. *Id*. at 48-49. Without certification, plaintiff says, these common issues would be litigated over and over with the same evidence being presented in each individual case. Plaintiff states that JLI defends its practice of assuming severe driving conditions in its service recommendations by citing factors common to all or most class members, such as JLI's assertions that most Jiffy Lube customers drive under severe conditions and its claim that the assumption of severe driving conditions is disclosed to Jiffy Lube customers. *Id*. at 49. Similarly, plaintiff argues, JLI says OttoCare does not cause technicians to recommend unnecessary services because the program utilizes the recommendations of vehicle manufacturers, which is an explanation applicable to all members of the class. *Id*. at 50. Thus, "the focus of these factual issues is on the defendants' conduct, not that of each class member." *Id*. at 51. Plaintiff thus contends "the common issues of law and fact relating to whether Jiffy Lube committed consumer fraud and negligence remain predominant." *Id*. at 52.

Plaintiff has provided the court with an extensive survey of the consumer fraud laws of the fifty States. She argues that any "hypothetical differences" in these laws would make no difference in outcome to the claims in the case. As a result, plaintiff argues the court should apply the laws of the forum state, Kansas, to all claims of all class members, regardless of where the members reside. They contend it is not unconstitutional to do so and that "Kansas has established strong precedent that 'the law of the forum applies unless it is expressly shown that a different law governs,...'" *Id*. at 53 (citing, inter alia, *Shutts v. Phillips Petroleum Co.,* 235 Kan. 195, 221(1984)). Relying on *Shutts*, plaintiff argues the law of Kansas is that "where a state court determines it has jurisdiction over a nationwide class action and procedural guarantees of notice and adequate representation are present, ... the law of the forum should be applied" so

18

long as Kansas law does not conflict with other laws or Kansas has a significant contact or

aggregation of contacts to ensure that the choice of Kansas law is not arbitrary or unfair.  Doc.

161 at 55.  Plaintiff contends the Supreme Court in *Shutts* "did not destroy the intent of the

Kansas Court but simply placed the proper constitutional constraints to Kansas' intent and this

court must apply the rule that Kansas would apply." *Id.*  Plaintiff argues there is no actual

conflict between Kansas laws and the laws of the 49 other states pertaining to their negligence,

consumer fraud, unjust enrichment and punitive damage claims.  She argues that all states utilize

the same elements for negligence: duty, breach, causation and damages.  As for consumer

protection statutes, plaintiff concedes there are differences among the various states, but argues

the results of the claims would be the same under any of the laws because all such laws are

designed to prevent deceptive practices and she has alleged that Jiffy Lube's practices are

deceptive.  Thus, "the defendant would be liable for deceptive practices under every statute if

plaintiffs' allegations are true" and "there is no true conflict regarding liability under the various

consumer protection statutes." *Id.* at 59.  Plaintiff likewise contends the "principles of unjust

enrichment are essentially identical in all states" and there is no true conflict between the laws of

the various states.  Finally, with regard to punitive damages, plaintiff concedes that some states

prohibit punitive damages but says she will "exclude those states from any claims for punitive

damages."  She further claims that the states' various laws are otherwise congruous because

"[s]tripped of legalese, all states that allow punitive damages allow them when the defendant

intends to harm a plaintiff."  Because the complaint alleges that the defendant "intended to harm

plaintiffs through fraudulent actions and misrepresentations," "there is no true conflict and the

court should apply Kansas law to plaintiffs' claim for punitive damages." *Id.* at 60.  Even if the

court finds a true conflict, however, plaintiff argues it would still be constitutional to apply Kansas law under *Shutts* because Kansas has significant contacts with JLI.  In support, plaintiffs allege that since 1999 over 2.7 million Kansas customers have been subjected to the policies at issue.  *Id*. at 61.  Additionally, defendant has chosen to do business in the state and "should not be allowed to cause its deceptions to seep through the borders of Kansas and yet dodge liability under the laws of Kansas for its actions."  *Id*.

Plaintiffs argue that *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776 (2004) shows the Kansas Supreme Court would apply Kansas law to a nationwide class action based upon the doctrine of *lex fori*.  Doc. 161 at 62-63.   According to plaintiffs, numerous other states have taken the same approach.  *Id*. at 63-64.  Plaintiff also argues that fairness dictates the application of Kansas law to the claims because the defendant purposely chose to engage in business in Kansas and had full knowledge it would be subject to Kansas laws.  *Id*. at 65.  Lastly, plaintiffs contend that CAFA was adopted by Congress to make class actions more efficient and eliminate the filing of multiple "copy cat" suits in various state courts, which goals would be furthered by applying the law of the forum state to all claims in a single nationwide class action.  Plaintiff contends any differences between the various state laws can be addressed with jury questionnaires or special interrogatories.  *Id.* at 67.

Plaintiff next contends the superiority requirement of Rule 23(b)(3) is satisfied because all of the class members have an interest in proving defendant's common course of conduct through one proceeding rather than in multiple suits; and because the number of class members is far too large and the value of a typical claim too small to adjudicate in multiple suits.  Plaintiffs contend that many class members have "negative value claims" that would cost more

20

to litigate than the member could expect to obtain in damages.  *Id*. at 70.  Thus, "a class action is

the only efficient method for plaintiffs and class members to litigate against the defendant."  *Id*.

at 68.  The desirability of concentrating the litigation in this forum is shown, plaintiff argues, by

the fact that the defendant removed the action to this court.  *Id*. at 72.  Plaintiff further says the

"management of the class action would not impose such difficulty that individual actions would

be a better way of resolving this controversy."  *Id*.  Plaintiff says that issues relating to damages

do not prevent certification of a class under Rule 23(b)(3), because there are options such as

appointing a magistrate or special master to preside over individual damage issues.  *Id*. at 77.

Plaintiff argues that courts including the Tenth Circuit have upheld certification in mass tort

cases, which shows that individual damage issues do not overwhelm common liability issues in

such cases.  *Id*. at 75-77.

     *Trial Plan*.  Plaintiff sets forth the following trial plan in the motion to certify.  "The trial

will begin by addressing all claims for relief by the ... class representatives ... under the choice of

law rules of the State of Kansas.  Furthermore, the jury will hear evidence of both compensatory

and punitive damages for each of the class representatives.  The goal of this trial will be to

determine if Jiffy Lube is indeed liable to the class as defined by the Court."  *Id*. at 79.  In

addition to the individual claims, plaintiff proposes that the jury also consider: whether Jiffy

Lube owes a duty to the class; whether it breached this duty; whether its practices are deceptive;

whether it has been unjustly enriched; and whether its actions were willful or wanton.

Additionally, plaintiff proposes that the court decide in the same proceeding whether Jiffy Lube

should be enjoined and to what extent; whether it should be required to pay restitution; and

whether the court should order other injunctive relief.  *Id*. at 80.  "The answers to the above

questions will be binding on Jiffy Lube and those who can carry their burden of proof in Phase II of the trial plan." *Id.* "If the law of a particular state appears to be idiosyncratic, the residents from that state can be excised from the class." *Id.* Even if this operates to remove half of the states from the class, however, plaintiffs argue that "the application of common issues concerning the other twenty-five states should conserve judicial and litigation resources for all involved." *Id.*

Plaintiffs say that if they prevail in any significant way, then in "Phase II" the court should employ the use of a special master, with individual plaintiffs then having the burden of proving that they suffered damage at a Jiffy Lube location and that they relied on the policies and procedures required by Jiffy Lube, "thereby proving that they are members of the class." *Id.* "Also at the trials or hearings, individual plaintiffs will present their claims for compensatory and punitive damages." *Id.* In sum, plaintiff seeks certification of a class action under Rule 23(b)(1) or (b)(2), or alternatively under Rule 23(b)(3). *Id.* at 81.

III. *Discussion*.

A. *Rule 23(a) Standards for Class Certification*.

Rule 23(a) contains four initial prerequisites for a class action. A party seeking class certification must show under a strict burden of proof that all four requirements are clearly met. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). First, the movant must show numerosity – that the class is so numerous that the joinder of all members is impracticable. Second, the movant must show commonality – that there are questions of law or fact common to the class. Third is typicality – that the claims and defenses of the representative parties are typical of the claims or defenses of the class. And fourth, the movant must show adequacy of

representation – that the representative parties will fairly and adequately protect the interests of the class. *Id*.

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met. *Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir. 2004). Nothing in Rule 23 authorizes the court to conduct a preliminary inquiry into the merits to determine whether the case may be maintained as a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Thus, the court must accept the substantive allegations of the complaint as true. *Shook*, 386 F.2d at 968. But the court "need not blindly rely on conclusory allegations which parrot Rule 23," and may if necessary "probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). A class action may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *Shook*, 386 F.3d at 968.

1. *Numerosity*.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Defendants do not challenge plaintiff's allegation that all of the proposed classes satisfy the requirement of numerosity. Both sides agree that the proposed injunctive relief classes would contain at least tens of millions of members. (Plaintiff contends the actual number is over 200 million.) Doc. 161 at 27. This obviously satisfies the numerosity requirement. The size of plaintiff's proposed damage class is not as clear because it contains the ambiguous qualifier that members are restricted to those who have "alleged that their vehicles ... were damaged by any Jiffy Lube location...." Plaintiff apparently construes this

language to mean individuals who have filed complaints directly with Jiffy Lube alleging any sort of damage, because she cites documentation showing that in the year 2005 there were 4,900 such customer complaints. *Id.* at 28. Based on these figures, the court finds plaintiff has satisfied the numerosity requirement regarding the damage classes. Plaintiff's brief does not specifically discuss numerosity as applied to the proposed punitive damage class, but the class definition appears to encompass several million people and thus satisfies the requirement.

2. *Commonality*.

Under Fed.R.Civ.P. 23(a)(2), a class action can only be maintained if "there are questions of law or fact common to the class." To meet this requirement, members of a putative class must "possess the same interest and suffer the same injury." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (*citing* 7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1763 (3d ed.2005)). A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class member." *Thorn, supra*. "The significance of commonality is self-evident: it provides the necessary glue among class members to make adjudicating the case as a class worthwhile." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3rd Cir. 2001). The threshold for commonality is not high, and does not require that class members share every factual and legal predicate. *Id.* A single common issue of fact or law shared by the class will satisfy the requirement of Rule 23(a)(2).

24

Plaintiff says issues of fact are common when injuries stem from a uniform course of conduct, and this is satisfied because "Jiffy Lube has engaged in a course of deceptive conduct." Doc. 161 at 29.  Plaintiff cannot meet her burden, however, by framing the issue in such general terms.  Only by sweeping a multitude of claims under the heading "deceptive conduct" can this be considered a common issue.  *Cf. J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) ("Here, rather than adequately advancing a discrete question of law, plaintiffs merely attempt to broadly conflate a variety of claims to establish commonality via an allegation of 'systematic failures.'").  Plaintiff proceeds to break down the allegations and argues the common issues include the following:  whether it is deceptive to make service recommendations without first inquiring into whether the service is actually needed; whether making recommendations based upon severe driving conditions without providing other options is deceptive; whether it is deceptive to make recommendations without disclosing an assumption of severe driving conditions; and whether JLI's policies require technicians to complete repairs in a haphazard manner.  Doc. 161 at 29-30.  Other purported common factual issues include whether requiring technicians to show air filters to customers is deceptive;  whether OttoCare contains proper manufacturer recommendations; whether OttoCare is deceptive per se; and whether JLI should be permanently enjoined from engaging in the foregoing conduct.[5]

Plaintiff's arguments are hampered by the exceptionally broad nature of the proposed classes, which makes it difficult to determine who would qualify as a class member and doubtful that many of the stated issues would apply to all or substantially all of the defined classes.  For

---

[5] Plaintiff's Reply also includes asserted common issues that have previously been excluded by the court, including whether "pressuring" customers or failing to inform them of employee bonus incentives is deceptive.

example, whether it is deceptive to make recommendations based upon an assumption of "severe driving conditions" would not appear common to "all individuals in the United States of America who purchased services from Jiffy Lube Company" in a given period.  The proposed injunctive relief class appears to go well beyond any subset of customers who received "severe driving" recommendations and/or made purchases based upon such recommendations.  Fewer still would be the customers receiving such recommendations who actually suffered harm as a result of such a recommendation.  The issue of whether a "severe conditions" recommendation for service was deceptive could also differ materially from product to product, such that the issue might truly be common only with respect to similarly situated members of the purported class who purchased the same item or service.  And although this is relevant to issues other than commonality, the court notes that whether or not a particular recommendation is *actionable* would ultimately require an individualized determination taking into account such factors as whether the particular customer drove under severe conditions, whether the technician explained the basis of the recommendation, and whether there was some sort of reliance by the customer on the recommendation.  Similar problems exist with respect to the other proposed classes, including the uncertain limitation in the proposed damage class to individuals "who [have] alleged that their vehicles ... were damaged...."  If by this last qualification plaintiff means people who filed complaints with Jiffy Lube or one of its franchisees, then, as defendant points out, plaintiff Charolette Thompson would not even fall within the class definition.  *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006) (proposed class was not sufficiently definite; it could include millions of people who were not deceived).

Also problematic is the fact that most of plaintiff's claims are premised upon oral

26

statements or representations by technicians. These claims obviously depend upon the content of the representations actually made to customers, but plaintiff glosses over this fact by asserting that because JLI contractually requires use of its OttoCare program, the same recommendations must have been made to all or substantially all customers.[6] The defendant, meanwhile, has proffered evidence that the OttoCare program contains a prompt for technicians to discuss severe driving conditions with the customer. Doc. 171, Exh. 4B. Plaintiff dismisses such evidence by arguing it impermissibly addresses the merits. But conclusory allegations that uniform misrepresentations were made, without supporting factual allegations, do not meet a plaintiff's burden of showing a common issue. After reading and re-reading the complaint and the briefs, the court is still uncertain what, if any, common representations were made to members of the proposed classes.

It is certainly conceivable that among the array of claims in the SAC are issues common to members of a narrowed subclass of JLI customers. The threshold of Rule 23(a)(2) is not high, although it is dubious whether plaintiff has "clearly identified" those issues. *Cf. Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 (1982) (plaintiffs failed to provide a "specific presentation identifying the questions of law or fact that were common."). The issue of whether JLI generally required the use of service recommendations that differed materially from manufacturer recommendations could be characterized as a common question of fact to an

---

[6] In her reply, plaintiff proposes an alternative class consisting of "All individuals in the United States of America who purchased services from Jiffy Lube Company owned stores or franchisees of Jiffy Lube where recommendations are made based on severe conditions since January 1, 1999." Doc. 179 at 9. This alternative proposal raises additional questions. It indiscriminately blends present and past tense and is otherwise vague. Plaintiff does not explain how such stores – and hence class members – could be identified.

identifiable subclass of JLI customers who purchased similar services.  So too could the question

of whether by doing so, JLI knowingly caused technicians to make false, misleading or deceptive

recommendations for service.  Similarly, the practice of requiring technicians to show air filters

to customers could present a common issue for a subclass of JLI customers who purchased the

signature oil service.  Plaintiff's allegations could raise a common factual issue of whether JLI

requires this practice knowing it will cause some customers to erroneously conclude that the part

needs replacement.[7]  A similar common issue might apply to the practice of showing customers

transmission fluid, although again, this would not be common to the classes proposed by

plaintiff, but only to a much narrower subclass of individuals who purchased this particular item.

And the allegation that Jiffy Lube charged a deceptive $1.99  "environmental fee" would likely

present a common issue for a subset of customers who were charged such a fee.  The record thus

suggests the presence of at least several common issues of fact, but not with respect to the

classes proposed by the plaintiff.[8]

    3. *Typicality*.

    Rule 23(a)(3) precludes certification unless "the claims and defenses of the representative

parties are typical of the claims or defenses of the class."  A class representative must possess the

same interest and suffer the same injury as the class members in order to be typical under Rule

---

    [7] Defendant argues such issues are not common because whether a particular customer needed a product and whether the customer was deceived by the practice are both "highly individual questions."  Doc. 171 at 45.  While defendant may be correct that such individual issues also exist, this does not negate the existence of common issues.

    [8] As the Supreme Court observed in *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997), the "commonality" requirement of Rule 23(a) is much less demanding than the predominance criterion of Rule 23(b)(3).

23(a)(3).  *See Busby v. JRHBW Realty, Inc.*, 513 F.2d 1314, 1320 (11th Cir. 2008) (citations omitted).  Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.  *Id.*  Typicality does not require that the claims of class members be identical to the claims of the class plaintiffs. *See Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982).  No action could proceed as a class action if each named plaintiff had to uniformly assert the same legal claims or had to have suffered the same injuries at the same time as all class members.  *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1298 (10th Cir. 1999).  "[D]iffering fact situations of class members do not defeat typicality ... so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir.1988).  The typicality requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (*quoting Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir.1993)).

Plaintiff Charlotte Thompson's claims have several unique characteristics that raise doubts about typicality.  First of all, Ms. Thomson, the sole representative of the purported classes, visited a franchisee location rather than a JLI company-owned store.  Unlike members of the purported classes who visited company-owned stores, Ms. Thompson's claims against JLI could be subject to defenses arising from this agency relationship.  As the court discussed in detail in its prior orders, JLI may be liable for the conduct of a franchisee upon a proper showing that JLI had control over the specific aspect of the franchisee's business that caused the harm.  But by the same token, plaintiff's claims against JLI could be defeated by a showing that the

conduct at issue was controlled by the franchisee.  In that regard plaintiff's claims are not typical of class members who purchased services directly from a JLI store and whose claims would not be subject to such agency-related defenses.

With regard to the proposed injunctive relief classes, JLI has pointed out that Ms. Thompson may lack standing or otherwise be subject to a defense based upon evidence that she does not intend to return to any JLI store in the future.  Plaintiff's response is to argue that she has "assumed the mantle to represent the interests of potential class members" and "there is clearly a live controversy between some members of the class."  Doc. 179 at 22.  But a plaintiff lacks standing to seek prospective injunctive relief if she cannot show a real or immediate threat of future harm.  *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  And individual standing is ordinarily a prerequisite for maintaining a class action.  *Rector v. City and County of Denver*, 348 F.3d 935, 949-50 (10th Cir. 2003) (by definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirement of Rule 23). *See also Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20 (1976).  Absent a threat of future harm, plaintiff does not share a critical aspect of the claims of other class members for prospective injunctive relief, and her claim is thus not typical.

Another stumbling block to typicality relates to defendant's OttoCare program.  Several of plaintiff's claims are premised upon the allegedly deceptive nature of recommendations contained in the OttoCare program.  But according to affidavits submitted by the defendant, OttoCare did not become widely available to franchisees until March of 2002, meaning a number of plaintiff's claims apparently predate the software.  Perhaps more problematic is the lack of clarity about whether plaintiff ever made any purchases as a result of the OttoCare program.

Defendant cites evidence from plaintiff's deposition indicating she does not recall seeing or being guided through the OttoCare computer program when she purchased services at Jiffy Lube.  And JLI cites evidence that the particular franchise she visited did not use the OttoCare program, but instead made recommendations to customers based upon a commercial subscription service.  Doc. 171, Exh. 8.  Plaintiff characterizes this as a "Hail Mary" attempt to avoid certification as well as an impermissible inquiry into the merits, while at the same time arguing "whether this occurred with OttoCare or another program is of no consequence to this action with the simple modification of the class definition."  Doc. 179 at 14.  The court's concern is whether plaintiff has demonstrated the typicality requirement of Rule 23.  "A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation."  *Beck v. Maximus, Inc.*, 457 F.3d 291 (3rd Cir. 2006).  The OttoCare program forms a significant part of the claim that misleading representations were made to plaintiff and other customers.  Plaintiff's claim would not be typical if the franchise she visited did not in fact use that program.  To further muddy the picture, defendant JLI cites evidence that OttoCare contains some explanation or prompts relating to "severe driving conditions," although plaintiff apparently does not recall any such information being provided in her dealings with the Jiffy Lube franchise.  It is plaintiff's burden in seeking certification to provide facts sufficient to satisfy the requirements of Rule 23(a).  Plaintiff has not made clear to the court the basis upon which she claims that her experience involved the OttoCare program and was otherwise typical of the claims of class members.  Absent some explanation for the allegation that plaintiff was harmed by the OttoCare program, the court cannot say her claims for allegedly misleading recommendations are typical of the claims of the

class.  *Cf. Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) (sometimes it may be

necessary for the court to probe behind the pleadings before coming to rest on the certification

question).

As for plaintiff's claims of negligence, defendant JLI contends plaintiff has abandoned

any such claims.  Doc. 171 at 6.  Plaintiff denies this.  Doc. 179 at 2.  This dispute is

unfortunately somewhat characteristic of the litigation.  As Judge Humphreys noted, plaintiff's

allegations have at times been less than consistent and clear.  At the same time, defendant's

assertion that plaintiff has abandoned the claim does not appear supported by the materials cited.

Plaintiff alleged in the SAC that technicians at a Jiffy Lube franchise damaged the 1996 Hyundai

Elantra by installing the wrong oil filter, which caused the oil to leak out and ruined the engine.

Doc. 83 at ¶¶133-137.   She claims the technicians were "concentrating on getting the vehicle

completed in less then twelve minutes, per the mandates of Jiffy Lube," and were unable to

service the car properly "because they were moving so fast and utilizing substandard training."

Liberally construed, the complaint alleges that defendant JLI owed plaintiff a duty of reasonable

care in performing maintenance on her car, that it breached that duty by failing to train

franchisee technicians properly and by encouraging them to perform services too rapidly, and

that such failures were the cause of the installation of the wrong oil filter and the resulting

damage to her car.  Plaintiff apparently contends her claim of negligence is typical of members

of the class who claim that their vehicles were damaged through poor service at Jiffy Lube.

Some of the court's prior findings on typicality – including the existence of potential defenses to

Ms. Thompson's claims arising from the franchisee relationship – apply equally to claims such

as this.  Moreover, in explaining the scope of the class of individuals who have alleged that their

cars were damaged by JLI, plaintiff refers to records reflecting complaints lodged with JLI and

says "the identity of those who have alleged that their vehicles were damaged by JLI are

ascertainable by its records." Doc. 179 at 8. But plaintiff does not allege that she herself lodged

such a complaint with JLI, and she thus apparently falls outside the bounds of the proposed class.

As such, her claim could not be typical of the class. Lastly, the court does not see how plaintiff's

claim could be considered typical of class members claiming negligence for improper service

they may have received at Jiffy Lube outlets given the huge factual variations attendant to such

claims, including the individualized nature of the question of causation.

Another of plaintiff's claims is that the Jiffy Lube franchise she visited engaged in a

deceptive practice by charging her a $1.99 "environmental disposal fee" and/or a "shop fee."

Although a uniform practice of charging such a fee could be – and has been – the proper subject

of class action treatment, the court does not find it mentioned in plaintiff's motion to certify.

Accordingly, the court finds the motion to certify should be denied with respect to any such

claim. The court also notes JLI's previous argument that Ms. Thompson was a member of a

settlement class in *Bayhylle v. Jiffy Lube International, Inc*. wherein a similar claim was

asserted, and its contention that Ms. Thompson is barred by res judicata from asserting such a

claim here. Given the potential application of such a unique defense to Ms. Thompson's claims,

the court would not conclude on the present record that her claims are typical of the class as a

whole.

*Choice of Law Issues*. Another significant obstacle to typicality is the issue of what law

would govern the claims of various class members. *See In re Vioxx Products Liability

Litigation*, 239 F.R.D. 450, 459 (E.D. La. 2006) (the "choice-of-law analysis presents significant

hurdles to certification of a nationwide class of Vioxx users because the application of the laws of fifty-one jurisdictions to the claims of the proposed class creates problems for the typicality, adequacy, predominance, and superiority requirements of Rule 23.").  The Seventh Circuit stated in *In re Bridgestone/Firestone, Inc*., 288 F.3d 1012, 1015 (7th Cir. 2002) that "[n]o class action is proper unless all litigants are governed by the same legal rules."  *See also Dragon v. Vanguard Indus., Inc.*, 277 Kan. 776, 89 P.3d 908 (2004) (class prerequisites may be defeated when liability is determined according to varying and inconsistent state laws).  As in *Bridgestone*, the claims here – consumer fraud, negligence, unjust enrichment, and punitive damages – are all based upon state law, and so the choice-of-law rules come from the state in which this court sits.  *Id*. (*citing Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)).  Under Kansas choice of law rules, the first inquiry is whether there is a true conflict among the state laws that could be applied to the claims.  If there is no actual conflict, there is no need to further analyze and apply the choice-of-law rules, and if constitutional concerns are satisfied, Kansas law will be applied.  *See Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co.*, 2000 WL 34001583 (Kan. Dist. Ct., Jul. 24, 2000).  *Cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) ("We must first determine whether Kansas law conflicts in any material way with any other law which could apply. There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit.").  Even a cursory examination however, suggests there would be a significant number of conflicts between Kansas law and the law of numerous other states.

a.  Consumer Protection/Consumer Fraud claims.    Plaintiff concedes there are variations in state consumer protection laws among the fifty States, but argue there are no true conflicts

because "a look under each state's law ... would show that the results would be the same under each law."  Doc. 179 at 33.  As defendant JLI points out, there are *significant* differences among the States' consumer protection laws.  Doc. 171, App. A.  Some states require proof of  scienter as an element of liability; many do not.  Some require proof that the plaintiff relied upon the defendant's allegedly false or misleading representations or conduct, while others require no such proof, and the law of more than a few states is decidedly unsettled on that point.  The amount of damages recoverable for a consumer protection violation varies from state to state.  Defendant JLI cites other differences as well, including a prohibition by a few states on bringing consumer protection claims in a class action lawsuit.  Plaintiff's impressive 50-state analysis largely confirms rather than refutes the existence of these differences.  Doc. 45.  Given this background, it is difficult to see how plaintiff can argue such variations would have no effect on the outcome of putative class members' claims.  Plaintiff simply glosses over the differences and argues they are irrelevant because all of the allegations involve "deceptive practices" and the defendant "would be liable for deceptive practices under every statute if plaintiffs' allegations are true and proven."  Doc. 45 at 75.  But this oversimplification ignores the actual elements of the various consumer protection statutes and the effect they could have on individual claims.  For example, plaintiff claims that JLI causes technicians to make recommendations for service based upon an assumption of severe driving habits, and that doing so can mislead customers.  In states requiring proof of reliance, no customer would have a claim against JLI for this alleged misrepresentation unless the customer was aware of it and relied upon it in purchasing services.  Similarly, in reliance states, a plaintiff making this claim would likely have to show that the vehicle in question was not driven under severe conditions.  Many courts addressing this sort of

issue in the past have rejected the argument that state consumer protection laws are essentially the same.  *See In re Bridgestone/Firestone*, 288 F.3d at 1120 ("[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."); *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (same); *In re Prempro*, 230 F.R.D. 555, 564 (E. D. Ark. 2005) ("consumer fraud ... laws of the states differ with regard to the defendant's state of mind, type of prohibited conduct, proof of injury-in-fact, available remedies, and reliance, just to name a few differences.").  As pointed out in *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995), a federal court cannot give a "a kind of Esperanto instruction" merging the requirements of fifty different State laws into one standard.  Insofar as plaintiff's asserted consumer fraud claims are concerned, there appear to be substantial conflicts between the consumer fraud laws of Kansas and such laws in other states.

b.  Negligence.   Plaintiff argues that all States employ the same basic elements for a negligence cause of action: duty, breach, causation, and damages.  As such, she maintains, "the defendant would be liable under each state's negligence law, [and] there is no true conflict."  Doc.  45 at 74.  While the negligence laws of the various states are certainly more uniform than their consumer protection statutes, there are still some significant and potentially material differences.  In *Dragon v. Vanguard Indus., Inc.*, 277 Kan. 776, 89 P.3d 908 (2004), the Kansas Supreme Court, quoting the Seventh Circuit, cast doubt on the notion that all States' negligence laws are interchangeable:

> The law of negligence, including subsidiary concepts such as duty of care, foreseeability, and proximate cause, may ... differ among the states only in nuance, though we think not.... But nuance can be important, and its significance is suggested by a comparison of

> differing state pattern instructions on negligence and differing
> judicial formulations of the meaning of negligence and the
> subordinate concepts.

*Id.*, 277 Kan. at 789 (*quoting Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).  The *Vanguard* opinion also distinguished prior Kansas cases finding common negligence issues under the laws of several states, noting such cases involved only a handful of states rather than a nationwide assessment.  And as the court remarked in *In re Stucco Litigation*, 175 F.R.D. 210 (E.D.N.C. 1987), "the devil is in the details" when it comes to differences in negligence law among the states.  State law differences in the extent of the common law duty of care owed to customers such as the members of the purported classes would render a nationwide negligence class doubtful, as *Rhone-Poulenc* suggested, due to conflicts in state negligence laws.  Other conflicts would likely include the availability of negligence as a remedy where a contractual relationship exists.

     c.  <u>Unjust Enrichment</u>.  Plaintiff contends the principles of unjust enrichment "are essentially identical in all states," such that no conflict exists between the law of Kansas and other states.  Doc. 161 at 59.  Plaintiff says the Kansas Supreme Court concurred with this assessment in *Shutts v. Phillips Petroleum Co.*, 240 Kan. 764 (1987), when it found no conflict in unjust enrichment laws in five jurisdictions.  As defendant JLI points out, however, there are differences nationwide in the very definition of unjust enrichment and its availability as a remedy.  Some states preclude such claims when an adequate legal remedy is available, and many states say the existence of an enforceable contract will preclude an unjust enrichment claim.  Because of such variations, federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment.  *See e.g.*, *Clausnitzer v. Federal Exp. Corp.*, 248

37

F.R.D. 647, 660 (S.D. Fla. 2008);  *Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D. Ill.

1999) (variances in the state common laws of unjust enrichment include:  differences in

definitions; some states do not specify the misconduct necessary to proceed while others require

the presence of fraud or dishonesty; some states allow such a claim only when no adequate legal

remedy exists; and some permit an equitable defense of "unclean hands").  Plaintiff does not

really address these problems except to argue that the *Shutts* Court found no conflict, therefore

this court "must follow Kansas' lead and find that the principles of unjust enrichment do not

present a 'true' conflict."  Doc. 161 at 59.  But *Shutts* did not involve or address claims of the

scope put forward here, as the Court observed in *Vanguard*, 277 Kan. at 789: "Our prior cases

regarding class actions are also distinguishable because of the potential number of states whose

laws may impact this case.  None of the Kansas cases cited by the plaintiffs or relied upon by the

trial court involved application of the laws of mor than six states."

     d. <u>Punitive Damages</u>.  Plaintiff concedes some states do not allow punitive damages and

says she will exclude any such states from the class claims.  Doc. 161 at 59.  The remaining

states, according to plaintiff, all allow punitive damages "when the defendant intends to harm the

plaintiff."  Doc. 45 at 76.  But different states have different threshold standards for awarding

punitive damages, including different standards of intent and standards of proof, not to mention

widely varying limitations on recoverable amounts.  Like the other claims asserted here, there

would inevitably be material conflicts between the law of Kansas and the laws of the other states

insofar as a claim for punitive damages is concerned.  *Cf. Doll v. Chicago Title Ins. Co.*, 246

F.R.D. 683, (D. Kan. 2007) ("applying so many different standards and procedures for punitive

damages presents an insuperable barrier in this case.").

In arguing that conflicts do not exist here or do not pose a problem, plaintiff contends "the most analogous case" supporting her argument is *In re St. Jude Medical, Inc.*, 2006 WL 2943154 (D. Miss. 2006), where the district court certified a nationwide consumer protection class despite finding substantive conflicts between Minnesota consumer protection law and the laws of 18 other states. The district court did so after finding that Minnesota had significant contacts with each plaintiff's claims and that it would be fair to apply Minnesota law. As defendant points out, the Eighth Circuit recently reversed the district court's ruling granting certification. *In re St. Jude Medical, Inc.*, 522 F.3d 836 (8th Cir. 2008).

In sum, for the reasons stated above, the court concludes there are true conflicts between the law of Kansas and the laws of other states as applied to these claims. The court must therefore apply Kansas conflict of law rules. Plaintiff argues the *Vanguard* opinion shows Kansas would apply its own law – under a rule of *lex fori* (law of the forum) – as long as doing so would be constitutional. *Vanguard* cannot be read as establishing a rule of *lex fori* in general or for tort cases in particular. In the more recent case of *In re K.M.H.*, the Kansas Supreme Court noted that insofar as contractual disputes are concerned, Kansas courts have traditionally applied the doctrine of *lex loci contractus* (the law of the place where the contract was made) as set forth in the *Restatement (First) of Conflict of Laws* §332 (1934). Similarly, Kansas courts have traditionally held that the law of the state where a tort occurred – *lex loci delicti* – determines the substantive law to be applied to a claim sounding in tort. *See e.g.*, *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985). Even if the Kansas courts would go beyond this bright-line rule to consider which state has the most significant relationship to an occurrence and the parties involved (*see Restatement (Second) of Conflict of Laws* §§ 6, 145 148), there is

nothing in the record to suggest that Kansas has any significant relationship at all to the tort claims of potential class members in other states who allegedly suffered harm there as a result of JLI's conduct.  *Cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) ("Kansas must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair. [cite omitted]. Given Kansas' lack of 'interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits.").  Plaintiff also offers an alternative argument that Texas law should be applied to all of claims because that is the defendant's principal place of business.  But nothing in Kansas case law supports such a conclusion, and the simple expedient of selecting a defendant's home state law for the apparent purpose of facilitating a nationwide class action strongly resembles the "bootstrapping" criticized by the U.S. Supreme Court in *Shutts*.  *See id.*, 472 U.S. at 821 (constitutional limitation on choice-of-law "is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) ("The *lex loci delicti* principle points to the places of [the] injuries, not the defendants' corporate headquarters, as the source of law.").  *See also In re Pharmaceutical Indus. Avg. Wholesale Price Litigation*, 230 F.R.D. 61, 83 (D. Mass. 2005) (on consumer fraud claims, the home state of the consumer had more significant relationship to the alleged fraud than defendant's home state).  Plaintiff also argues that CAFA supports the application of one state's law to all claims

40

because Congress intended CAFA to "create efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court."  Whatever the policy merits of such an approach, the argument lacks any support whatsoever in the language of the Act.  Nowhere does the Act purport to dictate the substantive law to be applied to claims of purported class members.  In sum, Kansas choice-of-law rules would likely dictate that the laws of each state where prospective class members took their vehicles for service would govern the tort claims of such class members.  Such a conclusion weighs heavily against typicality, as the disparities and conflicts between the law governing plaintiff's claims and the laws governing other class members places plaintiff's claims on a different legal footing and subject to different legal standards than the claims of a significant portion of putative class members.  *See, e.g., Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir.2002) ("Given the differences among the state laws, it cannot be said that [the class representatives'] claims are 'typical' of the class ...").  *In re Vioxx Products Liability Litigation*, 239 F.R.D. 450, 459 (E.D.La.,2006) (The applicability of multiple substantive laws also precludes a finding of typicality).

  4. *Adequacy of Representation*.

  Rule 23(a)(4) also requires that the representative party will fully and adequately protect the interests of the class.  For many of the same reasons discussed above relating to typicality, the court also concludes that plaintiff could not adequately represent the interests of the purported class members in this matter.  Given the variations in fact, potential defenses, and different laws applicable to the plaintiff's claims, there is a significant divergence of interests between Mrs. Thompson and members of the proposed classes.  Additionally, as defendant points out, plaintiff's lack of memory relating to certain of the matters alleged – including the

particular representations made to her and the use or non-use of OttoCare on her purchases –

could be detrimental to the interests and claims of absent class members.

The adequacy of representation inquiry has also traditionally taken into account the

ability and willingness of the plaintiff's attorney to represent the class.  Rule 23(g) now sets forth

a specific set of factors relevant to the appointment of class counsel.  The notes to Rule 23(g)

indicate that Rule 23(a)(4) "will continue to call for scrutiny of the proposed class

representative...."  Insofar as plaintiff's counsel are concerned, the court has no concern about

counsel's integrity or willingness to be a zealous advocate on behalf of the proposed classes.

To recapitulate, a class may be certified only if all four prerequisites of Rule 23(a) are

satisfied.  *Fed.R.Civ.P.* 23(a); *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  For the

reasons stated above, the court finds plaintiff has failed to show under a strict burden of proof

that all four requirements are met.  Accordingly, the court will deny plaintiff's motion to certify

this matter as a class action.

B.  *Rule 23(b) - Types of Class Actions*.

The court's finding that the prerequisites of Rule 23(a) are not satisfied precludes

certification, and therefore eliminates any need to address the requirements of Rule 23(b).  The

court only notes briefly that there appear to be additional obstacles to certification among the

provisions of Rule 23(b).

With respect to Rule 23(b)(1)(A), plaintiff theorizes that JLI could be subjected to

inconsistent standards of conduct from individual suits because "one court might order Jiffy

Lube to require the OttoCare program to consider previous repairs, while another might prohibit

utilizing OttoCare altogether, while another might yet require a three-year phase out."  Doc. 161

42

at 36.  But any equitable relief granted by a court pertaining to use of OttoCare would almost surely be limited to requiring JLI to avoid the particular aspect of the program found to be misleading, not to prohibiting the use of the program altogether.  Plaintiff cites no realistic scenario under which JLI could not satisfy one such judgment without contradicting the terms of another.  *See Corley v. Orangefield Indep. Sch. Dist.*, 152 Fed.Appx.350 (5th Cir. 2005).

With respect to Rule 23(b)(2), plaintiff says her claim seeks injunctive relief and restitution rather than damages, and argues her case is therefore distinguishable from cases finding certification inappropriate under (b)(2) because the final relief sought was predominantly money damages.  *See e.g. In re Universal Service Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 680 (D. Kan. 2004) (court may decline to certify class under Rule 23(b)(2) if the predominant form of relief sought is money damages).  Plaintiff's claim for restitution appears largely indistinguishable from a claim for damages, with the amount of restitution owing to each individual class member dependant upon the amount paid by that individual.  *Cf. In re School Asbestos Litigation*, 789 F.2d 996, 1008 (3rd Cir. 1986) ("despite the plaintiffs' ingenuity the claims in this suit were essentially for damages");  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 ("[Incidental] damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.").  In addition to this problem, plaintiff has not clarified for the court how the defendant has acted "on grounds that apply generally to the class."  Plaintiff has thrown up a

43

multitude of allegations and asserted that they apply to the class generally, all without really addressing or showing uniformity of conduct with respect to the individual transactions underlying these claims.  *See In re St. Jude Medical, Inc*., 425 F.3d 1116, 1122 (8th Cir. 2005) ("At base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness .... Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a (b)(2) class are generally bound together through 'preexisting or continuing legal relationships' or by some significant common trait such as race or gender." [citation omitted]). Additionally, the court notes that the vast scope of claims asserted here and the practical problems arising from plaintiff's proposed (b)(2) class weigh against granting the motion to certify.  *See Shook v. El Paso County*, 386 F.3d 963, 973 (10th Cir. 2004).

Finally, with respect to the proposed Rule 23(b)(3) damage class, plaintiff has not demonstrated to the court that common questions of law or fact predominate over questions affecting only individual members.  There appear to be significant individual questions underlying these claims.  On the consumer protection claims, for example, individual issues would likely include what oral representations were made to class members, whether such representations were false or misleading, whether the individuals involved relied on such representations, and what damages were caused by or resulted from the representation.  *See Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1249 (2nd Cir. 2002) (class certification of fraud claims based on oral misrepresentations is appropriate only where the misrepresentations relied upon were materially uniform).  There may be other individual questions involving comparative fault and the statute of limitations.  *See e.g., Benedict v. Altria Group, Inc.*, 241 F.R.D. 668 (D.Kan. 2007) (individual questions presented by the KCPA claims in this case make class

44

certification under Rule 23(b)(3) inappropriate).  Plaintiff has not met her burden of

demonstrating the presence of uniform oral misrepresentations made to the class that would

make class-action treatment appropriate.  Plaintiff's negligence claims are even less susceptible

to class action management, given such individualized issues as causation, damages, and

comparative fault.  And of course, further compounding the problem and rendering a class action

on these claims essentially unmanageable is the tremendous variation in state laws that would

overwhelm any common questions that could be demonstrated.

The court recognizes the enormous amount of work put into this case by plaintiff's

counsel, as well as the work done by counsel for the defendants, and the court has done its best

to distill the wide-ranging arguments put forth in the briefs and to address them under the

governing standards.  Under the record and arguments before the court, the court cannot certify

this matter as a class action.

IV.  *Conclusion*.

Plaintiff Charolette Thompson's Motion to Certify Class (Doc. 160) is DENIED.

Defendant JLI's Motion to Dismiss and Strike Class Allegations for Failure to Timely File (Doc.

147) is DENIED.  Plaintiff's Motion to Strike Expert Report (Doc. 181) is DENIED.  Defendant

JLI's Motion for Leave to File Sur-Reply (Doc. 190) is GRANTED.

IT IS SO ORDERED this   16th   Day of July, 2008, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge